**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-00100-JRG-RSP |
| | ) | (LEAD CASE) |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| GOVISION, LLC, | ) | |
| | ) | ███████████████ |
| Defendant. | ) | |
| | ) | |
| | ) | |
| ULTRAVISION TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-00112-JRG-RSP |
| | ) | (CONSOLIDATED CASE) |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| ABSEN INC. AND SHENZHEN ABSEN | ) | |
| OPTOELECTRONIC CO., LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ULTRAVISION TECHNOLOGIES, LLC'S RESPONSE IN OPPOSITION TO
SHENZHEN ABSEN OPTOELECTRONIC CO. AND ABSEN, INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
UNDER RULES 12(b)(2), 12(b)(3) AND 12(b)(6) OF THE FEDERAL RULES OF
CIVIL PROCEDURE, OR IN THE ALTERNATIVE TO TRANSFER (DKT. NO. 83)**

**TABLE OF CONTENTS**

Page(s)

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................. 2

    A.    Procedural Background.......................................................................... 2

    B.    Plaintiff Ultravision Technologies, LLC ............................................. 2

    C.    Defendants' Connections to Texas and this District............................. 3

III.   PERSONAL JURISDICTION IS PROPER OVER AO ................................. 4

    A.    Legal Standard ...................................................................................... 4

    B.    By Placing Accused Products Into the Stream of Commerce, AO Is
       Subject to Personal Jurisdiction Here ................................................... 6

IV.   VENUE IS PROPER AS TO DEFENDANT AI............................................ 10

    A.    Legal Standard .................................................................................... 10

    B.    AI Has a Regular and Established Place of Business in this District ................... 11

V.    ALTERNATIVELY, JURISDICTIONAL DISCOVERY IS WARRANTED ............... 14

VI.   TRANSFER IS NOT WARRANTED IN THE INTERESTS OF JUSTICE .................. 15

    A.    Legal Standard .................................................................................... 15

    B.    The Private Interest Factors Weigh Against Transfer.......................... 17

        1.    Relative Ease of Access to Sources of Proof Weighs Against
           Transfer ...................................................................................... 17

        2.    Convenience of the Parties and Witnesses and Cost of
           Attendance for Willing Witnesses Weighs Against Transfer ................... 19

        3.    The Availability of Compulsory Process Weighs Against
           Transfer ...................................................................................... 21

        4.    All Other Practical Problems Weigh Against Transfer............................ 22

    C.    The Public Interest Factors Weigh Against Transfer........................... 24

        1.    Court Congestion Weighs Against Transfer ............................... 24

2. Local Interest Weighs Against Transfer .................................................... 24

VII. ULTRAVISION HAS SUFFICIENTLY pled INDUCED INFRINGEMENT ............... 25

VIII. Conclusion ..................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Sys., Inc. v. Aarotech Labs., Inc.*,
   160 F.3d 1373 (Fed. Cir. 1998) ..................................................................................9

*Abatix Corp. v. Capra*,
   2008 WL 4427285 (E.D. Tex. Sep. 24, 2008) .........................................................19

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ................................................................................23

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
   689 F.3d 1358 (Fed. Cir. 2012) ..............................................................................5, 7

*AGIS Software Dev. LLC v. HTC Corp.*,
   2018 WL 4680558 (E.D. Tex. Sept. 28, 2018) .......................................................6, 8

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
   2018 WL 2329752 (E.D. Tex. May 23, 2018) .......................................................21, 23

*Aloft Media, LLC v. Adobe Sys.*,
   2008 WL 819956 (E.D. Tex. Mar. 25, 2008) ....................................................15, 16, 19

*Alpine View Co. v. Atlas Copco AB*,
   205 F.3d 208 (5th Cir. 2000) ...................................................................................14

*Am. Cyanamid v. NOPCO Chemical Co.*,
   388 F.2d 818 (4th Cir.) .............................................................................................13

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*,
   480 U.S. 102 (1987) ..............................................................................................6, 10

*ATEN Int'l Co. v. Emine Tech. Co.*,
   261 F.R.D. 112 (E.D. Tex. 2009) .....................................................................4, 5, 6, 10

*Autobytel, Inc. v. Insweb Corp.*,
   WL 901482, at *1 (E.D. Tex. Mar. 31, 2009) ...........................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................25

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994) .......................................................................... *passim*

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)......................................................................... *passim*

*Blitzsafe Texas LLC v. Mitsubishi Electric Corp.*,
    2019 WL 2210686 (E.D. Tex. May 22, 2019) ........................................................14

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
    240 F. App'x 612, 2007 WL 1425851 (5th Cir. 2007) ...........................................10

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006)...............................................................................5

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..........................................................................................9, 10

*Bush Seismic Techs. LLC v. Am. Gem Soc'y*,
    2016 WL 9115381 (E.D. Tex. Apr. 13, 2016) ........................................................28

*Candela Corp. v. Palomar Med. Techs., Inc.*,
    2007 WL 738615 (E.D. Tex. Feb. 22, 2007) ...................................................23, 24

*Chrimar Sys., Inc. v. D-Link Sys. Inc.*,
    2016 WL 3574628 (E.D. Tex. Mar. 31, 2016) .......................................................23

*ComCam Int'l, Inc. v. Mobotix Corp.*,
    2014 WL 4229711 (E.D. Tex. Aug. 26, 2014) .................................................20, 21

*In re Cordis*
    Corp., 769 F.2d 733, 735 (Fed. Cir. 1985).......................................................11, 13

*Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*,
    2013 WL 682849 (E.D. Tex. Feb. 22, 2013) ................................................... *passim*

*In re Cray Inc.*,
    871 F.3d 1355 (Fed. Cir. 2017).................................................................11, 13, 15

*CXT Sys., Inc. v. Container Store, Inc.*,
    2019 WL 1506015 (E.D. Tex. Apr. 5, 2019) ................................................... *passim*

*Cywee Grp. Ltd. v. Huawei Device Co.*,
    2018 WL 3819392 (E.D. Tex. Aug. 10, 2018) .......................................................26

*Diem LLC v. BigCommerce Inc.*,
    2017 WL 6729907 (E.D. Tex. Dec. 28, 2017).................................................18, 21

*In re EMC Corp.*,
    501 F. App'x 973 (Fed. Cir. 2013) ........................................................................16

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
  2016 WL 1643315 (E.D. Tex. Apr. 26, 2016) ........................................................................28

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
  867 F. Supp. 2d 859 (E.D. Tex. 2012) ................................................................................20

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*,
  123 F.3d 1455 (Fed. Cir. 1997) ...........................................................................................4

*Good Sportsman Mktg. LLC v. Testa Assocs., LLC*,
  2005 WL 2850302 (E.D. Tex. Sept. 1, 2005) ......................................................................17

*Graftech Int'l Holdings Inc. v. Gc&s Co.*,
  2014 WL 12591876 (E.D. Tex. Apr. 8, 2014) ...................................................................9, 14

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ...............................................................................................30

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, 508 (1947) .....................................................................................................17

*Halo Elecs. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) .........................................................................................................28

*Hoffman v. Blaski*,
  363 U.S. 335 (1960) .............................................................................................................16

*Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
  2009 WL 1025467 (E.D. Tex. Mar. 26, 2009) .....................................................................5

*In Realtime Data, LLC v. Stanley*,
  721 F. Supp. 2d 538 (E.D. Tex. 2010) ................................................................................30

*InMotion Imagery Techs. v. Brain Damage Films*,
  2012 WL 3283371 (E.D. Tex. Aug. 10, 2012) .....................................................................29

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945) .............................................................................................................5

*Invitrogen Corp. v. Gen. Elec. Co.*,
  2009 WL 331891 (E.D. Tex. Feb. 9, 2009) .........................................................................18

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*,
  2009 WL 440525 (E.D. Tex. Feb. 20, 2009) .......................................................................17

*Jacobs Chuck Mfg.Co. v. Shandong Weida Mach. Co.*,
  2005 WL 3299718 (E.D. Tex. Dec. 5, 2005) .......................................................................10

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989)........................................................................16

*Kranos IP Corp. v. Riddell, Inc.*,
  2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ....................................................11

*Langton v. CBeyond Commc'n, LLC*,
  282 F. Supp. 2d 504 (E.D. Tex. 2003)................................................................10

*In re Link_A_Media Devices Corp.*,
  662 F.3d 1221, 1223 (Fed. Cir. 2011)................................................................17

*Lochner Techs., LLC v. AT Labs Inc.*,
  2012 WL 2595288 (E.D. Tex. July 5, 2012) ...........................................27, 28, 30

*Lone Star Document Mgmt., LLC v. Atalasoft, Inc.*,
  2012 WL 4033322 (E.D. Tex. Sept. 12, 2012)....................................................27

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................................25

*Mallinckrodt IP v. B. Braun Med. Inc.*,
  2017 WL 6383610 (D. Del. Dec. 14, 2017)...............................................11, 15

*McZeal v. Sprint Nextel Corp.*,
  501 F.3d 1354 (Fed. Cir. 2007)..........................................................................25

*Mears Techs., Inc. v. Finisar Corp.*,
  2014 WL 1652603 (E.D. Tex. Apr. 24, 2014)......................................................22

*MHL Tek LLC v. Nissan Motor Co.*,
  2008 WL 910012 (E.D.Tex Apr. 2, 2008) .............................................7, 8, 10, 20

*Modisett v. Delek Ref., Ltd.*,
  2019 WL 2395377 (E.D. Tex. June 5, 2019)........................................................23

*Mohamed v. Mazda Motor Corp.*,
  90 F. Supp. 2d 757 (E.D. Tex. 2000)..................................................................19

*Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*,
  2013 WL 12138894 (E.D. Tex. Nov. 21, 2013) ..................................................28

*NovelPoint Learning LLC v. LeapFrog Enter., Inc.*,
  2010 WL 5068146 (E.D. Tex. Dec. 6, 2010)........................................................9

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)...........................................................................................14

*Opticurrent, LLC v. Power Integrations. Inc.*,
    2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) ............................................................27, 28

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*,
    2012 WL 9864381 (E.D. Tex. July 27, 2012) .......................................................................25

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
    2019 WL 2303034 (E.D. Tex. May 30, 2019), *5.................................................................24

*Pers. Audio, LLC v. Google, Inc.*,
    2017 WL 4837853 (E.D. Tex. May 15, 2017)................................................................26, 27

*Realtime Data, LLC v. Rackspace US, Inc.*,
    2017 WL 772653 (E.D. Tex. Feb. 28, 2017) ..........................................................19, 20, 24

*Regenlab USA LLC v. Estar Tech. Ltd.*,
    335 F. Supp. 3d 526, 549 (S.D.N.Y. 2018).....................................................................11, 13

*Rozier v. Ford Motor Co.*,
    573 F.2d 1332 (5th Cir. 1978) ..............................................................................................15

*RPost Holdings, Inc. v. StrongMail Sys., Inc.*,
    2013 WL 4495119 (E.D. Tex. Aug. 19, 2013) .....................................................................22

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
    2016 WL 3542430 (E.D. Tex. June 28, 2016).......................................................................30

*In re Seagate*,
    497 F.3d 1360 (Fed. Cir. 2007)..............................................................................................28

*Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*,
    2009 WL 9141752 (S.D. Cal. Nov. 2, 2009) ..........................................................................7

*Semcon IP Inc. v. Kyocera Corp.*,
    2019 WL 1979930 (E.D. Tex. May 3, 2019).................................................................26, 30

*Semcon IP, Inc. v. TCT Mobile Int'l Ltd., et al.*,
    2019 WL 2774362 (E.D. Tex. July 2, 2019) ..........................................................................8

*Seven Networks, LLC v. Google LLC*,
    315 F. Supp. 3d 933, 942 (E.D. Tex. 2018).................................................................. *passim*

*Silent Drive, Inc. v. Strong Indus., Inc.*,
    326 F.3d 1194 (Fed. Cir. 2003)................................................................................................4

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017).............................................................................................................10

*Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
   2014 WL 1233040 (E.D. Tex. Mar. 24, 2014) ....................................................................28

*Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*,
   2009 WL 1758758 (S.D. Tex. June 22, 2009) ...................................................................30

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)........................................................................................23

*Uniloc USA, Inc. v. Huawei Device USA*,
   Inc., 2018 WL 7138384, at *3 (E.D. Tex. Sept. 6, 2018) ..................................................17

*Uniloc USA v. Nutanix*,
   No. 2:17-cv-00174-JRG, Dkt. 44 (E.D. Tex. Dec. 6, 2017) ...........................................13, 18

*Univ. of Ill. Found. v. Channel Master Corp.*,
   382 F.2d 514 (7th Cir. 1967) ...........................................................................................13

*VoIP-Pal.com, Inc. v. Twitter, Inc.*,
   2018 WL 3543031 (D. Nev. July 23, 2018) .......................................................................12

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ...........................................................................................16

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .......................................................................................16, 17

*In re Volkswagen of Am., Inc.*,
   566 F.3d 1349 (Fed. Cir. 2009)........................................................................................22

*Wi-Lan, Inc. v. HTC Corp.*,
   2012 WL 2461112 (E.D. Tex. June 27, 2012) .....................................................................9

*In re WMS Gaming Inc.*,
   564 F. App'x 579 (Fed. Cir. 2014) ...................................................................................21

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980).........................................................................................................9

*Wyatt v. Kaplan*,
   686 F.2d 276 (5th Cir. 1982) ...........................................................................................14

*Zoch v. Daimler, AG*,
   2017 WL 2903264 (E.D. Tex. May 16, 2017)......................................................................9

**Statutes**

28 U.S.C. § 1400(b) .............................................................................................................10

28 U.S.C. § 1404 ..............................................................................................................................1

28 U.S.C. § 1404(a) ...................................................................................................................15, 22

## I.     INTRODUCTION

Personal jurisdiction is proper over Shenzhen Absen Optoelectronic Co., Ltd. ("AO") in this Court because, as AO admits, it places accused products into an established distribution chain with its U.S. subsidiary, Absen, Inc.'s ("AI") (collectively, "Defendants"), which it knows sells accused products nationwide, including in Texas. These undisputed facts are sufficient to satisfy the stream of commerce theory of personal jurisdiction.

Venue as to AI is also proper in this District. AI admits that at least one AI employee has a home in this District, and evidence shows that AI's business is carried out by and through the home in this District and is ratified by AI. Based on these facts, a reasonable and plausible inference can be drawn that the employee's home in this District is a regular and established place of business of AI.

With respect to transfer, Defendants have failed to meet their burden to show that transferring this action to the Middle District of Florida is "clearly more convenient" for *all* parties and witnesses, and in the interests of justice, and not just a mere shift of the conveniences. Moreover, transferring this action while at least seven or more co-pending cases remain here will result in duplicative proceedings and risk inconsistent judgment, which is precisely what 28 U.S.C. § 1404 was designed to prevent.

Finally, Ultravision has sufficiently pled facts to state a plausible claim for induced infringement. Specifically, Ultravision has pled facts showing that Defendants, with knowledge of the Asserted Patents, knowing and intentionally encouraged their customers to infringe the Asserted Patents by engaging in conduct that Defendants knew constituted infringement. This is sufficient to defeat Defendants' Motion to dismiss.

For the foregoing reasons, Defendants' Motion should be denied.

## II.     BACKGROUND

### A.     Procedural Background

Ultravision filed its initial complaint in this action on March 27, 2018 (Dkt. 1) alleging

infringement of U.S. Patent Nos. 9,349,306 (the "'306 Patent") and 9,916,782 (the "'782

Patent"), and its First Amended Complaint ("FAC") on June 6, 2019, alleging infringement of

the '782 Patent, and U.S. Patent Nos. 9,642,272 (the "'272 Patent"); 9,990,869 (the "'869

Patent"); 9,978,294 (the "'294 Patent"); 9,207,904 (the "'904 Patent"); 9,047,791 (the "'791

Patent"); 10,248,372 (the "'372 Patent"); and 9,666,105 (the "'105 Patent") (collectively, the

"Asserted Patents").[1] Ultravision's FAC alleges, *inter alia*, that Defendants have directly and

indirectly infringed the Asserted Patents by making using, offering to sell, selling, and/or

importing into the United States products that satisfy each and every limitation of one or more

claims of the Asserted Patents. Dkt. 73 ¶¶ 39-41, 46-47, 49-50, 52, 54, 68-71, 86-89, 100-03,

113-16, 128-31, 142-44.[2] On June 21, 2019, Defendants filed the instant Motion to dismiss or

transfer. Dkt 83.[3]

### B.     Plaintiff Ultravision Technologies, LLC

Plaintiff Ultravision is the sole and exclusive owner of all right, title and interest in and to

each of the Asserted Patents. Dkt. 73 ¶ 19; *accord* Declaration of Tandy Robinson ("Robinson

Decl.") ¶ 4. Ultravision is a limited liability company organized and existing under the laws of

---

[1] Also on March 27, 2018, Ultravision filed several other similar complaints in this Court alleging infringement of the same patents, nine of which are still pending. *See* Case Nos. 2:18-cv-00102; 2:18-cv-00103; 2:18-cv-00108; 2:18-cv-00113; 2:18-cv-00116; 2:18-cv-00118; 2:18-cv-00150; 2:18-cv-00099; and 2:18-cv-00101. At the time Ultravision filed its FAC in this action, it also filed similar amended complaints in six of the consolidated co-pending actions, alleging infringement of overlapping patents. On April 12, 2019 and June 25, 2019, this Court entered orders consolidating eight of the co-pending cases for pre-trial issues. Dkts. 17, 84.

[2] Docket citations from this point forward refer to Case No. 2:18-cv-00100-JRG-RSP (Lead Case).

[3] No motions to dismiss or transfer are pending in seven of the nine co-pending actions. Only Case Nos. 2:18-cv-00108 and 2:18-cv-00150 have a motion to dismiss or transfer pending.

the State of Delaware with its principal place of business located at 4542 McEwen Road, Dallas, Texas 75244 (Robinson Decl. ¶¶ 5–6), which is located about five miles outside of this District and 157 miles from the Marshall Courthouse. Exs. 6-7. At the time this action was filed, Ultravision maintained an office in this District at 201 W. Boyd Drive, Suite 105A, Allen, Texas 75013 ("Allen office"). Robinson Decl. ¶ 7. Ultravision currently maintains an office in this District at 5851 Legacy Circle, 6th Floor, Plano, Texas 75024 ("Plano office"). *Id.* at ¶ 8. One Ultravision employee worked out of the Allen Office, and as many as two Ultravision employees work from the Plano office at any given time. *Id.* In addition, at the time this action was filed, at least four Ultravision employees with knowledge relevant to this litigation lived and worked in or near this District. *Id.* at ¶ 9.[4]

### C. Defendants' Connections to Texas and this District

AO is a Chinese company headquartered in Shenzhen, China. Dkt. 83 at 5. AO's U.S. subsidiary, AI, is a Delaware corporation with a principal place of business in Orlando, Florida. *Id.* at 4. According to publicly-available information, AI has an office in Texas. Ex. 3. AO admits that it "designs, develops, and manufactures" the accused products in China, and then sells the accused products to AI, which sells the accused products throughout the U.S. *See, e.g.*, Dkt. 83-3 ¶¶ 17-18; Dkt. 73 ¶¶ 6-7, 13; Dkt. 83 at 5, 9, 12; *see also* Ex. 1.[5] Defendants also admit that AI offers for sale and/or sells accused products, and provides service and support, specifically to customers in Texas, including in at least Arlington and Houston, Texas. *Compare* Dkt. 73 ¶¶ 6-7, 9 *with* Dkt. 83 at 9.

[5] "Ex_" refers to exhibits attached to the Declaration of Sarah G. Hartman ("Hartman Decl.").

Defendants also concede that they have committed acts of infringement, including offering to sell and selling accused products, *in this District*. *Compare* Dkt. 73 ¶ 9 *with* Dkt. 83 at 5-7. Further, it is undisputed that at least one AI employee resides in Anna, Texas, in this District (Dkt. 83-2 ¶ 6), and Ultravision alleges that the employee home is a place of business of AI that is regular and established (Dkt. 73 ¶¶ 2, 8-9). AI holds itself out as having a "growing American staff" that "offer[s] 24/7 service and support across the nation" which presumably includes the employee located in this District who serves customers in this District on behalf of AI. Ex 1. AI hires individuals specifically to serve a particular region, requiring that the individuals either live in, or be willing to move, to the particular regions. Ex. 2. Further, evidence indicates that AI has "stock on hand throughout the U.S." and that responsibilities of AI's sales personnel include demoing inventory to customers in their territories. Exs. 2, 8.

## III.    PERSONAL JURISDICTION IS PROPER OVER AO

### A.    Legal Standard

Personal jurisdiction in patent infringement actions is governed by Federal Circuit law. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200–01 (Fed. Cir. 2003). On a motion to dismiss, "a plaintiff only needs to make a *prima facie* showing that the defendant is subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff." *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 118 (E.D. Tex. 2009) (citing *Silent Drive*, 326 F.3d at 1201) (emphasis added).

To determine whether personal jurisdiction exists over an out-of-state defendant, the Court must consider: "(1) whether a forum state's long-arm statute permits service of process, and (2) whether the assertion of personal jurisdiction would violate due process." *Autobytel, Inc. v. Insweb Corp.*, WL 901482, at *1 (E.D. Tex. Mar. 31, 2009) (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). Because the Texas long-arm statute

4

reaches "as far as the federal constitutional requirements of due process will allow," the two inquiries collapse into a single inquiry of whether the exercise of personal jurisdiction comports with [federal] due process. *ATEN Int'l*, 261 F.R.D. at 118 (citations omitted). Due process is satisfied if (1) the defendant has established minimum contacts with the forum state, *id.*; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Autobytel*, 2009 WL 901482, at *1 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

Specific jurisdiction exists when the defendant has "purposefully directed [its] activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 1025467, at *3 (E.D. Tex. Mar. 26, 2009) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). An "independent basis" for personal jurisdiction is the stream-of-commerce theory. *Icon Health*, 2009 WL 1025467, at *3. The Federal Circuit consistently follows the stream-of-commerce approach set forth in *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1566 (Fed. Cir. 1994). *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363–64 (Fed. Cir. 2012). Under *Beverly Hills Fan*, where a defendant "purposefully ship[s]" an accused product into a forum state "through an established distribution channel" and "[t]he cause of action for patent infringement is alleged to arise out of th[o]se activities," "[n]o more is usually required to establish specific jurisdiction." 21 F.3d at 1565 (citing *Burger King*, 471 U.S. at 472-73). Once the plaintiff makes a *prima facie* showing of minimum contacts, the defendant has the burden to show that the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 n.3 (Fed. Cir. 2006).

5

**B.      By Placing Accused Products Into the Stream of Commerce, AO Is Subject to Personal Jurisdiction Here**

A defendant establishes minimum contacts under the stream-of-commerce theory by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Beverly Hills Fan*, 21 F.3d at 1566. The Supreme Court is divided as to whether the mere act of placing a product into the stream of commerce is sufficient, or whether something more is required. *See Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112, 117 (1987). The Federal Circuit, however, has declined to resolve the split, and instead considers whether the facts at issue support jurisdiction under *either theory*. *AGIS Software Dev. LLC v. HTC Corp.*, 2018 WL 4680558, at *2 (E.D. Tex. Sept. 28, 2018) (citing *Beverly Hills Fan*, 21 F.3d at 1566). Under the strictest version of the test, the "purposeful" element is satisfied by a showing that the defendant "knew, or reasonably could have foreseen, that a termination point of the channel was [the forum state]." *Beverly Hills Fan*, 21 F.3d at 1564. Selling products to an entity that distributes products nationwide is a strong indication that the defendant intends to direct its products nationwide, including to Texas. *See ATEN Int'l*, 261 F.R.D. at 119.

Here, AO admits that it "designs, develops, and manufactures" the accused products, including the accused 1099/A1699, Altair Series, Xd Series, N Series, and Xv Series products, in China, and then sells the accused products to its U.S. subsidiary, AI, which sells the accused products throughout the United States. *See* Dkt. 83-3 ¶¶ 17-18; Dkt. 73 ¶¶ 6-7; Dkt. 83 at 5, 9, 12. AI also admits that it has sold "hundreds of installations across the USA." Ex. 1.[6] Defendants further concede that AI offers for sale and/or sells accused products, and provides service and

---

[6] Additionally, AI's warranty manual states that its warranty extends "to the original end-user within *all states in the United States*" (Ex. 4 at 1 ¶ 1.2) and for return products, "the delivery back address should be *one of the 50 states within the United States.*" *Id.* Ex. 4 at 2 ¶ 2.3 (emphasis added).

support, specifically to customers *in Texas*, including in at least Arlington and Houston, Texas. *Compare* Dkt. 73 ¶¶ 6-7, 9 *with* Dkt. 83 at 9.[7] These facts are sufficient to show that AO places the accused products into the stream of commerce, with knowledge or a reasonable foreseeability that, through the established distribution with AI, the accused products will be sold in Texas. *See MHL Tek LLC v. Nissan Motor Co.*, 2008 WL 910012, at *1 (E.D.Tex Apr. 2, 2008). This knowledge alone is more than sufficient to meet the requirements of *Beverly Hills Fan*. *See id.*; *accord AFTG-TG*, 689 F.3d at 1367 (declining to place an "[e]mphasis on assessing the presence of 'something more'" when applying *Beverly Hills Fan*).

Even if AO had not admitted knowledge that its products would end up in Texas, based on the undisputed "ongoing" relationship between AO and AI, the Court may *presume* that the distribution channel was "intentionally established" and that AO "knew, or reasonably could have foreseen," that a termination point of the channel was Texas. *Beverly Hills Fan*, 21 F.3d at 1564 (jurisdiction proper despite "no evidence showing that defendants' shipments into [the district] were purposeful or knowing" because the court could presume, based on the "ongoing relationships"). This is also sufficient to establish a *prima facie* showing of minimum contacts under the stream-of-commerce test. *See Beverly Hills Fan*, 21 F.3d at 1564; *MHL Tek*, 2008 WL 910012, at *1 (finding personal jurisdiction proper over defendant that sold vehicles containing the accused products to a related foreign entity, which sold the vehicles to a related U.S. entity for distribution throughout the U.S., including Texas); *Seirus Innovative Accessories, Inc. v. Cabela's, Inc.,* 2009 WL 9141752, at *3 (S.D. Cal. Nov. 2, 2009) (finding jurisdiction even though Defendant denied knowledge of sales in [forum] because, since Defendant's distributor

---

[7] Rather than dispute that accused products are, and have been, sold in Texas, AO argues, without support, that jurisdiction is improper because Ultravision's allegations are not about "AO individually." Dkt. 83 at 9. This is a red herring. Not only are Ultravision's allegations sufficient, but, as discussed herein, AO *admitted* that it places the accused products into an established distribution channel with AI, with knowledge or the expectation that its products will end up in Texas, which is sufficient.

ships nationwide, "the only reasonable expectation is that their products would be marketed and sold in [the forum]"). Additionally, because this action is alleged to arise out of Defendants' sale of the accused products, no more is required to establish personal jurisdiction. *See Beverly Hills Fan*, 21 F.3d at 1565.

AO's argument that AO does not make sales *in* Texas and does not have any role in determining where or to whom AO products are shipped (Dkt. 83 at 11) is unavailing. *See Semcon IP, Inc. v. TCT Mobile Int'l Ltd., et al.*, 2019 WL 2774362, at *3 (E.D. Tex. July 2, 2019) (rejecting same arguments, and explaining that the Federal Circuit rejected similar arguments in *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343 (Fed. Cir. 2016)); *see also, e.g.*, *MHL Tek*, 2008 WL 910012, at *1 (rejecting argument that jurisdiction was improper over foreign entity because the related U.S. entity, not the defendant, "directs and controls the distribution of [accused products] in the US, including into Texas"). "[T]he relevant inquiry is not whether [defendant] controlled the intermediaries in the distribution chain, but instead whether it 'deliver[ed] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'" *HTC Corp.*, 2018 WL 4680557, at *4 (citation omitted). As shown, AO has done so here.

AO's arguments that it has "no offices, facilities, distribution facilities, or employees in the district" (Dkt. 83 at 5-6, 9, 11) and does not "design, develop or manufacture" Absen products *in* Texas (*id.* at 5), are irrelevant to minimum contacts under the stream of commerce theory. *See, e.g., MHL Tek*, 2008 WL 910012, at *1; *see also Beverly Hills Fan*, 21 F.3d at 1560 (holding personal jurisdiction proper under stream of commerce despite evidence that foreign manufacturer had no license to do business in the forum, no assets, employees, or agents for service of process in the forum, and no direct sales in the forum).

Additionally, AO's citations to *NovelPoint Learning LLC v. LeapFrog Enter., Inc.*, 2010 WL 5068146, at *3 (E.D. Tex. Dec. 6, 2010) and *Wi-Lan, Inc. v. HTC Corp.*, 2012 WL 2461112, at *2 (E.D. Tex. June 27, 2012) (Dkt. 83 at 10-11) are unavailing, as in those cases, which evaluated jurisdiction within the context of motions to transfer venue, did *not* consider minimum contacts under the stream-of-commerce theory.[8] *Zoch v. Daimler, AG*, 2017 WL 2903264 at *6 (E.D. Tex. May 16, 2017), is also unpersuasive because, in that case, unlike here, the entity selling the accused products for importation in the U.S. did so *without* the specific or general knowledge of the defendant, and thus there were no facts to suggest that the defendant could have reasonably foreseen that a termination point of the channel was Texas. *Id.*; *see also Graftech Int'l Holdings Inc. v. Gc&s Co.*, 2014 WL 12591876, at *7 (E.D. Tex. Apr. 8, 2014) (granting jurisdictional discovery to fill gaps in the record, including to ascertain facts needed to evaluate whether accused products were actually sold in the forum—a fact AO *admits* here).

Finally, AO has failed to present a "compelling case" that the exercise of jurisdiction over AO would be unreasonable. *See Burger King*, 471 U.S. at 477. Where, like here, "the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product . . . , it is not unreasonable to subject [the defendant] to suit." *Beverly Hills Fan*, 21 F. 3d at 1565-66 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Moreover, AO has not —and cannot —show that this is the "rare situation" where Ultravision's and Texas' interest in adjudicating the dispute in Texas is "so attenuated that [those

---

[8] *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1381 (Fed. Cir. 1998) (Dkt. 83 at 11), is similarly inapposite because there, too, the plaintiff did not allege the defendant was selling or offering to sell the infringing products in the forum *through* its subsidiary, and thus the court did not address the stream-of-commerce theory. Rather, the plaintiff argued that the court should pierce the corporate veil or treat the parent and subsidiary as alter egos in order to find jurisdiction. To the contrary, here, Ultravision is not relying on an alter-ego theory, but rather on AO's conduct of placing the accused products into an established distribution channel with AI, with knowledge or expectation that they will be sold in Texas.

interests] are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *See Beverly Hills*, 21 F.3d at 1568; *see also Keeton*, 465 U.S. at 774-75 (purposeful minimum contacts "ordinarily" enough). Ultravision's principal place of business is in Texas, and thus it has a strong interest in having its injuries remedied in its home state. *Jacobs Chuck Mfg.Co. v. Shandong Weida Mach. Co.*, 2005 WL 3299718, at *8 (E.D. Tex. Dec. 5, 2005). Texas also has "a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473.

Accordingly, the exercise of personal jurisdiction over AO comports with due process, and AO's Motion to dismiss for lack of personal jurisdiction should be denied. *See Beverly Hills Fan*, 21 F.3d at 1564; *MHL Tek*, 2008 WL 910012, at *1; *ATEN Int'l*, 261 F.R.D. at 120; *see also Asahi,* 480 U.S. at 117 (jurisdiction is proper when the flow of products into the forum is "regular and anticipated" and more than "unpredictable currents or eddies").

## IV.   VENUE IS PROPER AS TO DEFENDANT AI

### A.   Legal Standard

On a motion to dismiss for improper venue, a plaintiff need only present facts which, taken as true, establish venue. *Langton v. CBeyond Commc'n, LLC*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003).[9] In a patent infringement case, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1514 (2017) (citing 28 U.S.C. § 1400(b)). "Where a complaint alleges infringement, the allegations 'satisfy the 'acts of infringement' requirement of § 1400(b)'" "[a]lthough the[ ] allegations may be contested." *Seven Networks, LLC v. Google LLC*, 315 F.

---

[9] The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615, 2007 WL 1425851 (5th Cir. 2007) (citation omitted).

10

Supp. 3d 933, 942 (E.D. Tex. 2018) (citations omitted). To establish a "regular and established place of business," "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The defendant is not required to own or lease the place of business if the defendant establishes or ratifies the place, or exercises other attributes of possession or control over the place. *Id.* Further, "no one fact is controlling" and all facts must be "taken together" in determining whether venue is proper." *Id.* at 1366. Thus, "at least in a difficult case, the Court should permit venue-related discovery, to allow the adversarial process to aid the Court in making a fact-specific decision on a well-developed factual record." *Mallinckrodt IP v. B. Braun Med. Inc.*, 2017 WL 6383610, at *3 (D. Del. Dec. 14, 2017).

### B.     AI Has a Regular and Established Place of Business in this District[10]

The Federal Circuit has expressly recognized that an employee's home in the district may be sufficient to constitute a regular and established place of business of the defendant. *Cray*, 871 F.3d at 1364 n.l (noting that "a defendant [may have] a business model whereby many employees' homes are used by the business as a place of business of the defendant."); *see id.* at 1362-65 (approvingly citing *In re Cordis* Corp., 769 F.2d 733, 735 (Fed. Cir. 1985) where the Federal Circuit determined that the defendant had a regular and established place of business in the district based on the homes of two employees in the district). Even the presence of a *single* work-at-home employee may be sufficient. *See Regenlab USA LLC v. Estar Tech. Ltd*., 335

---

[10] AI does not dispute that the "acts of infringement" requirement is satisfied. *See* Dkt. 83 at 5-7. Nonetheless, Ultravision's uncontroverted allegations satisfy this requirement. *See* Dkt. 73 ¶ 9 ("certain of the [infringing] acts complained of herein occurred in this Judicial District"). *See Kranos IP Corp. v. Riddell, Inc.*, 2017 WL 3704762, at *3 (E.D. Tex. Aug. 28, 2017) (Gilstrap, J.).

F. Supp. 3d 526, 549 (S.D.N.Y. 2018).[11]

Here, AI admits that at least one AI employee lives in Anna, Texas, in this District. Dkt. 83-2 ¶ 6. Ultravision alleges that the employee's home in Anna, Texas constitutes a regular and established place of business of AI. Dkt. 73 ¶¶ 2, 8-9. AI's admissions support Ultravision's allegations. For example, AI holds itself out as having a "growing American staff" that "offer[s] 24/7 service and support *across the nation*," which presumably includes the employee located in the District who serves customers in the District on behalf of AI. Ex. 1. Responsibilities of AI's sales personnel include demoing inventory to customers in their territories. Ex. 2. AI hires individuals specifically to serve a particular region, requiring that the individuals either live in, or be willing to move, to the particular regions. *Id*. As such, drawing all reasonable inferences in Ultravision's favor, it is reasonable to conclude that AI's business is carried out at and through the employees' home in the District and that AI holds it out as a place where its customers may be served, which is sufficient to satisfy venue. *See RegenLab*, 335 F. Supp. 3d at 552 (employee's home sufficient where employee took sales orders and contacted prospective customers from home office, and used sales kits to conduct demonstrations at customers' homes).[12]

AI argues only that venue is improper because, at the time the action was filed, neither Defendant owned or leased any offices, facilities, or property in the District, and that the AI employee does not keep inventory in this District. Dkt 83 at 6-7.[13] However, the law is clear that

---

[11] Accordingly, AI's suggestion that because it has a principal place of business in Orlando, Florida, venue can only be proper against AI in the District of Delaware or the Middle District of Florida (Dkt. 83 at 6) is incorrect.

[12] *See VoIP-Pal.com, Inc. v. Twitter, Inc.*, 2018 WL 3543031, at *4 (D. Nev. July 23, 2018) (recognizing that whether the employee's work is "consumer-facing" is "critical for a finding that Defendant represents that it does business in the forum").

[13] Although AI denies having any offices in the District, publicly available information suggests that it maintains an office at an undisclosed Texas location. Ex. 3.

AI is *not* required to own or lease a physical place in the District, such as an employee's home, in order to satisfy venue. *See Cray*, 871 F.3d at 1360; *see also Regenlab*, 335 F. Supp. 3d at 549 (holding that the home of a single employee constituted a regular and established place of business of the defendant, even though the defendant had "no real property, warehouses, storage facilities, office spaces, post boxes, showrooms, leased property, or rental property within the [forum state]," exercised no control over the employees' work place, did not provide support service in the district, and did not require that the employee live there, where defendant solicited sales people to cover the state); *Cordis*, 769 F.2d at 735 (venue proper even though defendant was not registered to do business and did not own or lease property in the state, but had representatives that acted as technical consultants and gave presentations in the district).

Further, whether the employee stores inventory in this District is not determinative; rather, it is just one factor that a court may consider in evaluating whether the defendant's work is carried out at and through the employee's home in the District. *Cray*, 871 F.3d at 1365; *see also id.* at 1366 ("no one fact is controlling"). Here, given the size and weight of an LED display, it is not surprising that an employee would not keep inventory in a home. Nonetheless, evidence indicates that AI has "stock on hand throughout the U.S." and that sales personnel demo the inventory to customers in their territory. Exs. 2, 8. Considering the totality of the facts and evidence, it is reasonable to conclude that the home of the employee is a regular and established place of business of AI. *See RegenLab*, 335 F. Supp.3d at 552.[14]

---

[14] AI's case law (Dkt. 83 at 6-7) is irrelevant. *See Cray*, 871 F.3d at 1365 (unlike here, no evidence that defendant believed a location in this District to be important to the business performed); *Univ. of Ill. Found. v. Channel Master Corp.*, 382 F.2d 514, 516 (7th Cir. 1967) (employee conducted no demonstrations of the products, and was considered only "incidentally helpful to customers"); *Am. Cyanamid v. NOPCO Chemical Co.*, 388 F.2d 818, 819-20 (4th Cir.) (unlike here, employee's superiors were not aware of his location and nothing outside of home indicated that business was conducted there or that defendant had a company representative there); *Uniloc USA v. Nutanix*, No. 2:17-cv-00174-JRG,

## V.      ALTERNATIVELY, JURISDICTIONAL DISCOVERY IS WARRANTED

"[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the

facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13

(1978). "[J]urisdictional discovery should only be denied where it is *impossible* that the

discovery 'could . . . add[] any significant facts' that might bear on the jurisdictional

determination." *Blitzsafe Texas LLC v. Mitsubishi Electric Corp.*, 2019 WL 2210686, at *3 (E.D.

Tex. May 22, 2019) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir.

2000)). "Put another way, jurisdictional discovery should typically be granted unless 'no amount

of information . . . would strengthen' the movant's jurisdictional claims." *Id.* (quoting *Wyatt v.

Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). As "evidence of jurisdictional facts is often largely or

wholly in the possession of an adverse party, broad jurisdictional discovery also ensures that

jurisdictional disputes will be 'fully and fairly' presented and decided." *Id.* (citing *Rozier v. Ford

Motor Co.*, 573 F.2d 1332, 1345 (5th Cir. 1978)).

Here, Ultravision has shown that personal jurisdiction is proper over AO and that venue

is proper as to AI. However, to the extent this Court disagrees, Ultravision requests that it be

permitted to conduct jurisdictional and venue discovery prior to a determination on the Motion.

With respect to personal jurisdiction, the parties' dispute turns in part on AO's role in or

awareness of the importation and sale of the accused products through AI to the U.S. and Texas.

Discovery is likely to uncover facts relevant to that dispute, including contracts between AO and

AI, (and/or other entities) that include details regarding the parties' relationship, AO's control

over and knowledge of AI and its activities, and AO's awareness of and role in the importation

and sale of accused products by AI in the U.S. and Texas. *Graftech*, 2014 WL 12591876, at *7.

---

Dkt. 44 (E.D. Tex. Dec. 6, 2017) (unlike here, the territories to which the sales teams are assigned "bears
little relation to the team members' place of residence").

Venue discovery is also appropriate because the parties' dispute turns in part on the degree of control exercised by AI over the employee's home, or the types of conduct engaged in by AI that constitutes ratification of the employee's home as a place of business of AI. Venue discovery with respect to those disputed factual premises will, therefore, facilitate resolution of the venue dispute "fully and fairly." *Rozier*, 573 F.2d at 1345. Venue discovery is likely to unearth facts relevant to the dispute, including, but not limited to, whether AI reimburses the employee for the home or expenses, the amount of control AI has over the location of the employee's home, the specific tasks performed by the employee at the home and in the District, details regarding the product demonstrations performed by the employee in the District, including at the home in the District, details regarding storage locations of AI's inventory, and whether business cards and other marketing materials suggest that the employee's home is a location of AI.  *See Mallinckrodt IP*, 2017 WL 6383610, at *5 (granting jurisdictional discovery because although "the record, at present, does not support [a finding of proper venue]," "discovery of the relationships" amongst the defendant and entities with offices in the district "may show" that each of the *Cray* factors are satisfied).

## VI.     TRANSFER IS NOT WARRANTED IN THE INTERESTS OF JUSTICE

### A.     Legal Standard

A motion to transfer venue pursuant to 28 U.S.C. § 1404(a) should be denied unless the defendant sets forth good cause showing how transfer is "clearly more convenient for *both* parties involved, non-party witnesses, expert witnesses, and in the interest of justice." *Aloft Media, LLC v. Adobe Sys.*, 2008 WL 819956, at *3 (E.D. Tex. Mar. 25, 2008) (emphasis added). This standard "'places a significant burden on [Defendants] to show good cause for transfer;' a burden that this Court does not take lightly." *Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, 2013 WL 682849, at *2 (E.D. Tex. Feb. 22, 2013) (citing *In re Volkswagen of Am., Inc.*, 545

15

F.3d 304, 314 n.10 (5th Cir. 2008) ("*Volkswagen II*")). "[T]ransfer is inappropriate when it

merely serves to shift inconveniences from one party to the other." *CXT Sys., Inc. v. Container

Store, Inc.*, 2019 WL 1506015, at *4 (E.D. Tex. Apr. 5, 2019) (citing *Kahn v. Gen. Motors

Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989)).

Motions to transfer venue are to be decided based on "the situation which existed when

suit was instituted." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (citing *Hoffman v.

Blaski*, 363 U.S. 335, 343 (1960)). The court must first determine whether the suit could have

been filed in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.

2004) ("*Volkswagen I*"). If the court answers this question affirmatively, it then considers the

Fifth Circuit's private and public interest factors. *Id.* The private-interest factors include: (1) "the

relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure

the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other

practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public-

interest factors include: (1) "the administrative difficulties flowing from court congestion;"

(2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the

forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of

conflict of laws." *Id.*

Here, Defendants have failed to meet their burden to show that transfer to the Middle

District of Florida is "clearly more convenient" for *all* parties and witnesses and in the interests

of justice, and that transfer would not merely shift the conveniences from one party to another.

*See Aloft Media*, 2008 WL 819956, at *3. As such, Ultravision's choice of forum should be

respected. *See Volkswagen II*, 545 F.3d at 315.[15]

---

[15] Defendants are incorrect in arguing that Ultravision's forum choice and Defendants' forum preference
are separate factors in the analysis, and that both favor transfer. Dkt. 83 at 12. In the Fifth Circuit, "the

### B.    The Private Interest Factors Weigh Against Transfer

### 1.    Relative Ease of Access to Sources of Proof Weighs Against Transfer[16]

For this factor to weigh in favor of transfer, Defendants must "*specifically identify* the relevant sources of proof (and why they are relevant), and *specifically identify* the physical location of those sources of proof." *Seven Networks*, 2018 WL 4026760, at *4. "Without doing so, no court is able to make an informed inquiry into the true convenience of the parties." *Id.*; *see also J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) ("A movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties.").

Defendants have failed to meet this burden. The only evidence Defendants proffer is the declaration of Mr. Ren which provides, "[t]o the extent there are any, Documents of AI related to the [accused products] would be located in Florida." Dkt. 83-2 ¶ 7. But these assertions "are not certain enough to factor into this analysis, as there is no basis for finding that any such evidence actually exists." *Uniloc USA, Inc. v. Huawei Device USA*, Inc., 2018 WL 7138384, at *3 (E.D.

---

appropriate deference afforded to the plaintiff's choice is reflected by the defendant's elevated burden of proof." *Seven Networks*, 2018 WL 4026760, at *2; *see also Volkswagen II*, 545 F.3d at 314 n.10 ("Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer. Thus, [the court's] analysis directly manifests the importance that [it] must give to the plaintiff's choice.")"Unless the balance of factors is **strongly** in favor of the defendant, the plaintiff's choice in forum should be respected." *CXT*, 2019 WL 1506015, at *1 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) (emphasis added); *Good Sportsman Mktg. LLC v. Testa Assocs., LLC*, 2005 WL 2850302, at *4 (E.D. Tex. Sept. 1, 2005) ("Defendants' preference for another forum, without more, is insufficient to warrant a transfer, and a transfer is not warranted if the result is to simply shift the inconvenience from one party to another."). As such, Defendants' reliance on *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (Dkt. 83 at 13), which applied Third Circuit law to evaluate the amount of deference to afford a foreign entity's choice of forum (Delaware)—something already accounted for here in the "good cause" standard— is misplaced. Additionally, unlike in that case, Ultravision is headquartered nearby in Dallas, has an office in this District, has employees that live in or near this District, and acts of infringement have occurred throughout Texas, including in this District. Robinson Decl. ¶¶ 6–13.

[16] Defendants concede that, although this factor is still considered in the analysis, it is entitled to diminished weight. Dkt. 83 at 15 n.6.

Tex. Sept. 6, 2018) (finding factor weighed *against* transfer where defendant's declaration included similar speculative statements that "to the extent" relevant documents exist, they "would" be maintained in transferee forum). Moreover, such vague and "general statements fail to show that transfer would make access to sources of proof more or less convenient for the parties." *Invitrogen Corp. v. Gen. Elec. Co.*, 2009 WL 331891, at *2 (E.D. Tex. Feb. 9, 2009) (finding general statements that "evidence in this case will likely be located . . . in England and New Jersey. . . fail to show that transfer would make access to sources of proof either more or less convenient for the parties"); *see also Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, 2013 WL 682849, at *3 (E.D. Tex. Feb. 22, 2013) (concluding that defendant's statement that "virtually all [defendant] business documents and records relating to the research, design, development, marketing strategy, and product revenue related to the Accused Products are located in or near Cupertino" was too vague to allow the court to weigh factor in the transfer analysis), *aff'd In re Apple Inc.*, 743 F.3d 1377, 1379 (Fed. Cir. 2014).

Defendants are silent as to AO sources of proof, which is also insufficient. *See Diem LLC v. BigCommerce Inc.*, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017) ("[A] failure to identify documents with specificity as to the documents and the location of the documents is a failure of the moving party to meet its burden on transfer."). Nonetheless, as the designer, developer and manufacturer of the accused products, AO is likely to have the bulk of the relevant evidence, including all technical documents relevant to infringement. All such documents would have to be transported a substantial distance regardless of the chosen venue, which weighs against transfer. *Uniloc*, 2018 WL 7138384, at *3.

Additionally, Ultravision is headquartered in Dallas, only approximately five miles outside of this District and only 157 miles from the Marshall Courthouse, and has an office in

this District. Exs. 6-7. Thus, Ultravision's sources of proof are located in this District or, at most, five miles away. *See CXT Sys.,* 2019 WL 1506015, at *2; *see also Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 776 (E.D. Tex. 2000) ("the distance between Marshall and Dallas is negligible."). This factor weighs against transfer. *See Seven Networks*, 2018 WL 4026760, at *7 (finding factor weighed *against* transfer, despite *In re Genentech*'s conclusion that the bulk of evidence will come from the accused infringer, because of the "probative, but speculative sources of proof identified by [defendant]"); *see also Core Wireless,* 2013 WL 682849, at *3.

### 2. Convenience of the Parties and Witnesses and Cost of Attendance for Willing Witnesses Weighs Against Transfer

The convenience of the parties is accorded less weight in a transfer analysis than the convenience of non-party witnesses. *See, e.g.*, *Abatix Corp. v. Capra,* 2008 WL 4427285, at *6 (E.D. Tex. Sep. 24, 2008). Nonetheless, this factor does not favor transfer because Ultravision is headquartered in Dallas with an office in this District, and Defendants are located in Florida and China. *See Abatix*, 2008 WL 4427285, at *6 (finding factor neutral where plaintiff had a principal place of business in Dallas and a server in Allen, Texas, and the defendants worked and resided in California); *see also Aloft Media LLC v. Adobe Sys. Inc.*, 2008 WL 819956, at *6 (E.D. Tex. Mar. 25, 2008) ("It is presumed in this district that the present forum is convenient for a plaintiff that has chosen to file here.").

For the Court to analyze the convenience of willing witnesses, the moving party must specifically identify the witnesses, *i.e.*, "name [] persons, their interest in the litigation, and where they reside"; otherwise, "the Court can only speculate as to the difficulty and cost of travel." *Core Wireless*, 2013 WL 682849, at *4; *see also Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 772653, at *10 (E.D. Tex. Feb. 28, 2017) ("…specific witnesses should be identified with, at a minimum, a general statement providing the expected relevant and material

information to the litigation at hand.). "To hold a movant to a lesser standard would simply encourage the naming of individuals within a corporation based solely on where they reside rather than their connection and relevant knowledge pertaining to a particular litigation." *Id*. (citation omitted).

Here, Defendants identify only three AI employees with allegedly relevant knowledge who are located "at or near Absen, Inc.'s headquarters in Orlando, Florida." Dkt. 83-2 ¶ 7.  The alleged convenience of these party witnesses "is given little weight." *Seven Networks*, 2018 WL 4026760, at *9; *see also, e.g., Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012). Although Defendants argue that other, unidentified employees reside in Florida or China (Dkt. 83 at 13), their conveniences cannot be considered. *Core Wireless*, 2013 WL 682849, at *4 ("While the Court acknowledges that [defendant's] unknown witnesses who are claimed to be in the [transferee forum] area would have to travel to attend trial in this District, it cannot weigh this factor without identification of those individuals.").[17]

With respect to third parties, although Defendants failed to identify *any* in their Motion, they identified ten third-party witnesses in their Initial and Additional Disclosures. Ex. 9. Of those ten, *none reside in MDFL. Id.* Two (prosecuting attorneys) reside in Texas, and six (inventors, prosecuting attorneys, and other third parties) reside in California. *Id.* Although all witnesses outside of Texas will be required to travel to testify regardless of venue, most will find it must more convenient to travel to Texas than Florida. The location of these individuals, therefore, weighs *against* transfer. *See ComCam Int'l, Inc. v. Mobotix Corp.*, 2014 WL 4229711, at *3-4 (E.D. Tex. Aug. 26, 2014) (finding that factor did not favor transfer because "party and the non-party witnesses are spread across the country," including "in California, Texas,

---

[17] Defendants did not identify a single witness of AO. Even if they had, any witnesses of AO would be required to travel to testify regardless of transfer, and many may consider it more convenient to travel to Texas than to Florida. *See MHL Tek*, 2009 WL 440627, at *4.

Massachusetts, Connecticut, and New York," and thus transfer would not "reduce the total inconvenience," but rather would "reassign inconvenience from certain witnesses to other witnesses"). Moreover, "to the extent certain witnesses (i.e. the inventors or prosecuting attorneys) are called to testify, they will likely be called in each of the [consolidated and co-pending] actions involving the [patents-in-suit]." *Id.* at *3. Thus, transfer to MDFL, while the seven co-pending cases remain in EDTX, "is therefore likely to multiply, not minimize, the inconvenience of the witnesses." *Id.*; *see also*,*CXT*, 2019 WL 1506015, at *3.

Additionally, this District is the most convenient for Ultravision, the owner of the

████████████████████████████████████████████████

District and 157 miles from the Marshall Courthouse. Exs. 6-7. This District is also most convenient for several of Ultravision's key witnesses, including Tandy Robinson and Matthew Foster, both of whom lived, and still live, in this District and work in the nearby Dallas office, and David Auyeung, who lived, and still lives, and works in this District. Robinson Decl. ¶¶ 11–13. This District is also the most convenient for Ultravision's technical expert, Joseph McAlexander III, who lives and works in this District. Ex. 5. Thus, this factor does not favor transfer. *See AGIS Software Dev. LLC v. Huawei Device USA Inc.,* 2018 WL 2329752, at *8 (E.D. Tex. May 23, 2018) (finding factor did not favor transfer where both sides had party witnesses for whom competing forums were respectively more convenient, and no third party witnesses to consider); *see also BigCommerce, Inc.*, 2017 WL 6729907, at *3.[18]

### 3.    The Availability of Compulsory Process Weighs Against Transfer

---

[18] *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014) (Dkt. 83 at 14) is inapplicable because, in that case, the Federal Circuit declined to disturb the district court's decision that the conveniences favored transfer where *all* of the witnesses with "core" information resided in the transferee forum. To the contrary, here, most of the identified party *and* non-party witnesses would find it more convenient to travel to Texas than California.

Defendants fail to address this factor, and it cannot favor transfer. Defendants fail to identify a *single* third party witness who might have relevant information, the domicile of any such witness, or the relevance and materiality of any such witness's testimony. This is insufficient. *See Core Wireless*, 2013 WL 682849, at *4 (concluding that defendant's failure to name and provide domiciles of unwilling third party witnesses precluded court from weighing this factor in the analysis); *Mears Techs., Inc. v. Finisar Corp.*, 2014 WL 1652603, at *2 (E.D. Tex. Apr. 24, 2014) (finding factor neutral where party offers "no explanation of what relevant and material information is to be obtained" from the identified third-party witnesses).

### 4.     All Other Practical Problems Weigh Against Transfer[19]

Judicial economy weighs heavily against transfer, as this Court is currently presiding over ten co-pending cases, including the instant case, which involve the same plaintiff, overlapping Asserted Patents, and substantially identical claims. *See supra* fn. 1.  Each of these actions will involve similar issues of claim validity, claim construction, claim scope, discovery, evidence, proceedings, and trials, as well as overlap with respect to testimony from fact witnesses and experts. No motions to dismiss or transfer are pending in seven of the co-pending actions. *See supra* fn. 3. Thus, transferring this case while at least seven related cases involving the same Asserted Patents and claims remain in this Court "would unavoidably risk duplicative proceedings involving the same or similar issues between different district courts and give rise to the inherent danger of potentially inconsistent rulings and constructions." *RPost Holdings, Inc. v. StrongMail Sys., Inc.*, 2013 WL 4495119, at *5 (E.D. Tex. Aug. 19, 2013). This is precisely the type of "wastefulness of time, energy and money that § 1404(a) was designed to prevent." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

Defendants' argument that this factor favors transfer based on the speculative situation

---

[19] Defendants incorrectly discuss this factor under the "public interest" factors. Dkt. 83 at 15.

that *may* result *if* AI is dismissed from this case (which is not warranted) and AO remains in this

District (Dkt. 83 at 15) is unavailing. With respect to judicial economy, "[t]he Court recognizes

those benefits that were apparent *at the time the instant action was filed*"—not sometime in the

future. *Chrimar Sys., Inc. v. D-Link Sys. Inc.*, 2016 WL 3574628, at *6 (E.D. Tex. Mar. 31,

2016) (emphasis added). In any event, the benefits achieved by having this Court preside over

the co-pending Current Texas Cases far outweighs any potential benefits that may occur as a

result transferring this case due to this speculative, unwarranted situation.

    Defendants' argument that its unidentified employees will also be inconvenienced *if* this

speculative situation were to occur is similarly unavailing, and fails for the same reasons

discussed *supra* Section VI.B.2. Additionally, the convenience of witnesses is not properly

considered under this factor, but rather "is properly considered under either the second factor,

relating to the Court's subpoena power to compel testimony at trial, or the third factor, which

relates to the cost of attendance for willing witnesses." *Huawei*, 2018 WL 2329752, at *3.[20]

    With respect to the place of the alleged wrong, which is not a separate factor (*see*

*Modisett v. Delek Ref., Ltd.*, 2019 WL 2395377, at *2 (E.D. Tex. June 5, 2019)), it is undisputed

that AI sells and/or offers to sell accused products to customers nationwide, including in Texas

and in this District. Dkt. 73 ¶¶ 6-7.[21] This weighs against transfer. *Candela Corp. v. Palomar*

---

[20] Defendants' case law (Dkt. 83 at 15) is irrelevant to this factor and inapposite. In *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008), unlike here, convenience of witnesses favored transfer because "all of the *identified* key witnesses" were located in or substantially closer to the proposed transferee forum than the original forum. Similarly, in *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), no witnesses were located in the selected forum, six of the defendants were headquartered in the transferee forum, and a substantial number of the *identified* witnesses resided in or near the transferee forum. As discussed *supra* section VI.B.2, that is not the case here.

[21] Defendants' argument that they have not sold accused products in this District *in the past two years* (Dkt. 83 at 13) fails to rebut Ultravision's allegations, including because: (a) the cited evidence does not support this statement (*see* Dkt. 83-3 ¶¶ 17-18); (b) Defendants do not dispute that they sold accused products in this District at other relevant times; and (c) Defendants do not dispute that they have engaged in *other* infringing acts in this District at all relevant times.

*Med. Techs., Inc.*, 2007 WL 738615, at \*4 (E.D. Tex. Feb. 22, 2007) (finding "place of the

alleged wrong" weighed against transfer where it was "undisputed that at least some of the

alleged acts of infringement, namely sales of the accused products, occur within this district").

Accordingly, all other practical problems weigh against transfer.

### C.     The Public Interest Factors Weigh Against Transfer

#### 1.     Court Congestion Weighs Against Transfer

Defendants concede that the average length of time between filing and trial in EDTX is

less than in MDFL. Dkt. 83 at 16. Thus, this factor weighs against transfer. *See Peloton*

*Interactive, Inc. v. Flywheel Sports, Inc.*, 2019 WL 2303034, at \*5 (E.D. Tex. May 30, 2019), \*5

(finding factor weighs against transfer because statistics in Federal Judicial Caseload Statistics

showed that the length of time between filing and trial was less in EDTX than transferee forum).

Defendants' reference to judgeships (Dkt. 83 at 16) is irrelevant. *See Seven Networks*, 2018 WL

4026760, at \*14 ("The relevant inquiry under this factor is '[t]he speed with which a case can

come to trial and be resolved….'") (citation omitted).

#### 2.     Local Interest Weighs Against Transfer

This District has a local interest in this dispute because Ultravision maintained (and still

maintains) an office in this District, where Ultravision employees work, and many Ultravision

employees and key witnesses lived (and still live) in or near the District. Robinson Decl. ¶¶ 10–

13. Ultravision's headquarters are nearby in Dallas, only approximately five miles from this

District, and the accused products have been sold or offered for sale throughout Texas, including

in this District. Exs. 6-7. This factor does not favor transfer. *See Candela*, 2007 WL 738615, at

\*5 ("Given that some of the alleged actions of infringement occurred in this District, there exists

some local interest in adjudicating this dispute."; finding factor weighed against transfer); *see*

*also Rackspace*, 2017 WL 772653, at \*12 (finding factor neutral and that District had some local

interest given that plaintiff had two offices and one employee here). Furthermore, where, like here, "the accused products are used and sold throughout the country, the alleged injury does not create a substantial local interest in any particular district. *CXT*, 2019 WL 1506015, at *5.

Defendants concede that the remaining public interest factors do not favor transfer. *See* Dkt. 15-16. Accordingly, Defendants have failed to meet their "significant burden" to show that transfer would be "clearly more convenient," and their Motion should be denied.

## VII.   ULTRAVISION HAS SUFFICIENTLY PLED INDUCED INFRINGEMENT

A motion to dismiss under Rule 12(b)(6) raises purely procedural questions that are governed by the law of the regional circuit. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007)). In the Fifth Circuit, motions to dismiss "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted).[22] To survive a motion to dismiss on a claim for indirect (induced) infringement, a complaint must "contain facts plausibly showing an accused infringer specifically intended its customers to infringe the patent or patents-in-suit and knew that customers' actions constituted infringement." *Bill of Lading*, 681 F.3d at 1339. However, a plaintiff "need not prove its inducement case at the time of filing, nor must it provide detailed factual support for every element of inducement." *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, 2012 WL 9864381, at *5 (E.D. Tex. July 27, 2012); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very

---

[22] Courts faced with motions to dismiss must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted)).

remote and unlikely.") (internal quotation marks and citation omitted).

Here, Ultravision's allegations satisfy this standard. Ultravision alleges that Defendants had knowledge of the Asserted Patents at least as of the date of the filing of the respective complaints asserting them, and of the infringing products, and with that knowledge, knowingly and intentionally induced, and continue to induce, direct infringement by "other Defendants," "distributors," "sign installers," "U.S.-based sales entities, such as AI," "affiliates," "customers, installers, and end users," by supplying the infringing products to those direct infringers with knowledge, intent, or willful blindness that they would infringe. Dkt. 73 ¶¶ 39-41, 46-47, 49-50, 52, 54, 68-71, 86-89, 100-103, 113-16, 128-31, 142-44. *See, e.g.*, *Semcon IP Inc. v. Kyocera Corp.*, 2019 WL 1979930, at * 4 (E.D. Tex. May 3, 2019) (denying motion to dismiss indirect infringement claim based on allegations that defendant "knowingly and intentionally inducing others . . . including [] customers and end users, to directly infringe . . . by making, using, offering to sell, selling and/or importing into the United States products. . . that include infringing technology" and had knowledge of the patents at least as of the date of the complaint).

Defendants' arguments (Dkt. 83 at 16-20) are unavailing. First, Defendants argue that Ultravision failed to identify "any specific direct infringers that have purportedly committed acts of infringement." Dkt. 83 at 18. However, the law is well-settled that "[t]o state a claim for indirect infringement . . . a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *Bill of Lading*, 681 F.3d 1323 at 1336 (emphasis in original); *accord Cywee Grp. Ltd. v. Huawei Device Co.*, 2018 WL 3819392, at *3 (E.D. Tex. Aug. 10, 2018); *Pers. Audio*, *LLC v. Google*, *Inc.*, 2017 WL 4837853, at *7 (E.D. Tex. May 15, 2017). The FAC identifies "other Defendants," "distributors," "sign installers," "U.S.-based sales entities, such as AI," "affiliates," "customers, installers, and end

26

users" as direct infringers (Dkt. 73 ¶¶ 39-41, 46-47, 49-50, 52, 54, 68-71, 86-89, 100-103, 113-

16, 128-31, 142-44), which is sufficient to allow an inference that at least one direct infringer

exists and survive Defendant's motion to dismiss. *See Bill of Lading*, 681 F.3d at 1336 ("Given

that a plaintiff's indirect infringement claims can succeed at trial absent direct evidence of a

specific direct infringer, we cannot establish a pleading standard that requires something more.");

*see also Lochner Techs., LLC v. AT Labs Inc.*, 2012 WL 2595288, at *4 (E.D. Tex. July 5, 2012)

(holding that identifying direct infringers as "end users of the above-referenced products" is

sufficient to survive a motion to dismiss indirect infringement claims); *Pers. Audio*, 2017 WL

4837853, at *7 ("Identifying 'customers' and 'manufacturers' behind the indirect infringement

claims is sufficient at the pleading stage."); *Opticurrent, LLC v. Power Integrations. Inc.*, 2016

WL 9275395, at *3 (E.D. Tex. Oct. 19, 2016) (holding that general allegations that "customers . .

. directly infringe the [asserted patent] by using, importing, marketing, selling, or offering for

sale the accused products" is sufficient to state a claim for induced infringement"); *Lone Star*

*Document Mgmt., LLC v. Atalasoft, Inc.*, 2012 WL 4033322, at *4 (E.D. Tex. Sept. 12, 2012)

("generically identif[ying] direct infringers as the 'end users in the Eastern District of Texas' . . .

is sufficient to survive a Motion to Dismiss.").

Second, Defendants' argument that Ultravision failed to plead facts showing that

Defendants had pre-litigation knowledge of the Asserted Patents (Dkt. 83 at 18-19) also fails. As

this Court has recognized, the failure to allege pre-suit knowledge "is not a basis to dismiss

[plaintiff's] indirect infringement claims." *Lochner*, 2012 WL 2595288, at *3.[23] Rather, an

allegation that the defendant had knowledge of the patent *as of the filing of the complaint* is

---

[23] *Opticurrent*, 2016 WL 9275395, at *2 (*citing Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) (Gilstrap, J.) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results. If pre-suit knowledge were required, companies would have carte blanche to induce infringement purposefully provided that they were unaware of the patent prior to suit.").

"sufficient to provide knowledge of the patent for purposes of indirect infringement, at least from the time of the complaint going forward." *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 2016 WL 1643315, at *4 n.4 (E.D. Tex. Apr. 26, 2016) (collecting cases); *see also, e.g.*, *Lochner*, 2012 WL 2595288, at *3 (holding that alleging knowledge "at the time of the filing of the Complaint" sufficient to defeat a motion to dismiss indirect infringement claim); *see also Bill of Lading*, 361 F.3d at 1345–46 (noting that complaints that allege knowledge "at the latest . . . when [defendant] was served with the complaint").[24]

Here, there is no dispute that Defendants had knowledge of the '782 Patent at least as early as the date of the filing of the initial Complaint, and of newly-added Asserted Patents (the '272 Patent, the '869 Patent, the '294 Patent, the '904 Patent, the '791 Patent, the '372 Patent, and the '105 Patent), at least as early as the date of filing of the FAC. Dkt. 83 at 18-19 & n.19; *accord* Dkt. 73 at ¶¶ 40, 53, 70, 88, 102, 115, 130, 143. The FAC also alleges that Defendants, *with knowledge* of the Asserted Patents and the infringing products, knowingly and intentionally induced, and *continue* to knowingly and intentionally induce, direct infringement by third parties. Dkt. 73 at ¶¶ 41, 54, 71, 89, 103, 116, 131, 144. This is sufficient. *See Lochner*, 2012 WL 2595288, at *3; *Opticurrent,* 2016 WL 9275395, at *2; *Tierra*, 2014 WL 1233040, at *2; *Erfindergemeinschaft*, 2016 WL 1643315, at *4 n.4.[25]

Third, Defendants' argument that Ultravision failed to allege that Defendants took

---

[24] *Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, 2013 WL 12138894, at *3 (E.D. Tex. Nov. 21, 2013) ("Post-suit knowledge of the patents-in-suit alone does not provide a basis for dismissing Norman's indirect infringement claims with respect to alleged infringing activity occurring after the Second Amended Complaint.").

[25] Defendants' reliance on *Bush Seismic Techs. LLC v. Am. Gem Soc'y*, 2016 WL 9115381, at *2-3 (E.D. Tex. Apr. 13, 2016) (Dkt. 83 at 19 n.7), is misguided. In that case, the court granted a motion to dismiss willful and induced infringement claims based on the knowledge requirement set forth in *In re Seagate*, 497 F.3d 1360 (Fed. Cir. 2007), which has since been expressly **overruled** by *Halo Elecs. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016). Today, the law is clear:  the failure to allege pre-suit knowledge is **not** a basis to dismiss indirect infringement claims. *See, e.g., Lochner*, 2012 WL 2595288, at *3.

affirmative actions to induce their customers to infringe the Asserted Patents, or that Defendants' customers have in fact directly infringed the Asserted Patents (Dkt. 83 at 19-20), improperly imposes a heightened pleading standard on Ultravision. A plaintiff is not required to "plead facts establishing that each element of an asserted claim is met" and "need not even identify which claims it asserts are being infringed." *Bill of Lading*, 681 F.3d at 1335. Ultravision alleges that Defendants knowingly and intentionally induce infringement by "*actively encouraging*" third parties to engage in infringing acts, and knowing and intentionally sell or provide accused products to direct infringers, *knowing* that these entities intend to use the accused products in an infringing manner. Dkt. 72 at ¶¶ 39, 52, 69, 87, 101, 114, 128, 142 (emphasis added). For example, the FAC alleges that the Altair series allows a third party, such as a sign installer, to detachably mount a sub-assembly at a first location, move the sub-assembly to a second location and build a multi-panel display system at the second location, that such conduct infringes at least claim 1 of the '272 Patent, and that Defendants, with knowledge and intent, *actively encourage* and induce such third parties to engage in the very conduct known to infringe, *i.e.*, "detachably mount[ing] sub-assemblies at a first location, and build[ing] sub-assemblies into a multi-panel display at a second location." *Id.* ¶¶ 46-54. Thus, considering the complaint, "as a whole" and "the facts . . . in the context of the technology disclosed in the [patent] and the [LED billboard] industry," it is "reasonable and plausible" to infer that Ultravision specifically intended to induce its customers to infringe the Asserted Patents and knew the customers' acts constituted infringement. *Bill of Lading*, 681 F.3d at 1340; *see also InMotion Imagery Techs. v. Brain Damage Films*, 2012 WL 3283371, at *1, 3 (E.D. Tex. Aug. 10, 2012) (finding allegation that defendant "actively induced others to infringe" sufficient to satisfy specific intent requirement and state a claim for induced infringement, and noting that detailed factual support is not

necessary for every element of inducement); *see also*, *Semcon IP*, 2019 WL 1979930, at *3–*4.

Accordingly, Ultravision has sufficiently pled indirect infringement, and Defendants'

Rule 12(b)(6) motion must be denied.[26] If this Court finds that the FAC is insufficient,

Ultravision seeks leave to submit an amended complaint.[27]

## VIII.   CONCLUSION

For the foregoing reasons, Ultravision respectfully requests that the Court deny

Defendants' Motion to Dismiss under Rules 12(b)(2), 12(b)(3), and 12(b)(6), and deny

Defendants' request to transfer. In the alternative, Ultravision requests that it be permitted to

conduct jurisdictional and venue discovery, or amend its FAC.

Dated: July 12, 2019                                     Respectfully submitted,

                                                         */s/ Alfred R. Fabricant*
                                                         Alfred R. Fabricant
                                                         NY Bar No. 2219392
                                                         Email: afabricant@brownrudnick.com
                                                         Lawrence C. Drucker
                                                         NY Bar No. 2303089
                                                         Email: ldrucker@brownrudnick.com
                                                         Peter Lambrianakos
                                                         NY Bar No. 2894392
                                                         Email: plambriankos@brownrudnick.com

---

[26]  Defendants' case law (Dkt. 83 at 19-20) is inapposite. *In Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538, 544 (E.D. Tex. 2010), the court concluded that the plaintiff failed to sufficiently plead indirect infringement based in part on the plaintiff's "fail[ure] to identify which other party committed the underlying act of infringement." To the contrary, here, as discussed, Ultravision has identified numerous third party direct infringers, including its customers, installers and end users (Dkt. 73 ¶¶ 39-41, 46-47, 49-50, 52, 54, 68-71, 86-89, 100-03, 113-16, 128-31, 142-44), which is sufficient to defeat Defendants' motion to dismiss. *See, e.g., Lochner*, 2012 WL 2595288, at *2. In *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, 2016 WL 3542430, at *4-5 (E.D. Tex. June 28, 2016), the court dismissed the complaint, including the indirect infringement claim, because, unlike here, the complaint inadvertently included language from another case that was "completely unrelated" to the patent-in-suit, and thus did not plausibly allege facts to support the asserted claims. In *Bill of Lading*, the Federal Circuit concluded that the induced infringement claim was sufficiently pled, and reversed the district court's conclusion to the contrary.
[27] *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 2009 WL 1758758 at *3 (S.D. Tex. June 22, 2009) ("When a plaintiff's complaint must be dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.") (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@brownrudnick.com
Timothy J. Rousseau
NY Bar No. 4698742
Email: trousseau@brownrudnick.com
Sarah G. Hartman
CA Bar No. 281751
Email: shartman@brownrudnick.com
Alessandra C. Messing
NY Bar No. 5040019
Email: amessing@brownrudnick.com
John A. Rubino
NY Bar No. 5020797
Email: jrubino@brownrudnick.com
Daniel J. Shea
NY Bar No. 5430558
Email: dshea@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Fax: (212) 209-4801

Samuel F. Baxter
Texas Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Fax: (903) 923-9099

*ATTORNEYS FOR PLAINTIFF*
*ULTRAVISION TECHNOLOGIES, LLC*





## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on July 12, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant