# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>GOVISION, LLC<br><br>           Defendant. | Case No. 2:18-cv-00100-JRG-RSP<br>LEAD CASE |
| ULTRAVISION TECHNOLOGIES, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>SHENZHEN ABSEN OPTOELECTRONIC CO., ET AL.<br><br>           Defendants. | Case No. 2:18-cv-00112-JRG-RSP<br>MEMBER CASE |

**SHENZHEN ABSEN OPTOELECTRONIC CO. AND ABSEN, INC.'S REPLY TO ULTRAVISION TECHNOLOGIES, LLC'S RESPONSE IN OPPOSITION TO THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER RULES 12(b)(2), 12(b)(3) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE, OR IN THE ALTERNATIVE TO TRANSFER**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ANALYSIS............................................................................................................................1

    A. This court lacks specific jurisdiction over Absen Opto under a "stream of commerce" theory because Absen Opto has no direct ties to Texas. .....................1

    B. Ultravision's claim that one employee's residence is an Absen place of business directly contradicts the Federal Circuit's holding in *In re Cray*............................3

    C. Absen Opto.'s case should be transferred to the Middle District of Florida because proof sources are there and transfer serves judicial efficiency. .............................6

    D. Ultravision's indirect infringement allegations should be dismissed because they include only threadbare recitals for the knowledge requirement.........................10

III. CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3D Sys. v. Aarotech Labs., Inc.*,
   160 F.3d 1373 (Fed. Cir. 1998) ...................................................................................... 1, 2

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994) ............................................................................................ 3

*In re Cray*,
   871 F.3d 1355 (Fed. Cir. 2017) ............................................................................... 1, 3, 4, 5

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) ........................................................................................ 6, 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 919 (2011) ............................................................................................................ 2

*In re Google Inc.*,
   Case No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017) ..................... 7

*In re Link_A_Media Devices Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011) .......................................................................................... 8

*Machinery, Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ............................................................................................................ 2

*In re Morgan Stanley*,
   417 Fed. Appx. 947 (Fed. Cir. 2011) .................................................................................. 9

*Nalco Co. v. Chem-Moc, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018) ......................................................................................... 10

*RegenLab USA LLC v. Estar Tech. Ltd.*,
   335 F. Supp. 3d 526 (S.D.N.Y. 2018) ................................................................................. 5

*Smith v. Poly Expert, Inc.*,
   186 F. Supp. 3d 1297, 1305 (N.D. Fla. 2016) ..................................................................... 3

*Uniloc USA v. Nutanix*,
   No. 2:17-cv-00174-JRG, Dkt. No. 44 (E.D. Tex. Dec. 6, 2017) ......................................... 5

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ........................................................................................... 6, 9

**I.     INTRODUCTION**

The relevant facts and Absen's connections to Texas lead to the conclusion that this case should be dismissed or transferred to the Middle District of Florida. Particularly, the U.S. subsidiary has one traveling employee whose residence happens to be in Eastern Texas. This employee's home is not a regular and established place of business and *In re Cray* confirms there is no venue over the U.S. subsidiary. Absen Inc.'s case, therefore, should be dismissed or transferred. The China-based parent company, has no direct ties to Texas and the interests of justice would best be served if it is dismissed due to lack of personal jurisdiction or, at least, transferred, so that the Middle District of Florida can adjudicate the same patents, the same products, and the same allegedly infringing sales by both Absen, Inc. and Absen Opto.

**II.    ANALYSIS**

    **A.     This court lacks specific jurisdiction over Absen Opto under a "stream of commerce" theory because Absen Opto has no direct ties to Texas.[1]**

There are two categories of personal jurisdiction—general personal jurisdiction and specific personal jurisdiction. Ultravision's sole allegation is grounded in specific personal jurisdiction.

But, Ultravision is wrong. Absen Opto does not have the requisite "minimum contacts" with Texas to establish specific jurisdiction. There is a three-prong "minimum contacts" test: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." *3D Sys. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998). Absen Opto does not purposely direct activities at Texas.

---

[1] Ultravision's Opposition changed the order in which the relevant issues were briefed. For the Court's convenience, this Reply follows the layout in Ultravision's Opposition.

1

Indeed, Absen Opto does not do anything in Texas. Dkt. No. 83-3 at ¶¶ 6-15. Nor does Absen Opto actively encourage its sales subsidiary, Absen Inc., to target Texas. Ren II Dec. at ¶ 2. In *3D Sys.*, the Federal Circuit held that publishing a national website and being identified on letterhead aimed at California residents was insufficient because the parent "did not take any direct actions toward the residents of California." *3D Sys.*, 160 F.3d at 1380. Absen Opto similarly does not specifically direct actions towards Texas or any of its residents. Thus, Ultravision is unable to overcome the prong one hurdle of the Federal Circuit's "minimum contacts" test for specific personal jurisdiction.

Nevertheless, Ultravision argues that "minimum contacts" are satisfied under a "stream-of-commerce" theory. Dkt. No. 98 at pp. 6-10. Ultravision also argues that *3D Sys.* is inapposite. *Id.* at p. 9. As a preliminary matter, *3D Sys.* is not inapposite because it particularly considered whether there was "specific personal jurisdiction." There should be no doubt that "stream-of-commerce" is a specific personal jurisdiction test, not something else. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 919-20 (2011). Thus, Ultravision cannot traverse *3D Sys.* simply by relying on "stream-of-commerce."

Ultravision's "stream-of-commerce" theory balances on the argument that "minimum contacts" are met via "reasonable foreseeability" that products in commerce will make their way into Texas. At least one court has found that this argument is inconsistent with due process and Supreme Court precedent:

> [U]nder [*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011)] foreseeability alone is not enough to satisfy the demands of Due Process, at least when a seller only rarely conducts business in the forum state. In other words, assuming that the stream-of-commerce test remains good law, *Nicastro* makes clear that a cause of action must arise out of a true *stream*, and not an eddy, in order to support the exercise of personal jurisdiction.

*Smith v. Poly Expert, Inc.*, 186 F.Supp.3d 1297, 1305 (N.D. Fla. 2016) (emphasis in original) (citations omitted). Absen Opto proposes that this is the proper reading of Supreme Court precedent and, thus, it is not subject to specific personal jurisdiction here because it does not create a "a true stream" of accused products into Texas.

Ultravision relies on the Federal Circuit's holding in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). In *Beverly Hills Fan*, however, the facts were different than they are here. In *Beverly Hills Fan*, the defendants established a specific "commercial relationship" with Builder's Square, a retail entity that possessed over fifty accused products at its retail stores in the forum. *Id*. at 1564. Absen Opto's only commercial relationship is with Absen Inc. and Absen Inc. does not have any retail locations in East Texas. Dkt. No. 83-2 at ¶ 6. *Beverly Hills Fan* confirmed the "minimum contacts" of due process "must be purposeful contacts" and Absen Opto has no such contacts. *Beverly Hills Fan,* 21 F.3d at 1565.

Therefore, Absen Opto should not be subject to specific personal jurisdiction here.

    **B.**    **Ultravision's claim that one employee's residence is an Absen place of business directly contradicts the Federal Circuit's holding in *In re Cray*.**

The venue dispute here relates to Absen, Inc.—the defendant with its principle place of business in Florida and no places of business in Texas. Ultravision's venue claim relies on one traveling employee who lives in Anna, Texas. The Federal Circuit already confronted this circumstance. For remote employees, the operative issue is whether the employee's home is "a place *of the defendant*, not solely a place of the defendant's employee." *In re Cray*, 871 F.3d 1355, 1363 (Fed. Cir. 2017) (emphasis in original). This analysis is critical because "[e]mployees change jobs. Thus, the defendant must establish or ratify the place of business. It is not enough that the employee does so on his or her own." *Id*.

3

The Federal Circuit laid out helpful guidance for determining whether the employee's home is actually a place of business *of the defendant*. Particularly, the Federal Circuit recommends considering the following: (1) whether the defendant owns or leases the place or exercises some control over the place, (2) whether defendant conditions employment on the employee living where the employee lives so that products can be stored and sold from there, (3) whether the employee stores inventory of products, (4) advertising or marketing the home as a place of business, and (5) the nature of the business conducted from the home in comparison to the defendant's business carried out elsewhere. *In re Cray*, 871 F.3d at 1363-64.

Ultravision conjectures there is a "difficult" decision here because a generic online posting says that Absen provides "support across the nation" and a non-Texas employee's LinkedIn page states Absen has "stock on hand throughout the U.S." Dkt. No. 98 at pp. 12-13. Neither of these postings, nor anything else cited by Ultravision, can be used to credibly contradict Absen's sworn declarations related to what transpires in Anna, Texas. All relevant factors point to no regular and established place of business in the district and there is no "difficult" decision—no discovery is needed.

Particularly (1) Absen has no control or ownership interest in any property in East Texas, including Mr. Rosenberg's home. Dkt. No. 83-2 at ¶ 6. Next, (2) Mr. Rosenberg is free to live where he chooses and is not conditioned to live in Texas, let alone East Texas—he lives there by his own choice. Ren II Dec. at ¶ 3. Further, (3) Mr. Rosenberg does not receive products at his home. Ren II Dec. at ¶ 4; Dkt. 83-2 at ¶ 6.[2] Also, (4) neither Absen, Inc. nor Mr. Rosenberg advertise his home as an Absen place of business on the web, in brochures, or other Absen-sponsored marketing pamphlets. Ren II Dec. at ¶ 5. Lastly, (5) Mr. Rosenberg does not sell or

---

[2] A non-Texas employee's generic LinkedIn statement does not overcome Mr. Ren's sworn declaration on this point.

ship any products from his home, unlike traditional Absen, Inc. places of business where products are sold and shipped from. Ren II Dec. at ¶ 6.

These facts fall in line with and even more tend towards no venue than the facts in *Uniloc USA v. Nutanix*, No. 2:17-cv-00174-JRG, Dkt. No. 44 (E.D. Tex. Dec. 6, 2017). In *Uniloc* this Court found *nineteen* in-District employees were insufficient for venue because the circumstances of their residences aligned with the *In re Cray* analysis. *Id.* at p. 6. This holding was at least in part because the employee homes were not owned by the defendant, the employees "do not regularly maintain inventory," and the employees were free to live where they choose. *Id.* Ultravision is unable to distinguish *Uniloc*. *Id.* In fact, Ultravision tried, but Ultravision wrongly assumed that Mr. Rosenberg was in the District at Absen's request. Dkt. No. 98 at FN 14. Mr. Rosenberg is free to live where he pleases. Ren. II Dec. at ¶3.

Ultravision also attempted to analogize this case to a holding in the Southern District of New York where *In re Cray* was distinguished. *See* Dkt. No. 98 at pp. 11-13 (relying on *RegenLab USA LLC v. Estar Tech. Ltd.*, 335 F. Supp. 3d 526 (S.D.N.Y. 2018)). Even if *RegenLab* were controlling, the facts here do not resemble the facts there. Particularly, in *RegenLab*, all of the defendants' employees worked out of home, thus, a resident's home was not distinct from the defendants' other places of businesses. *RegenLab*, 335 F. Supp. 3d at 549. Also in *RegenLab*, the subject employee's sales territory was limited to New Jersey and New York—where the case was being litigated. *Id.* As explained above, Mr. Rosenberg's situation is meaningfully different.

Under the Federal Circuit's ruling in *In re Cray* and this Court's application of that ruling in *Uniloc*, Mr. Rosenberg's home is not an Absen Inc. "regular and established place of business." It is simply the coincidental location of where a national sales representative lives.

Therefore, venue is improper as to Absen, Inc. and at least Absen, Inc. should be dismissed or transferred (to the Middle District of Florida).

        **C.    Absen Opto.'s case should be transferred to the Middle District of Florida because proof sources are there and transfer serves judicial efficiency.**

Ultravision aptly points out that transfer is proper when another district is "clearly more convenient." In this case, transfer to Florida is "clearly more convenient."

Private Interest Factors

Ultravision identifies the four "private interest factors" from *In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004): (1) access to sources of proof, (2) witness convenience, (3) compulsory process, and (4) other practical problems. Dkt. No. 98 at pp. 17-22. Three of the four favor transfer and the fourth is neutral. Thus the private interest factors indicate transfer is "clearly more convenient."

The three factors that favor transfer are (1) access to sources of proof, (2) witness convenience, and (4) practical problems. With respect to access to sources of proof, the Federal Circuit points out that "the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, any US-based documents of the accused infringer are found in Florida. Dkt. No. 83-2 at ¶ 7. None are in Texas. *Id.* Ultravision argues that it is unable to discern the types of documents that could be in the possession of a U.S. sales subsidiary, but they include accused product specifications, balance sheets, profit and loss statements, employee agreements, distributor agreements, customer lists, packing lists, and bills of lading. Ren II Dec. at ¶ 8.[3] No relevant documents

---

[3] Absen notes that this case was previously litigated through fact discovery in the International Trade Commission and, in that case, Absen already produced to Ultravision technical documents related to a portion of the accused products. Damages were not at issue in the ITC Investigation and the majority of damages documents are in the possession of the U.S. sales subsidiary and in Florida.

6

have been specifically identified in East Texas.  The location of sources of proof weighs in favor of transfer.

The convenience of party witnesses also favors transfer.  Consistent with its opening motion, Absen's initial disclosures identified five relevant employees, all work in the Middle District of Florida: Frank Ren, Xin Yu, John Murphy, Feifan Lu, and James Liu.  Dkt. No. 77; Exh. A.  Absen's initial disclosures also describe the types of relevant discovery each possesses. *Id*.  Ultravision only identifies three witnesses that live in the District, two of whom work outside the District.[4]  Dkt. No. 98 at p. 20.  Thus, witness convenience should weigh in favor of transfer.

Next, critical judicial efficiency problems result from not transferring Absen Opto. to the Middle District of Florida if there is no venue over Absen Inc.  Without venue, Absen Inc.'s case should be dismissed or proceed in the Middle District of Florida.  If it proceeds in Florida and Absen Opto's case proceeds here, there will be two different courts adjudicating the same matter which will unnecessarily increase litigation costs.  Likewise, it would result in two courts ruling on the same issues because the same patents, the same accused products, and the same sales would be subject to parallel litigations.  Judicial economy strongly favors Absen Inc. and Absen Opto's cases being heard in the same venue.

Ultravision tries to circumvent this efficiency issue by arguing that there are ten co-pending cases in the Eastern District of Texas.  Dkt. No. 98 at p. 22.  The Federal Circuit has already held that a plaintiff cannot automatically tip the transfer scales by filing multiple litigations in the transferor district.  *In re Google Inc.*, Case No. 2017-107, 2017 U.S. App.

---

[4] Ultravision also identifies a technical expert in the District.  Absen is not aware of any precedent supporting that a party can retain an expert after the complaint is filed and use that witnesses' location to affect the transfer analysis.  Indeed, if it did, a party would be able to alter the transfer analysis by hiring experts in a particular venue.  It also is not in line with the fact that the proper venue analysis should take place in view of the facts at the time of the filing of the complaint.

7

LEXIS 4848, at *5 (Fed. Cir. Feb. 23, 2017) ("Based on the district court's rationale, therefore, the mere co-pendency of related suits in a particular district would automatically tip the balance in non-movant's favor regardless of the existence of copending transfer motions and their underlying merits. This cannot be correct."). Further, this is not the type of case where co-pending litigations materially affect judicial economy. All four parties that have answered in the ten referenced cases have moved to transfer or dismiss. *See* 2:18-cv-150, Dkt. No. 40 (NEC's motion to dismiss); Dkt. No. 83 (Absen's motion to dismiss); Dkt. No. 93 (Prismaflex's motion to dismiss); Dkt. No. 101 (Yaham's motion to dismiss). For the other six cases, the defendants have not been served with a complaint, despite the original complaint being filed more than a year ago and the parties already having substantially litigated in the International Trade Commission. It remains unclear whether Ultravision will even effectuate service on the additional parties. It would be unfair for Ultravision to tip the transfer analysis based on lawsuits which it may not even be pursuing.

It is unclear how the court will rule on the other pending motions, but if the court agrees that venue is improper as to Absen, Inc., judicial economy should strongly favor litigating Absen, Inc. and Absen Opto's cases together in Florida—none of the other cases relate to Absen's products.

Notably, Ultravision repeatedly notes that its headquarters is five miles outside the Eastern District of Texas. The salient point, however, is that Ultravision is located *outside* the Eastern District of Texas. It specifically avoided its home district even though this district has little connection to this matter. *See, e.g., In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (noting that plaintiff's choice of forum is "entitled to less deference" when "a plaintiff brings its charges in a venue that is not its home forum").

8

The private interest factors indicate that Florida is "clearly more convenient."

Public Interest Factors

There are four public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen*, 371 F.3d at 203.

The first and second favor transfer. With respect to the first, Ultravision argues that a slight advantage in speed to trial does not favor transfer, but the Federal Circuit has held that "we do not regard the prospective speed with which this case might be brought to trial to be of particular significance" where there is no showing that rapid disposition would be important. *In re Morgan Stanley*, 417 Fed. Appx. 947, 950 (Fed. Cir. 2011). There is no showing of importance for speed here considering Ultravision already litigated a portion of this case up to the end of expert discovery at the ITC and then abandoned the complaint—the case would have come to final Commission resolution within the next two months. Ultravision also has not requested injunctive relief. *See* Dkt. No. 73. On the other hand, the first public interest factor should favor transfer due to the judicial efficiencies associated with one court handing the same issues, as explained above and in Absen's original motioin. Dkt. No. 83 at pp. 15-16.

The local interest (second public factor) also favors Florida. The Eastern District of Texas happens to be the residence of a few Ultravision employees and is the alleged location for some small number of sales and offers for sale of Absen Inc. products. Thus, Eastern Texas' local interest is seemingly minimal considering the identified Ultravision employees appear to have no direct interest in the patents in suit and there is not an alleged large amount of sales in

9

the district.  Florida has a larger interest considering Absen, Inc. is headquartered there and all relevant accused product sales flow from Absen, Inc.  This factor should also favor transfer.

> **D. Ultravision's indirect infringement allegations should be dismissed because they include only threadbare recitals for the knowledge requirement.**

Ultravision's Opposition provides no specific showing that Absen "specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement."  *Nalco Co. v. Chem-Moc, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018).  That is what is required and because Ultravision is unable to cure this deficiency, Ultravision's indirect infringement claims should be dismissed.

Tellingly, Ultravision's indirect infringement allegations against Absen are effectively verbatim recitations of other allegations in its co-pending complaints.  *Compare* Dkt. No. 69 at ¶¶ 33-36 (AOTO Amended Complaint indirect infringement allegations on the '782 patent) *with* Dkt. No. 73 at ¶¶ 38-41 (Absen Amended Complaint indirect infringement allegations on the '782 patent).  The Federal Circuit, interpreting Supreme Court precedent, requires that indirect infringement be plead with sufficient particularity and underlying facts.  Here Ultravision's pleading fails to reach that standard and the body of cases dismissing indirect infringement allegations should be followed.

## III. CONCLUSION

For the foregoing reasons, Absen Inc. and Absen Opto respectfully request that this case be dismissed or transferred.  To the extent it is not dismissed or transferred, Absen respectfully requests that Ultravision's indirect infringement allegations be dismissed.

Dated this 19th day of July, 2019

Respectfully submitted,

*/s/ Patrick J. McCarthy*
Mark G. Davis (Texas Bar No. 24096062)
Ronald J. Pabis (DC Bar No. 473023)
Patrick J. McCarthy (DC Bar No. 990490)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
DG-AbsenDCt@goodwinlaw.com

Melissa Richards Smith (Texas Bar No. 24001351)
Harry Lee Gillam, Jr. (Texas Bar No. 07921800)
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257
melissa@gillamsmithlaw.com
gil@gillamsmithlaw.com

*Counsel for Shenzhen Absen Optoelectronic Co., Ltd. and Absen, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 19th day of July, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

*/s/ Patrick J. McCarthy*
Patrick J. McCarthy