**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-00100-JRG-RSP |
| | ) | (LEAD CASE) |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| GOVISION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| ULTRAVISION TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-00108-JRG-RSP |
| | ) | (CONSOLIDATED CASE) |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| PRISMAFLEX INTERNATIONAL | ) | |
| FRANCE, S.A. and SHENZHEN | ) | |
| PRISMATRONIC CHINA ELECTRONIC | ) | |
| TECHNOLOGY LTD. CO., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ULTRAVISION TECHNOLOGIES, LLC'S SUR-REPLY IN OPPOSITION**
**TO PRISMAFLEX INTERNATIONAL, S.A.'S SECOND RENEWED**
**<u>MOTION TO TRANSFER VENUE AND DISMISS (DKT. 93)</u>**

## TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ......................................................................................................... 1

II.     PERSONAL JURISDICTION IS PROPER OVER PI.................................................. 1

III.    JURISDICTIONAL DISCOVERY IS WARRANTED ................................................ 4

IV.     TRANSFER IS NOT WARRANTED IN THE INTERESTS OF JUSTICE.................... 5

        A.      The Private Interest Factors Weigh Against Transfer............................................ 6

                1.      Relative Ease of Access to Sources of Proof Weighs Against
                        Transfer................................................................................................ 6

                2.      Convenience of the Parties and Witnesses and Cost of
                        Attendance for Willing Witnesses Weighs Against Transfer .................... 7

                3.      Judicial Economy Weighs in Favor of Transfer ......................................... 7

        B.      The Public Interest Factors Weigh Against Transfer.............................................. 8

V.      ULTRAVISION HAS SUFFICIENTLY PLED INDUCED INFRINGEMENT.............. 9

VI.     WILLFUL INFRINGEMENT ...................................................................................... 10

VII.    CONCLUSION............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
  C.A. No. 2:17-cv-513-JRG, 2018 WL 2329752 (E.D. Tex. May 23, 2018) ...........................7

*Aloft Media, LLC v. Adobe Sys.*,
  No. 6:07-CV-355, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008) .........................................5, 6

*Alpine View Co. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ..................................................................................................5

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994)............................................................................................1, 4

*Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)...............................................................................................9

*Blitzsafe Texas, LLC v. Mitsubishi Electric Corp.*,
  C.A. No. 2:17-cv-430-JRG, C.A. No. 2:17-cv-418-JRG, 2019 WL 2210686
  (E.D. Tex. May 22, 2019) ....................................................................................................4, 5

*Candela Corp. v. Palomar Med. Techs., Inc.*,
  No. 9:06-CV-277, 2007 WL 738615 (E.D. Tex. Feb. 22, 2007)..............................................8

*CXT Sys., Inc. v. Container Store, Inc.*,
  No. 2:18-CV-173, 2019 WL 1506015 (E.D. Tex. Apr. 5, 2019)..............................................8

*D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*,
  754 F.2d 542 (5th Cir. 1985) ..................................................................................................2

*Graftech Int'l Holdings Inc. v. GC&s Co.*,
  No. 2:12-CV-00720, 2014 WL 12591876 (E.D. Tex. Apr. 8, 2014)........................................5

*InMotion Imagery Techs. v. Brain Damage Films*,
  No. 2:11-CV-414-JRG, 2012 WL 3283371 (E.D. Tex. Aug. 10, 2012)................................10

*Intellectual Ventures II LLC v. FedEx Corp.*,
  No. 2:16-CV-00980-JRG, 2017 WL 5630023 (E.D. Tex. Nov. 22, 2017).............................10

*Invitrogen Corp. v. Gen. Elec. Co.*,
  C.A. No. 6:08-CV-112, 2009 WL 331891 (E.D. Tex. Feb. 9, 2009) .......................................6

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................................................2, 10

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)...........................................................................................................4

*Realtime Data, LLC v. Rackspace US, Inc.*,
  C.A. No. 6:16-CV-961, 2017 WL 772653 (E.D. Tex. Feb. 28, 2017) .....................................8

*Rozier v. Ford Motor Co.*,
  573 F.2d 1332 (5th Cir. 1978) .............................................................................................5

*Seven Networks, LLC v. Google LLC*,
  No. 2:17-CV-00442, No. 2:17-CV-00441, 2018 WL 4026760...............................................6

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009)............................................................................................8

*Wyatt v. Kaplan*,
  686 F.2d 276 (5th Cir. 1982) ...............................................................................................5

## I.     INTRODUCTION

Faced with the indelible conclusion that its Motion should be denied, Prismaflex International, S.A. ("PI" or "Defendant")[1] advocates for an improperly limited scope of accused products. Because stream of commerce jurisdiction is proper over a foreign parent company that manufactures and sells accused products into Texas and this District, PI's motion should be denied.

This case should remain in this District, the location of one of Ultravision's offices as well as the home of the majority of Ultravision's key witnesses. Significant judicial economies would be obtained by keeping this litigation on track with the other, co-pending litigations.

Ultravision has pled the requisite knowledge to support a claim for induced infringement, and intent can reasonably be inferred from the facts pled therein. Additionally, Ultravision's First Amended Complaint ("FAC") sufficiently put PI on notice of the Asserted Patents and Ultravision's willful infringement allegations.

For the foregoing reasons, PI's Motion should be denied.

## II.    PERSONAL JURISDICTION IS PROPER OVER PI

As Ultravision has explained, well-settled Federal Circuit precedent holds that a defendant establishes minimum contacts under the stream of commerce theory by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (citations omitted). Here, personal jurisdiction is proper over PI in this Court because, as PI admits, it places accused products into an established distribution chain with its U.S. subsidiaries, Prismaflex USA, Inc. ("PU") and Anthem Displays, LLC ("Anthem")

---

[1] PI, in its reply brief, states for the first time in these proceedings that Prismaflex International France, S.A. is not the correct entity name. Dkt. 114 at 1.

(collectively, the "PI US Subsidiaries"), which it knows sells accused products nationwide, and specifically to customers in Texas. *Compare* Dkt. 46 ¶ 6 *with* Dkt. 93 at 6-7 *and* Dkt. 114 at 4, n.8. PI does not dispute that its accused products are, and have been, sold in Texas and this District through the PI US Subsidiaries.[2] *See* Dkt. 114 at 3-6. For this reason alone, PI's Motion should be denied.[3]

PI's personal jurisdiction argument rests on the faulty premise that "***its products***," i.e. the accused products, are limited to only the two "Sealed Module" products that PI manufactured and shipped to PU, which improperly excludes the majority of accused product sales in the US. Dkt. 114 at 4. PI cites no authority for the proposition that the stream of commerce theory applies only to products manufactured by PI, in other words, that it only applies to the entity at the beginning of the stream. As Ultravision explained in its opposition, PI has sold, and continues to sell, accused products throughout the United States and in this District, including through its PI US Subsidiaries, which PI has not denied. Dkt. 105 at 3, 6-8. For example, PI has sold at least one hundred Prismatronic P20 signs to Lamar Advertising Company, which places

---

[2] Rather than dispute the sales in Texas, PI argues that Ultravision did not provide sufficient evidence because Ultravision relies on the allegations in its complaint, instead of presenting evidence that is "sworn or otherwise verified." Dkt. 114 at 4, n.8. However, PI's argument is unsupported and erroneous as it is well-settled that courts faced with motions to dismiss must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted)). Thus, Ultravision's allegations that PI has sold, either itself or through its subsidiaries, products in Texas and/or imported products into the US to the State of Texas must be taken as true.

[3] PI misstates the legal standard for personal jurisdiction in its reply brief in an effort to impose a heightened burden on Ultravision. Dkt. 114 at 3. PI incorrectly claims that "a plaintiff must submit evidence in support of its conclusory allegations," and alludes that the evidence must be in the form of a sworn affidavit. Dkt. 114 at 3, 4 n.8. However, the plaintiff may rely on uncontroverted allegations in its complaint to show a *prima facie* case of personal jurisdiction, and nothing more is required (although Ultravision has presented additional evidence here). *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc*., 754 F.2d 542, 546 (5th Cir. 1985) ("on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.") (citations omitted).

the digital billboards across the United States and Texas. Ex. 7 at 61; Ex. 12.[4, 5] The Prismatronic P20, also called the Prismatronic THD Sealed Module 20mm, is specifically named as an accused product in Ultravision's infringement contentions. Ex. 8 at 1, 11. PI's motion ignores these hundreds of accused products sold in the United States through the stream of commerce, and limits its briefing and declaration evidence to the activity of only one of the PI US Subsidiaries — PU. *See* Dkt. 114 at 4; Dkt. 93-1 at ¶¶ 19-20. Thus, PI's personal jurisdiction argument fails because it places the accused products into its established distribution channel, which includes its US Subsidiaries.[6]

PI also argues that it does not have an established distribution channel, alleging for the first time on reply that Anthem is responsible for placing accused products into the distribution channel. Dkt. 114 at 4. However, PI cites no authority for the proposition that the stream of commerce applies only to the entity distributing the accused products, in other words, that it applies only to the entity at the end of the stream. Nonetheless, PI's argument fails because PI is in fact responsible for placing its products into the stream of commerce established by PI. PI executes its sales, customer service and marketing through Anthem, which it controls.[7] Nico Marais, in his role as the Group Sales Director of PI, manages the sales and customer service of

---

[4] "Ex._" refers to exhibits attached to the Declaration of Daniel J. Shea, Jr. ("Shea Decl.").

[5] Contrary to PI's assertion, Ultravision does not "omit Anthem products as accused products." Dkt. 114 at 3. Rather, Ultravision's infringement contentions specifically accuse the PI products sold by Anthem, including the Anthem Display Sealed Module products. Ex. 8 at 3, 6, 8. Additionally, Ultravision reserved the right to supplement its infringement contentions to include any Anthem products that PI identifies for the first time during discovery. Dkt. 114-3 at 2, n.1. Thus, PI cannot credibly argue that Anthem products are not Accused Products of PI.

[6] PI's attempts to distinguish the case law cited in Ultravision's opposition brief fail for the same reasons discussed above, as the arguments are based entirely on PI's improper narrowing of the accused products and incorrect assertion that the stream of commerce applies only to products PI itself manufactured. *See* Dkt. 114 at 4-5.

[7] Regarding marketing, that is controlled by PI's European marketing team. Dkt. 114-1 at ¶ 4.

Anthem. Exs. 10, 11.[8] Additionally, the one hundred Prismatronic P20 accused products that PI sold to Lamar Advertising Company (Ex. 7 at 61) were not imported by PI (Dkt. 93-1 at ¶¶ 19-20), meaning PI manufactured its products through one or more of its subsidiaries, such as Anthem and/or Prismatronic China, and had its products distributed from its subsidiary to Lamar. Thus, although PI's accused products that are sold through Anthem may not originate from PI's French headquarters, PI still operates the distribution channel through its subsidiaries, which sees its products delivered throughout the US and Texas.

The facts here are even more substantial than in *Beverly Hills Fan*. In that case, the defendant had established a commercial relationship with an unrelated retail entity called Builder's Square. *Beverly Hills Fan* at 1564. Here, PI's commercial relationships with its own subsidiaries, which are indisputably ongoing and continuous, form the basis for the stream of commerce that ultimately terminates in Texas. PI has *more* knowledge and control regarding the PI US Subsidiaries' sales of accused products in the U.S. than *Beverly Hills Fan* had regarding the sales from an unrelated retail outlet. Therefore, stream of commerce jurisdiction is proper over PI.

## III.    JURISDICTIONAL DISCOVERY IS WARRANTED

"[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). "[J]urisdictional discovery should only be denied where it is *impossible* that the discovery 'could . . . add[] any significant facts' that might bear on the jurisdictional determination." *Blitzsafe Texas, LLC v. Mitsubishi Electric Corp.*, C.A. No. 2:17-cv-430-JRG (Lead Case), C.A. No. 2:17-cv-418-JRG (Member Case), 2019 WL 2210686, at *3 (E.D. Tex.

---

[8] Mr. Marais is also the President of PU, and is the sole employee in the Elizabethtown, NC office. Ex. 10.

May 22, 2019) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)).
"Put another way, jurisdictional discovery should typically be granted unless 'no amount of
information . . . would strengthen' the movant's jurisdictional claims." *Id.* (quoting *Wyatt v.
Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982). As "evidence of jurisdictional facts is often largely or
wholly in the possession of an adverse party, broad jurisdictional discovery also ensures that
jurisdictional disputes will be 'fully and fairly' presented and decided." *Id.* (citing *Rozier v. Ford
Motor Co.*, 573 F.2d 1332, 1345 (5th Cir. 1978)).

PI again argues here that it does not place "***its products***" into a distribution channel. This
argument fails because, as discussed above, PI, without supporting authority, improperly limited
the scope of "***its products***" for the purpose of this motion, and PI places products into the stream
of commerce, including through its subsidiaries. *See supra* II.

Should the Court find that Ultravision has not shown personal jurisdiction to be proper
over PI, jurisdictional discovery would be warranted because it is very likely to uncover
additional details about PI's sales in Texas and in this District, which it has executed, and
continues to execute, through its subsidiaries, including Anthem and Prismatronic China.
*Graftech Int'l Holdings Inc. v. GC&s Co.*, No. 2:12-CV-00720, 2014 WL 12591876, at *7 (E.D.
Tex. Apr. 8, 2014) (granting jurisdictional discovery to fill gaps in the record, including to
ascertain facts needed to evaluate whether accused products were actually sold in the forum—a
fact PI *admits* here).

## IV.     TRANSFER IS NOT WARRANTED IN THE INTERESTS OF JUSTICE

PI claims that Ultravision "alters the law" with respect to the weight given to the
plaintiff's preference of forum. Dkt. 114 at 7. However, PI does not explain how Ultravision
supposedly altered the law, and PI quotes the same language used by Ultravision from *Aloft
Media, LLC v. Adobe Sys.*, No. 6:07-CV-355, 2008 WL 819956, at *3 (E.D. Tex. Mar. 25, 2008).

Regardless, the burden remains on PI to demonstrate that transfer is "clearly more convenient for both parties involved," and not merely for PI. *Aloft Media*, 2008 WL 819956, at *3.

**A.     The Private Interest Factors Weigh Against Transfer**

Defendant concedes that availability of compulsory process does not favor transfer. Dkt. 114 at 7. The other private interest factors also do not favor transfer.

**1.     Relative Ease of Access to Sources of Proof Weighs Against Transfer**[9]

PI argues that "any US-based documents of the accused infringer are found in North Carolina." Dkt. 114 at 8. However, significant amounts of discovery have already been produced in the previous ITC investigation and the parties have agreed that such discovery can be re-used in this case. Although the scope of the accused products is broader in this case than at the ITC, Plaintiff expects that significant discovery has already taken place and therefore the access to proof is less relevant.

Plaintiff expects that the majority of technical information related to the accused products will be produced from China (the location of Prismatronic China) or France, as PI has admitted that PU merely purchased the accused products from PI. *See Invitrogen Corp. v. Gen. Elec. Co.*, C.A. No. 6:08-CV-112, 2009 WL 331891, at *2 (E.D. Tex. Feb. 9, 2009) (finding general statements that "evidence in this case will likely be located . . . in England and New Jersey. . . fail to show that transfer would make access to sources of proof either more or less convenient for the parties.").  Moreover, in its reply brief, PI has not remedied its failure to "*specifically identify* the relevant sources of proof (and why they are relevant), and *specifically identify* the physical location of those sources of proof." *Seven Networks, LLC v. Google LLC*, No. 2:17-CV-00442, No. 2:17-CV-00441, 2018 WL 4026760, at *4. PI's claim that it "did not specifically

---

[9] Defendant concedes that, although this factor is still considered in the analysis, it is entitled to diminished weight. Dkt. 93 at 13, n.6.

explain the location of its sources of proof in its Motion" because "PI believed it was apparent that it meant the location of the alleged direct infringer," is unavailing. Dkt. 114 at 8. To show this factor weighs in favor of transfer, PI was required to identify the sources of proof, their location, and explain why they are relevant. PI failed to do so. For this reason, as well as because significant discovery is already complete from the ITC proceeding and because the majority of the technical document production will come from France and China, this factor does not weigh in favor of transfer.

### 2. Convenience of the Parties and Witnesses and Cost of Attendance for Willing Witnesses Weighs Against Transfer

Defendant's failed to present an argument on reply regarding this factor, and failed to identify a single specific party or third-party witness with relevant knowledge in its motion. Dkt. 93. Ultravision's identified witnesses, which are critical to the case, include the inventor and Ultravision's founder, Bill Hall. Additionally, the location of Ultravision's expert, Mr. McAlexander, is relevant to the transfer analysis. *AGIS Software Dev. LLC v. Huawei Device USA Inc.,* C.A. No. 2:17-cv-513-JRG, 2018 WL 2329752, at *8 (E.D. Tex. May 23, 2018). As Ultravision's critical witnesses are located in or near this District, and Defendant has not identified a single witness with specificity, this factor weighs against transfer.

### 3. Judicial Economy Weighs in Favor of Transfer

Although a few defendants in co-pending cases have filed motions to dismiss that have yet to be fully briefed or decided, no motions to dismiss or transfer are pending in *six* of the co-pending cases.[10] But multiple cases over the same patents and the same types of products

---

[10] PI argues that it is unclear whether Ultravision will effectuate service on the six co-pending cases in which no motions to dismiss or transfer have been filed. Dkt. 114 at 8-9. To clarify, one of the six defendants has already been served and contacted Ultravision. Service is in process for the remaining defendants and will be completed in due course. Like Prismatronic China, the defendants are foreign defendants, and the service process may take additional weeks or months.

proceeding simultaneously all over the country is precisely the type of waste of judicial resources that would be saved by maintaining all of the cases in this District. Dkt. 105 at 19 (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). For example, maintaining this case in this District with the other co-pending litigations would allow the Court to conduct a single *Markman* hearing, resulting in a more efficient administration of justice. *See* Dkt. 105 at 18-19. Thus, judicial economy weighs heavily against transfer.

**B.    The Public Interest Factors Weigh Against Transfer**

Defendant argues that only the second public interest factor favors transfer, but even that factor does not weigh in PI's favor, as this District is the location of many Ultravision employees and an Ultravision office.

Defendant again minimizes Ultravision's contacts to the District, and argues that North Carolina has a "larger" interest because third-party PU is headquartered there and "all possibly relevant accused product sales flow from [PU]" Dkt. 114 at 9. As some of the alleged acts of infringement have taken place in this District and the Plaintiff who has been harmed by this infringement has a location in this District, these factors weigh against transfer.  *See Candela Corp. v. Palomar Med. Techs., Inc.*, No. 9:06-CV-277, 2007 WL 738615, at *5, (E.D. Tex. Feb. 22, 2007) (factor weighed against transfer because "some of the alleged actions of infringement occurred in this District"); *see also Realtime Data, LLC v. Rackspace US, Inc.*, C.A. No. 6:16-CV-961, 2017 WL 772653, at *12, (E.D. Tex. Feb. 28, 2017) (finding factor neutral and that District had some local interest given that plaintiff had two offices and one employee here). Furthermore, where, like here, "the accused products are used and sold throughout the country, the alleged injury does not create a substantial local interest in any particular district." *CXT Sys., Inc. v. Container Store, Inc.*, No. 2:18-CV-173, 2019 WL 1506015, at *5, (E.D. Tex. Apr. 5, 2019) (citation omitted); *see also* Dkt. 105 at 20.

PI argues that Ultravision has not offered any evidentiary counter to PI's declaration, which states that PI and PU do not "sell products in Texas or anywhere else." Dkt. 93-1 at ¶ 20. However, as discussed above, this declaration takes into account only the two products that PI sent to PU, and ignores the vast majority of accused products that PI sells through its other US subsidiary, Anthem , and its Chinese subsidiary Prismatronic China. *See supra* II. Taking into account PI's sales through these entities, including the hundreds of Prismatronic P20 displays sold to Lamar Advertising Company, as well as the uncontroverted allegation that sales have occurred in this District, the local interest factor does not favor transfer. *Id.*

Defendant concedes that the remaining public interest factors do not favor transfer. Accordingly, Defendant has failed to meet its "significant burden" to show that transfer would be "clearly more convenient," and its Motion should be denied.

## V.     ULTRAVISION HAS SUFFICIENTLY PLED INDUCED INFRINGEMENT

Having retreated from the majority of its positions, Defendant's Reply argues *only* that Ultravision has not made a specific showing of specific intent. Dkt. 114 at 9-10. But, as Ultravision has shown, the FAC (Dkt. 46) alleges Defendant knowingly and intentionally induces infringement by "*actively encouraging*" third parties to engage in infringing acts (such as "detachably mount[ing] sub-assemblies at a first location, and build[ing] sub-assemblies into a multi-panel display at a second location") *id.* at ¶¶ 40-48, and knowingly and intentionally sells or provides accused products to direct infringers, knowing that these entities intend to use the accused products in an infringing manner. Dkt. 105 at 24 (citing Dkt. 46 at ¶¶ 33, 46, 63, 81, 98, 111, and 124 (emphasis added). These allegations, considered in the context of the complaint as a whole, are sufficient to create a plausible inference of specific intent. *See Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1350 (Fed. Cir. 2012) (a plaintiff is not required to "plead facts establishing that each element of an asserted claim is met"); *see*

*also InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *1, 3 (E.D. Tex. Aug. 10, 2012) (finding allegation that defendant "actively induced others to infringe" sufficient); Dkt. 105 at 21-26.

Accordingly, Ultravision has sufficiently pled indirect infringement, and PI's Rule 12(b)(6) motion must be denied. If this Court finds that the FAC is insufficient, Ultravision seeks leave to submit an amended complaint.

## VI.   WILLFUL INFRINGEMENT

PI, in its Reply, again provides no evidence to controvert Ultravision's allegations that PI had knowledge of the Asserted Patents as of the date of filing of the original Complaint. *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2017 WL 5630023, at *7 (E.D. Tex. Nov. 22, 2017) (finding plaintiff's allegations were not controverted where defendants failed to present direct evidence contradicting the allegations). Thus, these allegations must be taken as true. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Additionally, PI does not dispute that Ultravision sufficiently pled ongoing infringement by PI after acquiring knowledge of the '272, '869, '294, '603, '791, and '105 patents. Accordingly, Ultravision's FAC sufficiently placed PI on notice of Ultravision's allegations of willful infringement and PI's Motion should be denied.

## VII.   CONCLUSION

For the foregoing reasons, Ultravision respectfully requests that the Court deny PI's Motion to Dismiss under Rules 12(b)(2), 12(b)(3), and 12(b)(6), and deny PI's request to transfer. In the alternative, Ultravision requests that it be permitted to conduct jurisdictional discovery and amend its FAC.

Dated:  August 16, 2019                Respectfully submitted,

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: afabricant@brownrudnick.com
Lawrence C. Drucker
NY Bar No. 2303089
Email: ldrucker@brownrudnick.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambriankos@brownrudnick.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@brownrudnick.com
Timothy J. Rousseau
NY Bar No. 4698742
Email: trousseau@brownrudnick.com
Alessandra C. Messing
NY Bar No. 5040019
Email: amessing@brownrudnick.com
John A. Rubino
NY Bar No. 5020797
Email: jrubino@brownrudnick.com
Daniel J. Shea
NY Bar No. 5430558
Email: dshea@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Sarah G. Hartman
CA Bar No. 281751
Email: shartman@brownrudnick.com
**BROWN RUDNICK LLP**
2211 Michelson Drive
Irvine, California  92612
Telephone: (949) 752-7100
Facsimile: (949) 752-1514

Samuel F. Baxter
Texas Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906

jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

*ATTORNEYS FOR PLAINTIFF*
*ULTRAVISION TECHNOLOGIES, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on August 16, 2019, all counsel of record who are

deemed to have consented to electronic service are being served with a copy of this document via

the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant
