**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | § | Case No. 2:18-cv-00100-JRG-RSP |
| | § | **(LEAD CASE)** |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| GOVISION, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | § | Case No. 2:18-cv-00150-JRG-RSP |
| | § | **(CONSOLIDATED CASE)** |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | **PUBLIC REDACTED VERSION** |
| NEC DISPLAY SOLUTIONS, LTD., | § | |
| NEC CORPORATION, | § | |
| NEC DISPLAY SOLUTIONS EUROPE | § | |
| GMBH, and S[QUADRAT] GMBH, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**ULTRAVISION'S OPPOSITION TO NEC DISPLAY SOLUTIONS EUROPE GMBH
AND S[QUADRAT] GMBH'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (DKT. 127)**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    RESPONSE TO STATEMENT OF ISSUES TO BE DECIDED .....................................2

III.   BACKGROUND FACTS .....................................................................................3

     A.     Ultravision's Complaint and Allegations ..............................................3

     B.     Defendants' Connections to the Eastern District of Texas....................4

IV.    THE COURT HAS PERSONAL JURISDICTION OVER NDS-E AND
     S[QUADRAT] .................................................................................................8

     A.     Legal Standard ......................................................................................8

     B.     The Court Has Personal Jurisdiction Over NDS-E and S[quadrat] Based
          on the Stream-of-Commerce Theory ....................................................9

     C.     Exercise of Personal Jurisdiction Over NDS-E and S[quadrat] is
          Reasonable and Fair ............................................................................14

     D.     Alternatively, Jurisdiction is Proper in this District Under Fed. R. Civ.
          P. 4(k)(2) ............................................................................................17

V.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT ULTRAVISION
     LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY OF NDS-E AND
     S[QUADRAT] ...............................................................................................18

     A.     Legal Standard ....................................................................................18

     B.     Jurisdictional Discovery Should be Permitted....................................19

VI.    ULTRAVISION'S FIRST AMENDED COMPLAINT PROPERLY STATES A
     CLAIM UPON WHICH RELIEF MAY BE GRANTED ...............................................20

     A.     Legal Standard ....................................................................................20

     B.     Ultravision Has Sufficiently Alleged Infringement by Each of NDS-E and
          S[quadrat] ............................................................................................21

     C.     Ultravision Has Sufficiently Alleged Induced Infringement................26

     D.     Leave to Amend Should be Freely Granted ........................................28

VII.   CONCLUSION ................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3d Sys., Inc. v. Aarotech Labs, Inc.*,
  160 F.3d 1373 (Fed. Cir. 1998) ..................................................................................... 14

*Acantha LLC v. Depuy Synthes Sales, Inc.*,
  No. 1:15-cv-1257, 2016 WL 8201781 (E.D. Wis. July 28, 2016) ......................................... 23

*Align Tech., Inc. v. 3Shape A/S*,
  339 F. Supp. 3d 435 (D. Del. 2018) ............................................................................. 25, 26

*Alpine View Co. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ....................................................................................... 19

*Asahi Metal Indus. Co., Ltd. v. Chang Shin Rubber Indus. Co.*,
  480 U.S. 102 (1987) .................................................................................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 21

*ATEN Int'l Co. v. Emine Tech. Co.*,
  261 F.R.D. 112 (E.D. Tex. 2009) ............................................................................... 8, 14

*Autobytel, Inc. v. Insweb Corp.*,
  No. 2:07-cv-524, 2009 WL 901482 (E.D. Tex. Mar. 31, 2009) ............................................. 8

*Bailey v. Willis*,
  No. 4:17-cv-276, 2018 WL 3321461 (E.D. Tex. Jan. 11, 2018) ......................................... 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 21

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994) .............................................................................. *passim*

*Bilecki v. Mather Inv'rs, LLC*,
  No. 2:08-cv-1, 2008 WL 4376372 (W.D. Mich. Sept. 22, 2008) ......................................... 22

*In re Bill of Lading Transmission*,
  681 F.3d 1323 (Fed. Cir. 2012) ................................................................................... 26

*Blitzsafe Texas LLC v. Mitsubishi Electric Corp.*,
  No. 2:17-cv-430, 2019 WL 2210686 (E.D. Tex. May 22, 2019) ......................................... 19

*Blue Spike, LLC v. Huawei Techs. Co.*,
　　No. 6:13-cv-679, 2016 WL 3951665 (E.D. Tex. June 6, 2016) ...........................................14

*Bluestone Innovations Texas, L.L.C. v. Formosa Epitaxy Inc.*,
　　822 F. Supp. 2d 657 (E.D. Tex. 2011) ...............................................................................18

*Bowlby v. City of Aberdeen, Miss.*,
　　681 F.3d 215 (5th Cir. 2010) ............................................................................................21

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
　　444 F.3d 1356 (Fed. Cir. 2006)......................................................................................9, 14

*Burger King Corp. v. Rudzewicz*,
　　471 U.S. 462 (1985) .............................................................................................9, 15, 16

*Bustos v. Martini Club, Inc.*,
　　599 F.3d 458 (5th Cir. 2010) ............................................................................................21

*Caradori v. Karl Storz Endoscopy-Am., Inc.*,
　　No. 8:14-cv-3198, 2017 WL 4162241 (D. Md. Sept. 18, 2017)...........................................14

*Celgard, LLC v. SK Innovation Co.*,
　　792 F.3d 1373 (Fed. Cir. 2015)........................................................................................14

*Conair Corp. v. Jarden Corp.*,
　　No. 1:13-cv-6702, 2014 WL 3955172 (S.D.N.Y. Aug. 12, 2014)......................................28

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*,
　　No. 2:13-cv-1112, 2015 WL 1432158 (E.D. Tex. Mar. 30, 2015) ......................................26

*Copeland v. Wasserstein, Perella & Co.*,
　　278 F.3d 472 (5th Cir. 2002) ............................................................................................20

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*,
　　297 F.3d 1343 (Fed. Cir. 2002)........................................................................................15

*Freudensprung v. Offshore Tech. Servs., Inc.*,
　　379 F.3d 327 (5th Cir. 2004) ............................................................................................14

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*,
　　123 F.3d 1455 (Fed. Cir. 1997)..........................................................................................8

*Grober v. Mako Prods., Inc.*,
　　686 F.3d 1335 (Fed. Cir. 2012)........................................................................................14

*Groove Digital, Inc. v. King.com, Ltd.*,
　　No. 1:18-cv-836, 2018 WL 6168615 (D. Del. Nov. 26, 2018)......................................25, 26

iii

*GSK Tech., Inc. v. Schneider Elec., S.A.*,
No. 6:06-cv-361, 2007 WL 788343 (E.D. Tex. Mar. 14, 2007) ..........................................10

*Hickman v. Taylor*,
329 U.S. 495 (1947) .........................................................................................................19

*Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
No. 5:08-cv-26, 2009 WL 1025467 (E.D. Tex. Mar. 26, 2009) ...........................................9

*IDQ Operating, Inc. v. Aerospace Commc'ns Holdings Co.*,
No. 6:15-cv-781, 2016 WL 5349488 (E.D. Tex. Jun. 10, 2016) ........................... 9, 10, 14, 15

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) ...........................................................................................................8

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. 1:18-cv-452, 2019 WL 330515 (D. Del. Jan. 25, 2019) ................................................25

*In re iPhone Application Litig.*,
No. 5:11-md-2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)................................. 24, 25

*ITT Enidine Inc. v. Gen. Aerospace, Inc.*,
No. 2:18-cv-1108, 2019 WL 4007331 (W.D. Wash. Apr. 8, 2019) ......................................25

*Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co.*,
No. 2:05-cv-185, 2005 WL 3299718 (E.D. Tex. Dec. 5, 2005) ...........................................15

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) .........................................................................................................15

*Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*,
No. 5:11-cv-163, 2013 WL 2453267 (W.D. Tex. June 4, 2013) .................................... 23, 24

*Kyowa Hakka Bio Co. v. Ajinomoto Co.*,
No. 1:17-cv-313, 2018 WL 834583 (D. Del. Feb. 12, 2018) ...............................................28

*Lormand v. U.S. Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ............................................................................................21

*McZeal v. Sprint Nextel Corp.*,
501 F.3d 1354 (Fed. Cir. 2007).........................................................................................20

*MHL Tek, LLC v. Nissan Motor Co.*,
No. 2:07-cv-289, 2008 WL 910012 (E.D. Tex. Apr. 2, 2008) ................................. 11, 12, 14

*Moore v. CITGO Ref. & Chem. Co.*,
735 F.3d 309 (5th Cir. 2013) ............................................................................................18

*NASDAQ, Inc. v. IEX Group, Inc.*,
No. 3:18-cv-3014, 2019 WL 102408 (D.N.J. Jan. 4, 2019) ............................................ 22, 23

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) .................................................................................................... 18, 19

*Personal Audio, LLC v. Google, Inc.*,
No. 1:15-cv-350, 2017 WL 4837853 (E.D. Tex. May 15, 2017) .........................................27

*Plano Encryption Techs., LLC v. Alkami Tech., Inc.*,
No. 2:16-cv-1032, 2017 WL8727249 (E.D. Tex. Sept. 22, 2017).......................................22

*Polar Electro Oy v. Suunto Oy*,
829 F.3d 1343 (Fed. Cir. 2016)............................................................................................13

*ProMOS Techs. v. Samsung Elecs. Co.*,
No. 1:18-cv-307, 2018 WL 5630585 (D. Del. Oct. 31, 2018)..............................................25

*Pudlowski v. St. Louis Rams, LLC*,
829 F.3d 963 (8th Cir. 2016) ..............................................................................................19

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) ...............................................................................................21

*Rozier v. Ford Motor Co.*,
573 F.2d 1332 (5th Cir. 1978) .............................................................................................19

*Semcon IP Inc. v. TCT Mobile Int'l Ltd.*,
Case No. 2:18-cv-194, 2019 WL 2774362 (E.D. Tex. July 2, 2019) ...................................13

*Silent Drive, Inc. v. Strong Indus., Inc.*,
326 F.3d 1194 (Fed. Cir. 2003)..............................................................................................8

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
563 F.3d 1285 (Fed. Cir. 2009).............................................................................. 15, 16, 17

*Telecomm Innovations, LLC v. Ricoh Company, Ltd.*,
966 F. Supp. 2d 390 (D. Del. Aug. 6, 2013)........................................................................27

*Touchcom, Inc. v. Bereskin & Parr*,
574 F.3d 1403 (Fed. Cir. 2009).............................................................................................18

*United States v. Bollinger Shipyards, Inc.*,
775 F.3d 255 (5th Cir. 2014) ...............................................................................................21

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
517 F.3d 235 (5th Cir. 2008) ...............................................................................................19

*WesternGeco L.L.C. v. Ion Geophysical Corp.*,
    776 F. Supp. 2d 342 (S.D. Tex. 2011) ................................................................................... 21

*Wooten v. McDonald Transit Assocs., Inc.*,
    788 F.3d 490 (5th Cir. 2015) ................................................................................................. 21

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ....................................................................................................... 15, 17

*Wyatt v. Kaplan*,
    686 F.2d 276 (5th Cir. 1982) ................................................................................................. 19

*Zoch v. Daimler, AG*,
    No. 6:16-cv-57, 2017 WL 2903264 (E.D. Tex. May 16, 2017) ....................................... 12, 13

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
    990 F. Supp. 2d 50 (D. Mass. 2014) ..................................................................................... 22

**Statutes**

35 U.S.C. § 271 ............................................................................................................... 22, 26

**Other Authorities**

Fed. R. Civ. P. 4 .................................................................................... 1, 10, 17, 18

Fed. R. Civ. P. 12 ............................................................................................................. 21

Fed R. Civ. P. 15 ........................................................................................................... 2, 28

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Ultravision's Disclosures of Asserted Claims and Infringement Contentions (Aug. 2, 2019) |
| 2 | Transcript of Videotaped Deposition of Grant Wylie, *In re Certain Modular LED Display Panels and Component Thereof*, Inv. No. 337-TA-1114 (U.S.I.T.C. Sept. 13, 2018) |
| 3 | Petition for *Inter Partes* Review, *NEC Display Solutions of Am., Inc. v. Ultravision Techs., LLC*, No. IPR2019-01117 (P.T.A.B. May 22, 2019) |
| 4 | Petition for *Inter Partes* Review, *NEC Display Solutions of Am., Inc. v. Ultravision Techs., LLC*, No. IPR2019-01123 (P.T.A.B. May 23, 2019) |

Plaintiff Ultravision, LLC ("Ultravision"), by and through its undersigned counsel, hereby submits this response in opposition to defendants NEC Display Solutions Europe GmbH ("NDS-E") and S[quadrat] GmbH's ("S[quadrat]") Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Failure to State a Claim, Case No. 2:18-cv-100,[1] Dkt. 127 (the "Motion").

## I.    INTRODUCTION

Contrary to what Defendants argue, Ultravision is not seeking to hold NDS-E and S[quadrat] accountable for the acts of NEC-affiliate NEC Display Solutions of America, Inc. ("NDS-A"); it is seeking to hold NDS-E and S[quadrat] accountable for their own acts. NDS-E and S[quadrat] place accused infringing products into the stream of commerce with the knowledge that such products eventually will be sold in the United States and the Eastern District of Texas. These facts have been conceded by NDS-E and S[quadrat] in their Motion and by their parent company, NEC Display Solutions, Ltd. ("NDS"), in a separate, previously-filed motion to dismiss for lack of personal jurisdiction in a related action between Ultravision and NDS. *See* Dkt. 40 ("NDS's Separate Motion")[2]. Thus, personal jurisdiction is properly exercised over NDS-E and S[quadrat] in this District and NDS-E and S[quadrat]'s Motion should be denied.

Even if this Court finds that Ultravision has not yet established that the products that were sold in a stream of commerce directed at the Texas market, jurisdiction is still proper under Fed. R. Civ. P. 4(k)(2) because this claim arises under federal law and neither NDS-E nor S[quadrat] have identified any other state where they would be subject to a state's general

---

[1] Unless otherwise specified, all docket entry citations relate to Case No. 2:18-cv-150.

[2] *See also* Ultravision's Opposition to NDS's Motion to Dismiss (Dkt. 49); NDS's Reply in Support of its Motion to Dismiss (Case No. 2:18-cv-100, Dkt. 89); Ultravision's Sur-Reply in Opposition to NDS's Motion to Dismiss (Case No. 2:18-cv-100, Dkt. 94).

jurisdiction. If there remains any doubt that jurisdiction is properly exercised by this Court, at minimum, Ultravision should be permitted to conduct jurisdictional discovery of NDS-E and S[quadrat] prior to a final determination of this Motion.

The portion of NDS-E and S[quadrat]'s Motion that seeks dismissal for failure to state a claim upon which relief may be granted should be denied as well. Ultravision's First Amended Complaint pleads facts that state a plausible claim for infringement against NDS-E and S[quadrat]. Rather than address the substance of Ultravision's allegations, which are easily understood, NDS-E and S[quadrat] attempt to manufacture a new rule     previously unrecognized in this District and rejected by courts elsewhere     that would prohibit using the collective term "Defendants" in a complaint to allege that each of the defendants committed the acts alleged. That is not the law, certainly not in this District, and is no basis for dismissal of Ultravision's claims. Ultravision's First Amended Complaint also pleads facts that state a plausible claim for induced infringement by alleging direct infringement by NSD-E and S[quadrat]'s customers, installers, and end-users, that NDS-E and S[quadrat] had knowledge of the Patents-in-Suit at least as of the date of the filing of the First Amended Complaint, and that with such knowledge NDS-E and S[quadrat] have induced infringement by their customers, installers, and end-users, and possessed the specific intent to encourage that infringement. If, however, the Court decides that Ultravision has not sufficiently stated a claim for relief, Ultravision requests leave to amend its complaint in accordance with Fed R. Civ. P. 15(a)(2).

## II.    RESPONSE TO STATEMENT OF ISSUES TO BE DECIDED

1.    The exercise of personal jurisdiction is proper over NDS-E and S[qaudrat] because they place goods in the stream of commerce that leads to accused products being sold and installed in the United States, including in Texas and in this District.

2.      Ultravision's claims for infringement of the Patents-in-Suit against NDS-E and S[quadrat] should not be dismissed simply because the First Amended Complaint refers to "Defendants" collectively. Ultravision has pled sufficiently detailed, plausible allegations of fact that satisfy the *Twombly/Iqbal* standards.

3.      Ultravision's First Amended Complaint adequately states claims for induced infringement because it has alleged direct infringement by NSD-E and S[quadrat]'s customers, installers, and end-users, that NDS-E and S[quadrat] had knowledge of the Patents-in-Suit at least as of the date of the filing of the First Amended Complaint, and that with such knowledge NDS-E and S[quadrat] have induced infringement by their customers, installers, and end-users, and possessed the specific intent to encourage that infringement.

## III.    BACKGROUND FACTS

### A.    Ultravision's Complaint and Allegations

Ultravision is a limited liability company with its principal place of business in Dallas, Texas. *See* First Amended Complaint (Dkt. 30) at ¶ 1. On April 16, 2018, Ultravision filed complaints against NDS and its subsidiary, NDS-A in this Court, Dkt. 1, and before the U.S. International Trade Commission ("ITC"), alleging infringement of two Ultravision patents relating to waterproof LED displays. The proceedings in this Court were stayed pursuant to 28 U.S.C. § 1659 in view of the ITC proceedings. Dkt. 13. After the ITC proceedings were terminated and the stay in this case was lifted, *see* Dkt. 15, Ultravision filed a First Amended Complaint, Dkt. 30. The First Amended Complaint alleged infringement by (1) NDS; its parent company, (2) NEC Corporation; and its subsidiaries (3) NDS-E; and (4) S[quadrat] (collectively,

"Defendants")[3] of one of the patents asserted in the original complaints and seven additional

Ultravision patents (collectively, the "Patents-in-Suit"). In addition to the waterproof LED

display technology claimed by the originally asserted patents that was at-issue in the ITC

proceedings, the additional asserted patents claim various other aspects of LED display

technology that are infringed by products that were not at-issue in the ITC proceedings.

Ultravision is the sole and exclusive owner of all right, title, and interest in the Patents-in-Suit.

Dkt. 30 (First Amended Complaint) at ¶ 19.

Ultravision's First Amended Complaint alleges, *inter alia*, that each of the "Defendants"

infringed the Patents-in-Suit "by making, using, offering to sell, and/or selling within the United

States and/or importing into the United States products that satisfy each and every limitation of

one or more claims of the [Patents-in-Suit]," *id.* at ¶¶ 27, 57, 74, 92, 109, 123, 136, and/or

"induc[ed] others, including customers, installers, and end-users, to directly infringe . . . by

making, using, offering to sell, and/or selling within the United States and/or importing into the

United States products that include infringing technology, including LED displays," *id.* at ¶¶ 37,

44, 66, 84, 101, 115, 128, 141. On August 2, 2019, Ultravision served its Disclosure of Asserted

Claims and Infringement Contentions on NDS. Ex. 1. These contentions identified seven series

of accused products: the (1) F-Series, (2) FA-Series, (3) Q-Series; (4) E-Series, (5) E-Series,

(6) MXC-Series, and (7) MXE-Series LED display panels. *Id.* at 2 5.

**B.    Defendants' Connections to the Eastern District of Texas**

Ultravision's First Amended Complaint alleges that "each of the Defendants, directly or

indirectly, participates in a stream of commerce that results in products, including the accused

---

[3] The present motion relates only to NDS-E and S[quadrat], and not to the remaining defendants. NDS filed a separate motion to dismiss, which has been fully briefed. *See supra* note 2. NEC Corporation has not yet been served.

products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas." First Amended Complaint (Dkt. 30) at ¶ 8.

NDS-E and S[quadrat] are German companies. Eberhardt NDS-E Decl. (Case No. 2:18-cv-100, Dkt. 127-1) at ¶ 3; Eberhardt S[quadrat] Decl. (Case No. 2:18-cv-100, Dkt. 127-2) at ¶¶ 3   4. According to the declarations by Bernd Eberhardt      who is the CEO of both NDS-E and S[quadrat]      in support of the Motion, S[quadrat] is a subsidiary of NDS-E and NDS-E is a subsidiary of NDS. Eberhardt S[quadrat] Decl. at ¶¶ 4, 6. NDS is also the parent of NDS-A. *Id.* at ¶ 7.

As admitted by NDS-E and S[quadrat], NDS-E and S[quadrat] have sold at least two LED display panels to customers in the United States. Mr. Eberhardt admitted in one of his declarations that " ███████████████████████████████████████████ ███████████████████████████████ " Eberhardt S[quadrat] Decl. at ¶ 21. In the other declaration, he stated that ███████████████████████████ . Eberhardt NDS-E Decl. at ¶ 21.

As admitted by NDS-E and S[quadrat], both entities regularly sell LED display panels to NDS-A for orders placed by customers in the United States. NDS-A sells LED display products such as the Q-Series and FA-Series LED display panels that are accused of infringement in this case in the United States. Motion at 1 ("NDS-A is the NEC-affiliated company that markets and sells in the United States the products Ultravision accuses of infringement."). The Q-Series is manufactured by S[quadrat], NDS's Separate Motion (Dkt. 40) at 7; Wylie Tr. (Ex. 2) at 94:8 11.[4] The FA-Series is manufactured by ███████████████ . Arai Supp. Decl. (Case No. 2:18-

---

[4] All references to "Wylie Tr." (Ex. 2) are to the transcript of the deposition of Grant Wylie, Senior Product Manager, LED Signage Solutions, NDS-A, taken in the ITC proceeding on September 13, 2018.

cv-100, Dkt. 89-6)[5] at ¶ 6 ("███████████████████████████████████████

███████████"). The Q-Series and FA-Series are both sold to NDS-A by NDS-E and/or

S[quadrat]. Arai Supp. Decl. (Case No. 2:18-cv-100, Dkt. 89-6) at ¶ 9 ("██████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████");

Yanke Decl. (Case No. 2:18-cv-100, Dkt. 89-7)[6] at ¶ 4 (NDS-A places orders for S[quadrat] ██

██████ products with [NDS-E], ████████████████████████████████████

████████████████████████."), ¶ 5 ("██████████████████████████████

█████████████████████████████████████████████████████████████

███████████"); Motion at 8 ("NDS-A orders products from S[quadrat] or NSD-E, who in turn

orders products from S[quadrat] ███████████."); Eberhardt S[quadrat] Decl. at ¶ 21 ("When

NDS-A sells an accused S[quadrat] product, NDS-A places an order with NSD-E or S[quadrat].

NDS-E then orders the product from S[quadrat] ██████████. ████████████████████

███████").

Grant Wylie, NDS-A's corporate representative in the ITC proceeding, testified

repeatedly at deposition ██████████████████████████████████████████

██████████████████. █████████████████████████████████████████████

████████████ Wylie Tr. (Ex. 2) at 233:17‑19 ("████████████████████████

█████████████████████████"); *see also id.* at 62:15‑63:18 ("█████████



---

[5] All references to "Arai Decl." (Dkt. 40-10) and "Arai Supp. Decl." (Case No. 2:18-cv-100, Dkt. 89-6) are to the declarations of Yutaka Arai, General Manager, VaaS Business Development Division, NDS, submitted in support of NDS's Separate Motion (Dkt. 40).

[6] All references to "Yanke Decl." (Case No. 2:18-cv-100, Dkt. 89-7) are to the declaration of Keith Yanke, Senior Direct Product Marketing, NDS-A, submitted in support of NDS's Separate Motion (Dkt. 40).



*Id.* at 110:15  111:3 ("

").

*Id.* at 207:10  209:18.

*Id.* at 63:14  19 ("

"), 64:6  9 ("

).

," *id.* at 79:20  80:19, , *id.* at 82:8

83:7. *id.*,

Finally, NDS-E and S[quadrat] are no strangers to the U.S. patent system. Each has

availed itself of the U.S. legal system with respect to patents, having been named as a real-party

in interest on two petitions for *inter partes* review filed against Ultravision patents. *See* Ex. 3 at

74 (identifying NDS-E and S[quadrat] as real parties-in-interest in Petition in IPR2019-01117

against Ultravision's U.S. Patent No. 9,916,782); Ex. 4 at 77 (same in Petition in IPR2019-01123

against Ultravision's U.S. Patent No. 9,349,306).

IV.     **THE COURT HAS PERSONAL JURISDICTION OVER NDS-E AND
         S[QUADRAT]**

   A.     **Legal Standard**

   Personal jurisdiction in patent infringement actions is governed by Federal Circuit law.

*See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200  01 (Fed. Cir. 2003). On a

motion to dismiss, "a plaintiff only needs to make a *prima facie* showing that the defendant is

subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light

most favorable to the plaintiff." *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 118 (E.D.

Tex. 2009) (citing *Silent Drive*, 326 F.3d at 1201) (emphasis added). Courts will resolve "all

conflicts between the facts contained in the parties' affidavits and other documentation" in the

plaintiff's favor. *Id.* (citation omitted).

   To determine whether personal jurisdiction exists over an out-of-state defendant, the

Court must consider: "(1) whether a forum state's long-arm statute permits service of process,

and (2) whether the assertion of personal jurisdiction would violate due process." *Autobytel, Inc.

v. Insweb Corp.*, No. 2:07-cv-524, 2009 WL 901482, at *1 (E.D. Tex. Mar. 31, 2009) (citing

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). Because

the Texas long-arm statute reaches "as far as the federal constitutional requirements of due

process will allow," the two inquiries collapse into a single inquiry of whether the exercise of

personal jurisdiction comports with [federal] due process. *ATEN Int'l*, 261 F.R.D. at 118. Due

process is satisfied if (1) the defendant has established minimum contacts with the forum state,

*id.*; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of

fair play and substantial justice." *Autobytel*, 2009 WL 901482, at *1 (citing *Int'l Shoe Co. v.

State of Wash., Office of Unemployment Comp.  & Placement*, 326 U.S. 310, 316 (1945)).

"Specific jurisdiction exists when the nonresident defendant has 'purposefully directed' his

8

activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-cv-26, 2009 WL 1025467, at *3 (E.D. Tex. Mar. 26, 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

An "independent basis" for personal jurisdiction is the "stream-of-commerce theory." *Icon Health & Fitness*, 2009 WL 1025467, at *4. Under this theory, a defendant establishes sufficient contacts with the forum by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id*. at *12 (citation omitted); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."). In this context, "[t]he distinction between specific and general jurisdiction is of little value." *Icon Health & Fitness*, 2009 WL 1025467, at *4.

Once the plaintiff makes a *prima facie* showing of minimum contacts, the defendant has the burden to show that the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 n.3 (Fed. Cir. 2006).

**B.    The Court Has Personal Jurisdiction Over NDS-E and S[quadrat] Based on the Stream-of-Commerce Theory**

A *prima facie case* of purposeful entry into the Texas stream of commerce is established by showing "[1] that the defendant's products were sold into a nationwide distribution network and [2] that the products were available in Texas." *IDQ Operating, Inc. v. Aerospace Commc'ns Holdings Co.*, No. 6:15-cv-781, 2016 WL 5349488, at *4 (E.D. Tex. Jun. 10, 2016), *report and*

9

*recommendation adopted sub nom. Armor All/STP Prod. Co. v. Aerospace Commc'ns Holdings Co.,* No. 6:15-cv-781, 2016 WL 5338715 (E.D. Tex. Sept. 23, 2016) (Gilstrap, J.); *accord GSK Tech., Inc. v. Schneider Elec., S.A.*, No. 6:06-cv-361, 2007 WL 788343, at *2 (E.D. Tex. Mar. 14, 2007). Under the strictest version of the test, the "purposeful" element is satisfied by a showing that the defendant "knew, or reasonably could have foreseen, that a termination point of the channel was [the forum state]." *Beverly Hills Fan*, 21 F.3d at 1564. Selling products to an entity that distributes products nationwide "is a strong indication that [the defendant] intends to direct its products nationwide," including to Texas. *IDQ Operating*, 2016 WL 5349488, at *4.

NDS-E and S[quadrat]'s conduct satisfies this theory of personal jurisdiction. NDS-E and S[quadrat] concede that their sister company, NDS-A, distributes LED display panels throughout the United States.[7] Arai Decl. (Dkt. 40-10) at ¶¶ 18 19; Eberhardt NDS-E Decl. at ¶¶ 21 22; Eberhardt S[quadrat] Decl. at ¶¶ 21 22; Motion at 1. This includes LED display panels such as the accused Q-Series and FA-Series that are sourced from NDS-E and S[quadrat]. Eberhardt NDS-E Decl. at ¶ 21; Eberhardt S[quadrat] Decl. at ¶ 21. NDS-E and S[quadrat] are not only aware of such sales, but they directly participate in them. NDS-E's and S[quadrat]'s knowledge of the distribution of these accused products is based on the fact that NDS-A places orders for

---

[7] NDS-E and S[quadrat] do not contend in their Motion that accused products sourced from them are not sold in Texas, which they surely would have if it were true. Rather, NDS-E and S[quadrat] merely state that Ultravision's First Amended Complaint does not allege any facts relating to any specific sale of such products in Texas. *See* Motion at 17. Indeed, NDS-E and S[quadrat] leave the door open to the possibility that sales of such products have been made in Texas, stating that "if an isolated sale or installation were made for a Texas customer, such sale would have been made by nonparty NDS-A." *Id.* Information relating to the customers who have received accused products sourced from NDS-E and/or S[quadrat] is non-public and is entirely within the control of Defendants. Thus, to the extent that the Court believes that additional evidence is necessary regarding whether the accused products have been delivered to and/or made available in Texas, Ultravision requests leave to conduct jurisdictional discovery of NDS-E and S[quadrat] relating to such sales. *See infra* § V. Separate and apart from this, however, jurisdiction is proper under Fed. R. Civ. P. 4(k)(2). *See infra* § IV.D.

the products with NDS-E and S[quadrat] based on specific, individual orders from customers in

the United States, and that NSD-E and S[quadrat] then either fulfill the orders themselves or

████████████████████████████████████████████████████. Eberhardt

NDS-E Decl. at ¶ 21; Eberhardt S[quadrat] Decl. at ¶ 21. In connection with this process, ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Wylie Tr. (Ex. 2) at 110:15  111:3. ████████████

████████████████████████████████████████████████████

██████████ Arai Supp. Decl. (Case No. 2:18-cv-100, Dkt. 89-6) at ¶ 9. This direct participation

by NDS-E and S[quadrat] in the sale of accused products to NDS-A in the United States and by

NDS-A to customers throughout the United States is sufficient to establish jurisdiction over

NDS-E and S[quadrat]. *See Beverly Hills Fan*, 21 F.3d at 1564.

This Court's analysis in *MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-cv-289, 2008 WL

910012 (E.D. Tex. Apr. 2, 2008), is instructive. In that case, a foreign defendant moved to

dismiss for lack of personal jurisdiction, arguing that it manufactures vehicles containing

accused products abroad, sells the products to a related foreign entity, and then a related U.S.

entity purchases the vehicles for distribution in the United States. *Id.* at *1. The defendant argued

that jurisdiction was improper because the U.S. entity, not the defendant, "directs and controls

the distribution of [accused products] in the US, including into Texas." *Id.* This Court disagreed,

concluding that jurisdiction was proper under the stream of commerce theory because the

defendant's continuous relationship with the two related entities amounted to "an established

distribution channel," the defendant admitted that it places the accused products into that

established chain, and the defendant was aware that its products would eventually be distributed

nationwide. *Id.* The Court also held that because the defendant sold its products into an established distribution channel with other related entities, and it "knows the likely destination of its products [because] . . . [it] sells its products to [an entity in the chain] knowing that [the U.S. entity] will purchase some of those vehicles for distribution in the [U.S., and the U.S. entity] then distributes [the accused] vehicles throughout the United States, including Texas . . . [the defendant] should reasonably anticipate being hauled into court in Texas." *Id.*

Here, NDS-E and S[quadrat]'s sister company, NDS-A, acquires the accused products from NDS-E and/or S[quadrat] and sells them throughout the United States, including in Texas. Eberhardt NDS-E Decl. at ¶ 21; Eberhardt S[quadrat] Decl. at ¶ 21. NSD-E and S[quadrat] put the Q-Series and FA-Series LED display panels into the stream of commerce that results in them being sold in the United States, including in Texas, by providing them to NDS-A for sale here. *See id.*; *see also* Arai Decl. (Dkt. 40-10) at ¶ 19. This is unrebutted by NDS-E and S[quadrat] in their Motion. Mr. Wylie also testified that ████████████████████████████████ ████████████████████████████████████████████████, *id.* at 82:8  83:7, ████████ ████████████████████████████████████████████████████████████ ████████████████████████████ *id.* at 63:14  64:9. As in *MHL Tek*, these facts are sufficient to show that NDS-E and S[quadrat] place the accused products into the steam of commerce through a distribution channel they established with NDS-A, with knowledge that, through NDS-A's distribution, they will be sold nationwide, including in Texas. *See MHL Tek*, 2008 WL 910012, at *1.

Contrary to NDS-E and S[quadrat]'s characterization, Ultravision is not arguing that NDS-E and S[quadrat] are merely aware of NDS-A's sales in the United States. NDS-E and S[quadrat] cite *Zoch v. Daimler, AG*, No. 6:16-cv-57, 2017 WL 2903264 (E.D. Tex. May 16,

2017), for the proposition that such awareness is insufficient to establish jurisdiction. *See* Motion at 17  18. In *Zoch*, the defendant designed automobile seat structures that were manufactured in Germany by its sister company, CRH, who sold them in Germany to a third party, Manga Seating. 2017 WL 2903264, at *5  6. The seat structures were then assembled and installed into vehicles abroad by third parties. *Id.* at *6. The vehicles into which the seats were installed were then sold in the United States by third parties "without the specific or general knowledge" of the defendant. *Id.* Here, not only are NDS-E and S[quadrat] aware of its sister company's (not a third party as in *Zoch*) sales in the United States, they directly participate in the introduction of the products into the stream of commerce.

NDS-E and S[quadrat] attempt to impose an additional requirement on the stream of commerce test that should be rejected, arguing that jurisdiction under the stream of commerce theory is not proper because "there is no evidence of pervasive sales of accused products in Texas that would establish minimum contacts or a routine stream of commerce" because "[p]rior finding of personal jurisdiction pursuant to the stream of commerce theory involved uncontested substantial volumes of accused products entering the forum in question." Motion at 20  21 (citing *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343 (Fed. Cir. 2016); *Beverly Hills Fan*, 21 F.3d at 1562; *Semcon IP Inc. v. TCT Mobile Int'l Ltd.*, No. 2:18-cv-194, 2019 WL 2774362, at *3 (E.D. Tex. July 2, 2019)). However, none of the cases cited by NDS-E and S[quadrat] set forth any requirement regarding the number of accused products that must enter the stream of commerce for the exercise of jurisdiction to be proper. No such requirement should be imposed on Ultravision now.

NDS-E and S[quadart]'s remaining arguments that jurisdiction is not proper because they did not "direct[] any activity *on [their] own*" to Texas and that "Ultravision has not pled . . . that

this litigation arises out of any specific actions by NDS-E and S[quadrat] in Texas," *see* Motion at 18 19[8], are irrelevant under the stream-of-commerce theory. *See, e.g.*, *MHL Tek*, 2008 WL 910012, at *1. Further, such arguments are mistaken, as Ultravision's causes of action for patent infringement are directly connected to NDS-E's and S[quadrat]'s involvement in conduct in purposely placing the accused products into the stream of commerce for sale in the United States including Texas. *See Beverly Hills Fan*, 21 F.3d at 1565. Nothing further is required to establish jurisdiction. *Id.; see also id.* at 1564; *MHL Tek*, 2008 WL 910012, at *1; *IDQ Operating*, 2016 WL 5349488, at *4; *ATEN Int'l*, 261 F.R.D. at 120; *Asahi Metal Indus. Co., Ltd. v. Chang Shin Rubber Indus. Co.*, 480 U.S. 102, 117 (1987) (noting that jurisdiction is proper when the flow of products into the forum is "regular and anticipated" and more than "unpredictable currents or eddies"). Accordingly, this Court's exercise of personal jurisdiction over NDS-E and S[quadrat] is proper and their Motion should be denied.

## C.     Exercise of Personal Jurisdiction Over NDS-E and S[quadrat] is Reasonable and Fair

NDS-E and S[quadrat] have not met their burden to show that the exercise of personal jurisdiction over them would offend "traditional notions of fair play and substantial justice." *Breckenridge Pharm.*, 444 F.3d at 1362 n.3. To determine this, courts consider five factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of

---

[8] Citing *3d Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373 (Fed. Cir. 1998); *Caradori v. Karl Storz Endoscopy-Am., Inc.*, No. 8:14-cv-3198, 2017 WL 4162241, at *4 (D. Md. Sept. 18, 2017); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004); *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373 (Fed. Cir. 2015); *Blue Spike, LLC v. Huawei Techs. Co.*, No. 6:13-cv-679, 2016 WL 3951665, at *3 (E.D. Tex. June 6, 2016); *Grober v. Mako Prods., Inc.*, 686 F.3d 1335 (Fed. Cir. 2012).

the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477

(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

This is not the "rare situation" where Ultravision's and Texas's interests in adjudicating

the dispute in Texas is "so attenuated that [those interests] are clearly outweighed by the burden

of subjecting the defendant to litigation within the forum." *See Beverly Hills Fan*, 21 F.3d at

1568 (citing *Burger King*, 471 U.S. at 477 (defendant must present a "compelling case" of

unreasonableness); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774  75 (1984)

(purposeful minimum contacts "ordinarily" enough). Ultravision is headquartered in Dallas and

has a strong interest in having its injuries remedied in its home state. *See Jacobs Chuck Mfg. Co.*

*v. Shandong Weida Mach. Co.*, No. 2:05-cv-185, 2005 WL 3299718, at *8 (E.D. Tex. Dec. 5,

2005). The State of Texas also has a significant interest in adjudicating this dispute because it

has a "significant interest in preventing patent infringement within its borders" and an interest in

"furthering commerce and scientific development, especially within its technology sector, which

is promoted by patent laws." *IDQ Operating*, 2016 WL 5349488, at *5.

Most of the five factors examined to determine whether personal jurisdiction is

reasonable and fair weigh in Ultravision's favor. These include the second factor because "[t]he

United States has a 'substantial interest' in enforcing the federal patent laws." *Synthes (U.S.A.) v.*

*G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (citing

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1356 (Fed.

Cir. 2002)). The United States "also has an interest in discouraging injuries that occur within its

boundaries, including injuries resulting from patent infringement." *Id.* (citing *Beverly Hills Fan*,

21 F.3d at 1568). The third factor also favors exercising personal jurisdiction because

Ultravision, a resident of this State, has alleged an injury for which it is seeking relief and

therefore has "an interest in obtaining convenient and effective relief." *Synthes (U.S.A.)*, 563 F.3d at 1299. While NDS-E and S[quadrat] argue that "there is nothing specific about Texas that will further the judicial system's interest in obtaining the most efficient resolution of controversies" and that "Ultravision's interest in 'convenient and effective relief' . . . is not even best served by litigating against NDS-E and S[quadrat] in Texas," Motion at 21, they do not cite any case law whatsoever in support of these points, nor do they identify any alternative forum where Ultravision could better redress NDS-E's and S[quadrat]'s infringement of its patents.

Finally, as in *Synthes (U.S.A.)*, "[t]o the extent that the fourth and fifth due process factors apply when the United States is the forum, they favor jurisdiction in this case. Both factors are concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy." 563 F.3d at 1300 (citing *Burger King*, 471 U.S. at 477). While NDS-E and S[quadrat] assert that "[i]n terms of other social policies, the furtherance of international comity counsels against unnecessarily exercising jurisdiction over non-residents," Motion at 21, they do not provide any supporting case law and ignore that these factors are intended to address social policies between alternative fora relevant to addressing the controversy between the parties. Here, as the Federal Circuit has recognized, "the forum is the United States, so no other U.S. forum is available to [Plaintiff] for its patent infringement claim. Put another way, there is no U.S. forum with which to compare the efficiency of a resolution or with respect to which there is a clash of social policies." *Synthes (U.S.A.)*, 563 F.3d at 1300. Accordingly, as Ultravision does not have an alternative forum in which to seek redress from NDS-E and S[quadrat], the fourth factor weighs for a finding of personal jurisdiction.

While NDS-E and S[quadrat] assert that the burden in defending Ultravision's claims "in a United States court is extremely high," Motion at 21, this needs to be evaluated in context.

Both NDS-E and S[quadrat] are affiliates of NDS-A and work regularly with NDS-A with respect to sales of the accused products in the United States. Moreover, the purported burden should be less significant in this day and age as "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Synthes (U.S.A.)*, 563 F.3d at 1299 (citing *World-Wide Volkswagen*, 444 U.S. at 294, and finding personal jurisdiction over a Brazilian entity that had no U.S. office, subsidiary or licensee). As companies that have taken advantage of the U.S. patent system by filing petitions for *inter partes* review of patents owned by Ultravision, NDS-E and S[quadrat] cannot credibly claim that they are inexperienced in U.S. intellectual property law so as to make it overly burdensome to defend themselves here. Rather, NDS-E and S[quadrat] have each "availed itself of the forum" by filings petitions for *inter partes* review of Ultravision's patents, thereby making the application of personal jurisdiction fair and reasonable.

Accordingly, the exercise of personal jurisdiction over NDS-E and S[quadrat] comports with due process, and the Motion should be denied.

**D.      Alternatively, Jurisdiction is Proper in this District Under Fed. R. Civ. P. 4(k)(2)**

In the event this Court believes that Ultravision has not established that NDS-E's and S[quadrat]'s products were sold in the stream of commerce that is directed at the Texas market, this Court nevertheless has personal jurisdiction over NDS-E and S[quadrat] pursuant to Fed. R. Civ. P. 4(k)(2). Under Fed. R. Civ. P. 4(k)(2):

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

"Thus, for a court to exercise personal jurisdiction over a defendant under that rule, the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1412 (Fed. Cir. 2009).

Here, it is undisputed that Ultravision's claim arises under federal patent law. As set forth above, the exercise of jurisdiction over NDS-E and S[quadrat] comports with due process. *See supra* § IV.C. With regard to the remaining requirement     that the defendant must not be subject to jurisdiction in any state's court of general jurisdiction     "the burden is on the defendant to name some other state in which the suit could proceed." *Bluestone Innovations Texas, L.L.C. v. Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 663 (E.D. Tex. 2011). If a "defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Touchcom*, 574 at 1415. Here, because NDS-E and S[quadrat] have not identified any other state where Ultravision may bring this suit against them, jurisdiction is properly exercised by this Court under Fed. R. Civ. P. 4(k)(2).

## V.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT ULTRAVISION LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY OF NDS-E AND S[QUADRAT]

### A.   Legal Standard

The courts have "broad discretion" in "all discovery matters," *Moore v. CITGO Ref. & Chem. Co.*, 735 F.3d 309, 315 (5th Cir. 2013), which includes jurisdictional discovery, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). "[B]ecause the Rules favor broad discovery, jurisdictional discovery should only be denied where it is *impossible* that the discovery 'could . . . add[] any significant facts' that might bear on

the jurisdictional determination. *Blitzsafe Texas LLC v. Mitsubishi Electric Corp.*, No. 2:17-cv-430, 2019 WL 2210686, at *3 (E.D. Tex. May 22, 2019) (alterations and emphasis to quotations in original) (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)). "Put another way, jurisdictional discovery should typically be granted unless 'no amount of information . . . would strengthen' the movant's jurisdictional claims." *Id.* (quoting *Alpine View*, 205 F.3d at 221; *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)). Because "evidence of jurisdictional facts is often largely or wholly in the possession of an adverse party, broad jurisdictional discovery also ensures that jurisdictional disputes will be 'fully and fairly' presented and decided." *Id.* (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1345 (5th Cir. 1978); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)); *see also Pudlowski v. St. Louis Rams, LLC*, 829 F.3d 963, 964  65 (8th Cir. 2016) ("[Discovery] as to jurisdiction or venue . . . makes good sense given that jurisdiction is (1) important, (2) often fact-intensive, and (3) only required to be alleged plausibly . . . . A court has an independent obligation to ensure that the case is properly before it. Discovery is often necessary because jurisdictional requirements rest on facts that can be disputed . . . ." (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 340 n.13 (1978)).

### B.     Jurisdictional Discovery Should be Permitted

In the event this Court believes that Ultravision has not yet established personal jurisdiction over NDS-E and/or S[quadrat], Ultravision requests that it be permitted to conduct jurisdiction-related discovery of them before deciding this motion. *See Oppenheimer Fund*, 437 U.S. at 351 n.13; *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). The rationale for such discovery and the facts expected to be uncovered should be clear based on the parties' briefing. For example, documents regarding any sales of LED display panels by NDS-E and/or S[quadrat] to or involving NDS-A of S[quadrat] and/or LED

display panels will provide evidence of NDS-E's and S[quadrat]'s involvement in such sales.

Agreements between NSD-E and/or S[quadrat], on the one hand, and NDS and/or NDS-A, on

the other, will provide evidence of NDS-E's and S[quadrat]'s involvement in the distribution of

LED display panels in the United States by NDS-A. Finally, deposition testimony regarding the

foregoing and regarding the declarations submitted by NDS-E and S[quadrat] in support of their

Motion will provide evidence of the actual conduct of NDS-E and S[quadrat] relating to the sales

of LED display panels in the United States, such as ████████████████████████

████████████████████████████████████████████████

████████ Wylie Tr. (Ex. 2) at 82:8  83:7, █████████████████████████

████████████████████████████, *id.* at 63:14  64:9, █████████████████

████████████████████████████████████████████████, *id.*

at 62:7  63:13, 110:15  111:3 , 222:17  218:19, █████████████████████

████████████████████████████, *id.* at 207:10  209:18. Such

depositions would focus more closely on the jurisdictional issues than the wide-ranging

deposition taken previously where jurisdiction was not at issue.

## VI.    ULTRAVISION'S FIRST AMENDED COMPLAINT PROPERLY STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.    Legal Standard

Motions to dismiss for failure to state a claim upon which relief can be granted are purely

procedural questions that do not pertain to patent law. *McZeal v. Sprint Nextel Corp.*, 501 F.3d

1354, 1356 (Fed. Cir. 2007). As a result, the law of regional circuits is applied to determine if,

"in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.* at

1356 (citing *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 477 (5th Cir. 2002)). In the

Fifth Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "accept[s] all well-pleaded facts as true, and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). The court determines whether those facts state a plausible claim for relief. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 217 (5th Cir. 2010). "A claim is plausible if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The standard requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). As a result, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555)). The Court should not evaluate the merits of the allegation "but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim." *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 354 (S.D. Tex. 2011) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

**B.   Ultravision Has Sufficiently Alleged Infringement by Each of NDS-E and S[quadrat]**

"[T]o state a claim for direct infringement, a plaintiff must . . . plead facts to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any

patented invention during the term of the patent.'" *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-cv-1032, 2017 WL8727249, at *1 (E.D. Tex. Sept. 22, 2017) (quoting 35 U.S.C. § 271(a)). NDS-E and S[quadrat] do not take issue with the substance of Ultravision's allegations of direct infringement, but instead attempt to elevate form over substance by arguing that Ultravision's allegations are insufficient because they "plead . . . against *Defendants* collectively." Motion at 22. There is no rule against such a form of pleading, and NDS-E and S[quadrat] have not cited a single patent case from this District to the contrary. Although it appears that this Court has not yet had the opportunity to opine on this creative theory, courts in other districts have routinely rejected it. *See Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53 (D. Mass. 2014) ("[G]roup pleadings are not, *prima facie*, excluded by Rule 8(a)."); *see also Bilecki v. Mather Inv'rs, LLC*, No. 2:08-cv-1, 2008 WL 4376372, at *2 (W.D. Mich. Sept. 22, 2008) ("The Federal Rules of Civil Procedure do not require a plaintiff to make separate statements against each individual defendant." (citation omitted)).

For example, in *NASDAQ, Inc. v. IEX Group, Inc.*, the District of New Jersey rejected an argument that the patentee's pleading was insufficient because it "fail[ed] to distinguish between IEX Group, Inc. and Investors Exchange, LLC even though they are distinct entities." No. 3:18-cv-3014, 2019 WL 102408, at *14 (D.N.J. Jan. 4, 2019). In doing so, the court found that "the Complaint 'does refer to both Defendants as 'IEX' for convenience, . . . it also specifically describes the relationship between the two entities, and specifically accuses both entities of infringing acts.'" *Id.* ("The pervasiveness of this practice is enough to convince the Court that this procedure is proper.").

Similarly, in *Acantha LLC v. Depuy Synthes Sales, Inc.*, the Eastern District of Wisconsin rejected an argument that "Plaintiff has impermissibly directed every allegation to all defendants

and has failed to provide any of the defendants notice of the relevant claims against them."
No. 1:15-cv-1257, 2016 WL 8201781, at *2 (E.D. Wis. July 28, 2016). The court found that
where a "Plaintiff collectively refers to the defendants as 'Defendants' . . . [it] is clear that every
allegation is directed to every defendant. *Id.* "Whether each defendant did or did not infringe on
the patents that Plaintiff ascribes to all defendants is something that will emerge either in the
course of the mandatory up-front disclosure under Rule 26(a) or through discovery or both." *Id.*

As in the above cases, here, Ultravision has used the collective term "Defendants" for
convenience to allege that each of the defendants, including NDS-E and S[quadrat], individually
infringe the Patents-in-Suit in the manner alleged. That is, "every allegation is directed to every
defendant." *Id.* at *2. Moreover, the First Amended Complaint "describes the relationship
between [NDS-E and S[quadrat]], and specifically accuses both parties of infringing acts." *See
NASDAQ*, 2019 WL 102408, at *14; First Amended Complaint (Dkt. 30) at ¶ 5 ("Upon
information and belief, defendant S[quadrat] GmbH . . . that is a wholly owned subsidiary of
[NDS-E] . . . .).

The cases relied on by NDS-E and S[quadrat] are not binding on this Court. Nor are they
even on point. For example, in *Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*, the
court found that the patentee's use of "the collective term 'KCI'" to refer to six separate "KCI
Affiliates" failed to put each of the defendants on notice regarding how "any individual KCI
Affiliate may be directly or indirectly infringing the patents" "because, at several points
throughout the [pleading], [the patentee] uses the term 'KCI' in ways that are inconsistent or
plainly incorrect." No. 5:11-cv-163, 2013 WL 2453267, at *6 (W.D. Tex. June 4, 2013):

> For example, at one point . . . [the patentee] refers to the License
> Agreement as being entered into by 'KCI' while at another point
> . . . [it] states that the License Agreement was entered into by
> 'Kinetic Concepts, Inc.'; [the patentee] asserts that 'KCI' filed its

> Original Complaint in this Court on February 28, 2011, although in fact only Kinetic Concepts, Inc. and KCI USA, Inc. filed the Original Complaint in this Court; and [the patentee] asserts that the notice of termination sets forth the numerous post-termination obligations imposed on 'KCI' by the License Agreement, although the notice of termination in fact only refers to Kinetic Concepts, Inc. As a result of [the patentee]'s indiscriminate use of the collective term 'KCI,' it is impossible for the KCI Affiliates, and the Court, to discern which allegations and claims are referring to which specific KCI entity.

*Id.* (internal citations omitted). Here, to the contrary, Ultravision has used the collective term "Defendants" consistently to allege that each of the defendants, including NDS-E and S[quadrat], is infringing the Patents-in-Suit in the same way.

*Bailey v. Willis*     the only Eastern District of Texas case cited on this point by NDS-E and S[quadrat]     does not address allegations of infringement as it is not a patent case. No. 4:17-cv-276, 2018 WL 3321461 (E.D. Tex. Jan. 11, 2018). Rather, it is a civil rights suit against the Collin County District Attorney, an Assistant District Attorney, a District Judge, Court of Appeals Justices, Court of Criminal Appeals Justices, the Frisco Police Department, the Governor of Texas, the Attorney General of Texas, and two attorneys. *Id.* at *1. In such circumstances, the Court found that "[a]s to each defendant sued in his or her individual capacity, Plaintiff must allege how that defendant was personally involved in or had direct responsibility for the incidents that caused Plaintiff's alleged injury." *Id.* at *12. This is much different than the circumstances here, where Ultravision alleges that each of the Defendants has infringed the Patents-in-Suit in the same manner. Similarly, *In re iPhone Application Litig.*, was a "puntative nationwide case [action] . . . against Apple[ and other unrelated "Mobile Industry Defendants"] for alleged violations of federal and state law" by "unlawfully allowing third party applications . . . that run on the iDevices to collect and make use of, for commercial purposes, personal information without user consent or knowledge. No. 5:11-md-2250, 2011 WL 4403963,

at *1 (N.D. Cal. Sept. 20, 2011). In that case, which bears no relation to the present one, the Court found that "Plaintiffs' failure to allege what role each Defendant played in the alleged harm makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." *Id.* at *8.

One District of Delaware case cited by NDS-E and S[quadrat]      *ProMOS Techs., Inc. v. Samsung Elecs. Co.*     does hold "that a Complaint may be structured to refer to all named defendants collectively within a Count" only if the "Count . . . incorporate[s] previous allegations of the Complaint identifying the specific infringing acts of the individual defendants." No. 1:18-cv-307, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018). But the District of Delaware itself has held that this line of cases is not controlling and "it is not clear that it remains the law in [that] District." *ITT Enidine Inc. v. Gen. Aerospace, Inc.*, No. 2:18-cv-1108, 2019 WL 4007331, at *2 (W.D. Wash. Apr. 8, 2019). Rather, "[m]ore recently, group pleading has been permitted within the District of Delaware if 'it can be reasonably inferred that each and every allegation is made against each individual defendant.'" *Id.* (quoting *Groove Digital, Inc. v. King.com, Ltd.*, No. 1:18-cv-836, 2018 WL 6168615, at *1 (D. Del. Nov. 26, 2018)); *see also Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 447 (D. Del. 2018) (concluding that "Align is alleging that both of the Defendants did everything. The allegations must at this stage, be taken as true." (internal citation omitted)); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 1:18-cv-452, 2019 WL 330515, at *11  12 (D. Del. Jan. 25, 2019) (identifying "two lines of cases" in Delaware on this issue that are in "tension" and finding that "the recent decisions in the *Align* and *Groove Digital* [permitting collective pleading] are more persuasive."). Here, it is exactly the case that each allegation is made against each individual defendant.

Ultravision has adequately pled plausible infringement claims against both NDS-E and S[quadrat] and their motion to dismiss Ultravision's infringement claims for failure to state claims for infringement against them should be denied.

### C.       Ultravision Has Sufficiently Alleged Induced Infringement

"A claim for induced infringement under 35 U.S.C. § 271(b) requires proof (1) of an act of direct infringement by another, and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the other's infringement." *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112, 2015 WL 1432158, at *2 (E.D. Tex. Mar. 30, 2015). Here, Ultravision's claims for induced infringement sufficiently allege direct infringement by NSD-E and S[quadrat]'s customers, installers, and end-users, that NDS-E and S[quadrat] had knowledge of the Patents-in-Suit at least as of the date of the filing of the First Amended Complaint, and that with such knowledge NDS-E and S[quadrat] have induced infringement by their customers, installers, and end-users, and possessed the specific intent to encourage that infringement.

NDS-E and S[quadrat] assert that Ultravision's "allegations fail to identify any specific infringers," Motion at 25, but this is plainly wrong. Ultravision alleges direct infringement by NDS-E and S[quadrat]'s "customers, installers, and end-users." First Amended Complaint (Dkt. 30) at ¶ 36. NDS-E and S[quadrat] complain that "[t]hese allegations do not identify which defendants' customers, installers, or end-users allegedly directly infringe," but no such pleading requirement exists and NDS-E and S[quadrat] do not cite any cases whatsoever in support of their assertion that such pleading is inadequate. To the contrary, the Federal Circuit has held that "[t]o state a claim for indirect infringement . . . a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading Transmission*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). Thus, this Court has found sufficient allegations of induced infringement similar to Ultravision's here that alleged

direct infringement by "users and owners of [accused] devices." *Personal Audio, LLC v. Google, Inc.*, No. 1:15-cv-350, 2017 WL 4837853, at *7 (E.D. Tex. May 15, 2017); *see also Telecomm Innovations, LLC v. Ricoh Company, Ltd.*, 966 F. Supp. 2d 390, 394 (D. Del. Aug. 6, 2013) ("With respect to properly alleging that at least one direct infringer exists, plaintiff is not required to specifically identify the customers who are induced to infringe . . . .'").

NDS-E and S[quadrat] also assert that "Ultravision's allegations of induced infringement fail to include any facts establishing a plausible inference that NDS-E or S[quadrat] had the specific intent to induce the actions of others" and that "Ultravision's allegations fail to set forth specific facts plausibly showing that NDS-E and S[quadrat] knew that their customers' acts constituted infringement." Motion at 25. However, Ultravision did indeed allege that "one or more of Defendants is encouraging and facilitating infringement by others" by "provid[ing] products . . . to other Defendants, to distributors, to sign installers, or to U.S.-based sales entities such as [NDS-A] knowing that these entities intend to make, use, offer to sell, and/or sell the products within the United States and/or import the products into the United States." First Amended Complaint (Dkt. 30) at ¶ 37. Moreover, Ultravision alleged that NDS-E and S[quadrat] were on notice of the Patents-in-Suit as of the filing date of Ultravision's ITC complaint, *see id.* at ¶ 38, and/or the present First Amended Complaint, *see id.* at ¶ 50, and that NDS-E and S[quadrat] induced infringement of the Patents-in-Suit with knowledge of the patents "by supplying these products to end users for use in an infringing manner," *id.* at ¶ 38. When the product itself is infringing, "the mere sale of the [product] in this case is sufficient circumstantial evidence of [defendant's] intent to induce its customers' infringement." *See Conair Corp. v. Jarden Corp.*, No. 1:13-cv-6702, 2014 WL 3955172, at *3 (S.D.N.Y. Aug. 12, 2014). That is all that is required at this stage. *See Kyowa Hakka Bio Co. v. Ajinomoto Co.*, No. 1:17-cv-313, 2018

WL 834583, at *11 (D. Del. Feb. 12, 2018) ("These allegations are sufficient, at this stage of the litigation, to allow an inference of intent. The Amended Complaint specifically pleads Defendants' knowledge of the patent-in-suit and that, despite this knowledge, Defendants induced their agents . . . [to] sell the Accused Products in the United States."). NDS-E and S[quadrat] have not cited any cases to the contrary.

Accordingly, Ultravision has adequately pled that NDS-E and S[quadrat] have induced infringement of the Patents-in-Suit and their Motion to dismiss Ultravision's induced infringement claims should be denied.

**D.    Leave to Amend Should be Freely Granted**

If the Court decides to grant NDS-E and S[quadrat]'s Motion to Dismiss for Failure to State a Claim, Ultravision respectfully requests leave to amend its complaint in accordance with Fed R. Civ. P. 15(a)(2), which states, "[t]he court should freely give leave when justice so requires."

**VII.    CONCLUSION**

For the foregoing reasons, Ultravision respectfully requests that the Court deny NDS-E and S[quadrat]'s Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, grant Ultravision leave to conduct jurisdictional discovery of NDS-E and S[quadrat], and deny NDS-E and S[quadrat]'s Motion to Dismiss for Failure to State a Claim, or in the alternative, grant Ultravision leave to amend its complaint.

Dated: October 3, 2019                           Respectfully submitted,

                                                 */s/ Alfred R. Fabricant*
                                                 Alfred R. Fabricant
                                                 NY Bar No. 2219392
                                                 Email: afabricant@brownrudnick.com
                                                 Lawrence C. Drucker
                                                 NY Bar No. 2303089
                                                 Email: ldrucker@brownrudnick.com

Peter Lambrianakos
NY Bar No. 2894392
Email: plambriankos@brownrudnick.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@brownrudnick.com
Timothy J. Rousseau
NY Bar No. 4698742
Email: trousseau@brownrudnick.com
Alessandra C. Messing
NY Bar No. 5040019
Email: amessing@brownrudnick.com
John A. Rubino
NY Bar No. 5020797
Email: jrubino@brownrudnick.com
Daniel J. Shea
NY Bar No. 5430558
Email: dshea@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Sarah G. Hartman
CA Bar No. 281751
Email: shartman@brownrudnick.com
**BROWN RUDNICK LLP**
2211 Michelson Drive, 7th Floor
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 752-1514

Samuel F. Baxter
Texas Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***ULTRAVISION TECHNOLOGIES, LLC***



**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that, on October 3, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant