**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:18-cv-00100-JRG-RSP |
| | § | LEAD CASE |
| GOVISION, LLC, | § | |
| *Defendant.* | § | |
| | § | |
| ULTRAVISION TECHNOLOGIES, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:18-cv-00108-JRG-RSP |
| PRISMAFLEX INTERNATIONAL FRANCE, S.A. AND SHENZHEN PRISMATRONIC CHINA ELECTRONIC TECHNOLOGY LTD. CO., | § | CONSOLIDATED CASE |
| *Defendants.* | § | |
| | § | |

## REPORT & RECOMMENDATION AND MEMORANDUM ORDER

Before the Court are two Motions: (1) the Second Renewed Motion to Transfer Venue and Dismiss and Supporting Brief ("Motion to Transfer or Dismiss") (Dkt. No. 93), which was filed by Prismaflex International France S.A. ("PI"); and (2) PI's Motion to Strike Ultravision's Sur-Reply ("Motion to Strike") (Dkt. No. 128). Within the Motion to Transfer or Dismiss, PI asserts that (1) the Court lacks personal jurisdiction over PI; (2) venue is improper; (3) the Eastern District of North Carolina is a more convenient forum, making transfer appropriate pursuant to 28 U.S.C. § 1404; (4) Ultravision fails to state a claim for inducement; and (5) Ultravision fails to state a claim for willful infringement. The Motion to Strike argues that the facts related to personal jurisdiction that are presented within Ultravision's Sur-Reply are incomplete or inaccurate and raised for the first time in the Sur-Reply, and the Motion to Strike also requests in the alternative that the

Court consider PI's supplemental declaration and permit a supplemental brief based on the material presented in that supplemental declaration. Dkt. No. 128 at 1.

After consideration, the Court **DENIES** the Motion to the extent that it seeks to transfer this case to the Eastern District of North Carolina ("E.D.N.C.") under § 1404. The Court also recommends that Defendants' Motion be **DENIED** with respect to Prismaflex's arguments for dismissal based on a lack of personal jurisdiction under 12(b)(2), improper venue under 12(b)(3), and failure to state a claim under 12(b)(6). The Court also **DENIES** the Motion to Strike. The Court will address each of the arguments presented within PI's Motion to Transfer or Dismiss separately below.

## I.     TRANSFER BASED ON CONVENIENCE UNDER 28 U.S.C. § 1404

After analyzing the convenience factors, the Court concludes that Defendants have not shown that E.D.N.C. is a clearly more convenient forum than the Eastern District of Texas ("E.D. Tex."). The Court therefore **DENIES** Defendants' Motion to the extent that it seeks to transfer this case pursuant to 28 U.S.C. § 1404(a).

### a.  Applicable law

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To determine whether venue transfer is appropriate under § 1404(a), the Fifth Circuit has adopted several private and public interest factors. *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) ("Volkswagen II"). The private interest factors include (1) the availability of compulsory process to secure the attendance of witnesses; (2) the cost of attendance for willing witnesses; (3) the relative ease of access to sources of proof; and (4) all other practical problems that make trial of a

case easy, expeditious, and inexpensive. *Id*. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems with conflict of law. *Id*.

A plaintiff's choice of venue is not an express factor in the analysis. *Seven Networks, LLC v. Google* LLC, 2:17-CV-00442-JRG, 2018 WL 4026760, at *2 (citing *Volkswagen II*, 545 F.3d at 315). However, a moving defendant must demonstrate that the proposed venue is clearly more convenient that the original venue. *Id*. (citing *Volkswagen II*, 545 F.3d at 315). By applying this heightened standard, the plaintiff's choice of forum is given the appropriate deference. *Id*. (citing *Volkswagen II*, 545 F.3d at 315).

### b. Analysis

As an initial matter, the Court notes that this action could have been brought in E.D.N.C. Thus, the Court will proceed to analyze the convenience factors.

### i. The cost of attendance for willing witnesses

PI states that "[a] trial in this District would inconvenience the witnesses as no known witnesses reside in this District and [PI's] known witnesses reside either in North Carolina or France." Dkt. No. 93 at 12. PI represents that its U.S. subsidiary, Prismaflex USA, has "witnesses with relevant knowledge [who] work in the Eastern District of North Carolina." *Id*. To support this statement, PI points to a declaration from PI's Chief Financial Officer, who states that "Prismaflex USA is headquartered in Elizabethtown, North Carolina where it employs one person." Dkt. No. 93-1 at ¶ 5. Thus, PI has shown that its U.S. subsidiary has one unidentified witness in E.D.N.C. PI has not shown that it has any witnesses residing in the United States, and it instead represents that it is based in France. Dkt. No. 93 at 12.

On the contrary, Ultravision represents that it is based in Dallas, Texas and points to specific witnesses for whom a trial would be more convenient in E.D. Tex. Dkt. No. 105 at 17. Ultravision states that "this District is the most convenient for Ultravision, the owner of the Asserted Patents, and its primary witness and CEO, Bill Hall, who lived, and still lives, nearby in Dallas, Texas and works at Ultravision's Dallas headquarters, which is only five miles from this District and 157 miles from the Marshall Courthouse." *Id*. Ultravision goes on to show that this District is more convenient for other key witnesses such as Tandy Robinson, Matthew Foster, David Auyeung, and Joseph McAlexander III, who each live in this District. *Id*. Ultravision shows how these witnesses possess relevant knowledge as well. *See, e.g.*, Dkt. No. 105-1 at ¶¶ 10–13.

This factor weighs strongly against transfer. PI points to one unidentified witness that works in North Carolina for its U.S. subsidiary. The Court gives this witness very limited weight because PI does not specifically identify this witness or provide any detail about the relevant knowledge of the witness. Without any further description of the knowledge that the witness possesses, it is difficult for the Court to assess the likelihood of that North Carolina witness actually testifying at trial. "[S]pecifically identifying witnesses and demonstrating the likelihood of their testimony at trial can only help the Court in evaluating the proper weight to accord to a specific witness." *Seven*, 2018 WL 4026760, at *8 (citing *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-cv-1302, 2017 WL 4225202, at *6 (E.D. Tex. Sept. 22, 2017) (Gilstrap, J.)); *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961, 2017 WL 772653, at *10 (E.D. Tex. Feb. 28, 2017) (Love, J.) ("[S]pecific witnesses should be identified with, at a minimum, a general statement providing the expected relevant and material information to the litigation at hand."); *Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, No. 6:12-CV-100, 2013 WL 682849, at *4 (E.D. Tex. Feb. 22, 2013) (Love, J.) ("Without naming any persons, their interest in the litigation, and where they reside, the Court can only speculate as to the difficulty and cost of travel.").

Any inconvenience to witnesses in France is also entitled little weight. Again, PI does not specifically identify these witnesses or show how any specific individual will have knowledge. But, more importantly, the inconvenience to a French witness of traveling for a trial would be relatively similar in either district, and PI has not shown otherwise.

By contrast, Ultravision states that it is based nearby in Dallas, TX, and Ultravision also points to five different witnesses with relevant knowledge that live within this District. Ultravision has shown that trial in this District will be more convenient for these witnesses, and this showing is entitled to great weight. For these reasons, this factor therefore weighs **STRONGLY AGAINST TRANSFER**.

### ii. The relative ease of access to sources of proof

PI states that Prismaflex USA (PI's U.S. Subsidiary) "maintains all sales and inventory records . . . in Elizabethtown, North Carolina.[1] Dkt. No. 93 at 12–13; Dkt. No. 93-1 at ¶ 19. PI also argues that "the bulk of the relevant evidence usually comes from the accused infringer" and that "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id*. (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

In response, Ultravision argues that PI is the designer, developer, and manufacturer of the accused products, making it likely that PI possesses relevant documentation rather than the Prismaflex USA. Dkt. No. 105 at 14 (citing Dkt. No. 105-4). According to Ultravision, documents originating in France would be transported a significant distance regardless of the venue, minimizing any impact of PI's documents.

---

[1] Ultravision asserts that PI induces acts of direct infringement by Prismaflex USA. *See, e.g.*, Dkt. No. 46 at ¶ 33.

This factor weighs against transfer. Ultravision represents that its sources of proof are located in Dallas, Texas. *Id*. The convenience of transporting these sources of proof to E.D. Tex. would be greater than the convenience of transporting these sources of proof to a North Carolina court. While PI argues that Prismaflex USA possesses the sources of proof related to infringement, PI likely possesses a significant amount of the sources of proof, and any inconvenience in transporting these sources of proof would likely be relatively equal in either district.

Thus, the "sources of proof" factor weighs **AGAINST TRANSFER**.

### iii. All other practical problems that make trial of a case easy, expeditious, and inexpensive

PI does not raise any substantial argument about this factor in its Motion. Instead, PI raises arguments that are duplicative of its arguments raised within the "cost of attendance for willing witnesses" factor. *See* Dkt. No. 93 at 13. The Court does not give this duplicative argument any weight under this factor.

In Ultravision's response, Ultravision argued that this action against PI was filed alongside several other actions, with nine other actions still pending at the time of Ultravision's response. Dkt. No. 105 at 2 n.1. The Court has consolidated this action alongside many of those other actions.

This factor weighs strongly against transfer. If this case were to proceed in this Court, then the case would remain consolidated alongside other cases, and this consolidation would allow disputes between the parties to be more efficiently resolved. *In re Volkswagen of Am., Inc*., 566 F.3d 1349, 1351 (Fed. Cir. 2009) (citing *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."). Furthermore, transferring this case to another district and retaining other cases in this Court would create an increased possibility of conflicting rulings,

suggesting that denial of this transfer request would be appropriate to minimize this possibility. *RPost Holdings, Inc. v. StrongMail Sys., Inc.*, No. 2:12-CV-515-JRG, 2013 WL 4495119, at *5 (E.D. Tex. Aug. 19, 2013) ("To transfer this case to NDCA while eighteen related cases involving the same asserted patents remain in EDTX would unavoidably risk duplicative proceedings involving the same or similar issues between different district courts and give rise to the inherent danger of potentially inconsistent rulings and constructions. Due to such real and practical dangers, the Court finds that the traditional notions of judicial economy lead the Court to find that the 'Other Practical Problems' factor weighs heavily against transfer in this case.").

Consequently, this factor weighs **STRONGLY AGAINST TRANSFER**.

### iv. The availability of compulsory process to secure the attendance of witnesses

This factor focuses on unwilling, third-party witnesses for which a subpoena will be required. *See Seven*, 2018 WL 4026760, at *7, *7 n.12. PI has not identified any unwilling, third-party witnesses that will have relevant knowledge. *See* Dkt. No. 93 at 11–13. However, Ultravision does not identify any such witnesses either. *See* Dkt. No. 105 at 18. Because neither party has identified a witness that fits into this category, the Court concludes that this factor is **NEUTRAL**.

### v. The administrative difficulties flowing from court congestion

PI appears to argue that this factor is neutral, stating only that it "is not aware of any meaningful difference in administrative difficulty impacting the transfer analysis in this case." Dkt. No. 93 at 14. Similarly, Ultravision merely asserts that "this factor does not weigh in favor of transfer" and that "PI concedes that there is no difference in administrative difficulty that would impact the transfer analysis in this case." Dkt. No. 105 at 20. Because neither party attempts to argue that this factor weighs in favor of either district, this factor is **NEUTRAL**.

### vi.   The local interest in having localized interests decided at home

PI asserts that "[t]he Eastern District of North Carolina has a strong interest in deciding this case" because "[i]t is where Prismaflex USA maintains its principal place of business and where its sole employee lives and works." Dkt. No. 93 at 14. PI also asserts that E.D. Tex. "has no interest in this case as there is no evidence that any accused product was made, used, or sold in" E.D. Tex. *Id*.

In response, Ultravision states that E.D. Tex. has a local interest in this dispute. Dkt. No. 105 at 20–21. Ultravision points out that it has an office in this E.D. Tex., that employees and key witnesses live in or near E.D. Tex., and that its headquarters are based nearby in Dallas (which is within five miles of E.D. Tex.). *Id*. at 20 (citing Dkt. No. 105-1 at ¶¶ 10–13). Ultravision also states that accused products have been sold or offered for sale throughout Texas and within E.D. Tex. specifically. *Id*.

This factor is neutral as both districts have a significant interest in this dispute. While PI's subsidiary, Prismaflex USA, is based in E.D.N.C. and the alleged acts of infringement occurred in that district, E.D. Tex. also possesses a significant interest in this dispute because Ultravision has an office here, is headquartered within five miles of this District, and has several employees that live in this District. This Court has concluded that the "local interest" factor was neutral where this District and the proposed district both possessed localized interests in the case. *Seven*, 2018 WL 4026760, at *14. Thus, because it is clear that both districts have a substantial interest in this dispute, the Court concludes that this factor is **NEUTRAL**.

### vii.   The familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems with conflicts of law

PI argues that factor of "familiarity of the forum with the law that will govern the case" is neutral as "all federal courts are equally able to apply federal patent law." Dkt. No. 93 at 14 (citing

*In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011)). Ultravision does not address the familiarity factor. *See* Dkt. No. 105 at 20–21. This factor is therefore **NEUTRAL**.

Within the Motion and the Response, neither PI nor Ultravision address the "conflicts of law" factor. *See* Dkt. No. 93; Dkt. No. 105 at 20–21. Accordingly, the "conflicts of law" factor is **NEUTRAL**.

### viii.   Weighing the factors together

Because most factors weigh against transfer and because several factors weigh strongly against transfer, the Court **DENIES** PI's Motion to Transfer or Dismiss to the extent that it seeks transfer pursuant to § 1404(a).

## II.      PERSONAL JURISDICTION UNDER 12(B)(2)

The Court concludes that Ultravision has made a *prima facie* case of specific jurisdiction over PI in Texas. The Court therefore recommends that Defendant's Motion be **DENIED** with respect to PI's arguments on personal jurisdiction.

### a.   Applicable law

In patent cases, personal jurisdiction intimately relates to patent law, and Federal Circuit law governs the issue. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1016 (Fed. Cir. 2009). If the parties have not conducted jurisdictional discovery, a plaintiff need only make a *prima facie* showing that the defendant is subject to personal jurisdiction, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *Id*. (quoting *Avocent Huntsville Corp. v. Aten Int'l Co*., 552 F.3d 1324, 1328 (Fed. Cir. 2008)). Without an evidentiary hearing, the burden of establishing a *prima facie* showing of jurisdiction is on plaintiff. *Xilinx, Inc.*

*v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) (quoting *Avocent*, 552 F.3d at 1329).

Absent a controlling federal statute, a plaintiff may establish personal jurisdiction under Texas's long-arm statute and that exercise of personal jurisdiction comports with Due Process. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017) (quoting *Autogenomics*, 566 F.3d at 1016); *see also* Fed. R. Civ. P. 4(k)(1)(a). The Texas long-arm statute authorizes the exercise of jurisdiction over non-residents "doing business" in Texas. *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996) (citing Tex. Civ. Prac. & Rem. Code § 17.042). The Texas Supreme Court has interpreted the "doing business" requirement broadly, allowing the long-arm statute to reach as far as the federal Constitution permits. *Id.* (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). Thus, the two-step inquiry is actually one federal due process analysis. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

Courts may have jurisdiction over a defendant pursuant to either general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Ultravision does not argue that this Court possesses general jurisdiction over Defendants and instead focuses its arguments on the issue of specific jurisdiction. The Court will therefore focus on the issue of specific jurisdiction as well.

In determining whether a court's exercise of specific jurisdiction over a non-resident defendant comports with constitutional due process requirements, the Fifth Circuit directs courts to consider "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.' " *Xilinx*, 848 F.3d at 1353

(quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). The specific jurisdiction inquiry "'focuses on the relationship among the defendant, the forum, and the litigation.'" *NexLearn*, 859 F.3d at 1375 (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)). Contacts that are "random, fortuitous, or attenuated" do not satisfy the minimum contacts requirement. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.* at 477. In determining whether the exercise of jurisdiction is fair and reasonable, the Court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies. *Id*.

### b. Analysis

The Court concludes that Ultravision has made a *prima facie* showing of personal jurisdiction through (1) a stream of commerce theory; and (2) through a specific jurisdiction theory based on PI's service and support to their customers in this Judicial District. The Court will address both of these theories and explain how the first two prongs of the specific jurisdiction analysis are satisfied under both theories. After that, the Court will address whether the assertion of jurisdiction here would be reasonable and fair.

### i. Stream of Commerce

Within PI's Motion, PI asserts that it does not sell any products in Texas and that it does not direct its subsidiary to target the E.D. Tex. market. Dkt. No. 93 at 9. PI readily admits that it has sold accused products into the United States, but it argues that it has only done so by selling

products to its subsidiary, Prismaflex USA, in North Carolina. Dkt. No. 93 at 7 (stating that PI's "only U.S. customer is located in Elizabethtown, North Carolina—Prismaflex USA"). Because of this, PI asserts that the exercise of personal jurisdiction over PI pursuant to the "stream of commerce" theory would be inappropriate. *Id*.

However, the Federal Circuit and this Court have rejected this argument previously. In *Polar Electro Oy v. Suunto Oy*, the Federal Circuit determined that a defendant purposefully availed itself of the forum where that defendant acted in concert with a sister company by selling accused products to the sister company who then sold products into the forum. 829 F.3d 1343, 1351 (Fed. Cir. 2016). The court stated that the defendant acted in concert with the sister company to "deliberately and purposefully ship[] the accused products" to retailers in the relevant forum and that this "active participation in supplying and shipping the accused products to Delaware thus constitutes purposeful availment." *Id*. The Federal Circuit distinguished the case from situations "where a small manufacturer sells its products to an independent distributor, who then distributes the products to consumers across the nation" and also distinguished the case from situations where a party "simply place[s] its products in the stream of commerce, with the products fortuitously reaching [the forum] as a result of the unilateral effort" an independent distributor. *Id*; *accord Semcon IP Inc. v. TCT Mobile Int'l Ltd*., No. 2:18-CV-00194-JRG, 2019 WL 2774362, at *4 (E.D. Tex. July 2, 2019) (rejecting similar arguments to the ones asserted by PI, citing *Polar Electro*).

Sufficient facts are present here to support a *prima facie* case of personal jurisdiction under a stream of commerce theory. Ultravision includes the following allegations within its operative complaint:

> Defendants have committed acts of infringement in this Judicial District, by among other things, offering to sell and selling products that infringe the asserted patents, including the accused devices as alleged herein, as well as providing service and support to their

customers in this Judicial District including, but not limited to, Lamar Advertising. Defendants have made, used, offered for sale or sold LED displays to customers in Tyler, Beaumont, and Nacogdoches Texas, or imported LED display panels into the United States to Tyler, Beaumont, and Nacogdoches, Texas. Upon information and belief, each of the Defendants, directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the state of Texas and/or imported into the United States to the state of Texas.

Dkt. No. 46 at ¶ 6. PI has stated that "Prismaflex USA invoiced 'Sealed Module' screens to a Houston, Texas-based outdoor advertising firm. . . ." Dkt. No. 93 at 4. PI argues that these screens were actually shipped to locations other than Texas. Even if true, invoicing screens to a Texas-based firm supports a finding that PI purposefully directs its activities at residents of Texas.

Additionally, Ultravision provides information to support its claim that PI sells accused products to Lamar Advertising. Ultravision provides Prismaflex International's "Catalog," which indicates that 100 signs were sold to Lamar Advertising in the United States. Dkt. No. 115-2 at 61.



*Id.* PI contends that these signs were actually sold by the PI's subsidiary, Anthem Displays, and that this is a "misstatement in marketing material that will be corrected." Dkt. No. 128-1 at ¶ 14. However, the Court must construe the pleadings and affidavits in the light most favorable to the Ultravision. This material substantiates the allegations within the operative complaint and supports an inference that PI participates in the stream of commerce for the sale of these products to at least Lamar Advertising.

Ultravision also provides a map of Lamar Advertising's digital products, showing that digital displays are present in Nacogdoches, Tyler, and Beaumont (which each fall within E.D. Tex.). Dkt. No. 115-7. This substantiates the assertions made within the operative complaint. *See* Dkt. No. 46 at ¶ 6. The map also shows other Lamar digital displays being used in at least sixteen different cities in Texas, with numerous displays likely being used in several cities. Dkt. No. 115-7.[2] At the Motion to Dismiss stage, this is sufficient to show that the distribution channel formed by PI and its subsidiary was intentionally established and that PI knew, or reasonably could have foreseen, that a termination point of the channel was Texas. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994).

---

[2] PI moved to strike certain portions of Ultravision's Sur-Reply, including the discussion of Exhibits 7 and 12 to the Sur-Reply. However, the Court will not strike any portion of Ultravision's Sur-Reply for multiple reasons. First, PI submitted a declaration alongside its Motion to Strike in attempt to rebut Ultravision's Exhibits, and the Court considers that declaration here. Second, even if the Court were to exclude any reference to this material and potentially conclude that Ultravision failed to present a *prima facie* case of personal jurisdiction, the Court would still permit Ultravision to amend the Complaint or seek additional jurisdictional discovery. The Sur-Reply and its attachments referenced above show that Ultravision could present additional information that would support its claims, and the Court would grant leave for Plaintiff to amend its Complaint to cure any deficiencies. *See* Fed. R. Civ. P. 15(a)(2); *Brown v. Taylor*, 911 F.3d 235, 246 (5th Cir. 2018). Rather than striking portions of the Sur-Reply, requiring Plaintiff to amend its complaint to include additional information, and requiring the Parties to restart this briefing process, the Court will simply consider the arguments presented in the Sur-Reply.

The Court also concludes that the second prong, whether the claim 'arises out of or relates to' the defendant's activities with the forum, has been satisfied here. The displays that Ultravision focuses on to satisfy the first prong are the same displays that Ultravision accuses of infringement. The products sold to Lamar were "Prismatronic P20" signs, and Ultravision accuses "Prismatronic THD Sealed Module 20mm" signs specifically. Dkt. No. 114-5 at 16 (using ECF page numbers). These appear to be the same products, and the Court must make this inference in favor of Ultravision here. Accordingly, this action "arises out of or relates to" the PI activities with this forum.

### ii.  Specific jurisdiction through service and support to customers

Ultravision provides evidence from PI's website, which states that "***Prismaflex*** controls the full THD production thanks to its USA-based factory!" Dkt. No. 105-3 at 1 (emphasis added). The website states that "[s]ystem, software and certification training for US consumer" is provided by Anthem Displays and that Anthem Displays is "[a] partner with a state of the art [US] production." *See id.* It also indicates that "[s]trict quality control [is] performed by ***Prismaflex***," including visual quality control, inline soldering control, RoHs compliant soldering, and traceability. *Id.* (emphasis added).

The website indicates that PI provides the customer support. While PI argues that these statements are inaccurate and will be corrected, the Court must view these statements in a light most favorable to Ultravision. Thus, Ultravision has provided adequate support to show that PI purposefully directed its activities to residents of this forum by (1) alleging that PI "provid[es] service and support to their customers in this Judicial District including, but not limited to, Lamar Advertising" and (2) by providing the evidence from the website.

The Court also concludes that the second prong, whether the claim 'arises out of or relates to' the defendant's activities with the forum, has been satisfied here for this theory. Ultravision

alleges that "Defendants have committed acts of infringement in this Judicial District, by . . . providing service and support to their customers in this Judicial District including, but not limited to, Lamar Advertising." Dkt. No. 46 at ¶ 6. Accordingly, PI's claim of infringement "arises out of or relates to" the PI activities in providing service and support to customers within this forum.

### iii. Whether the exercise of jurisdiction would be reasonable and fair

Regarding the third prong of the specific jurisdiction inquiry, whether assertion of personal jurisdiction is "reasonable and fair" in this case, PI merely states that "[i]t would offend traditional notions of fair play and substantial justice for this Court to assert specific personal jurisdiction over [PI] in this case." Dkt. No. 93 at 8. If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Burger King*, 471 U.S. at 477. Because PI merely provides a conclusory statement that the assertion of personal jurisdiction here would offend the traditional notions of fair play and substantial justice without further explanation, it has failed to make the necessary "compelling case."

The Court therefore recommends that PI's Motion be **DENIED** with respect to its arguments for a lack of personal jurisdiction.

### III.     IMPROPER VENUE UNDER 12(B)(3)

Several times within PI's Motion, PI seems to assert that venue is improper over PI in this Court. *See, e.g.*, Dkt. No. 93 at 1 (stating that venue is improper as to PI pursuant to Fed. R. Civ. P. 12(b)(3)); *id*. at 10 (stating that venue is improper without providing any explanation why). PI does not adequately raise this argument as it only makes conclusory assertions that venue is improper in this district without further explanation. Even if this issue were properly presented, denial would be appropriate. PI itself states that it "was formed under the laws of France and is

headquartered in Haute-Rivoire, France." Dkt. No. 93 at 2. "Under § 1391, a foreign defendant may be sued in any judicial district." *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 WL 4849345, at *3 (E.D. Tex. Sept. 6, 2018); *see also Brunette Mach. Works., Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 706–07 (1972). The fact that PI has a subsidiary in North Carolina does not change this analysis.

The Court therefore recommends that Motion be **DENIED** with respect to any arguments that venue is improper in this district.

## IV.    FAILURE TO STATE A CLAIM FOR INDIRECT INFRINGEMENT UNDER 12(B)(6)

The Court concludes that Ultravision plead sufficient facts to support a claim for indirect infringement against PI. Thus, the Court recommends that PI's Motion be **DENIED** with respect to these arguments.

### a.  Applicable law

A claim for induced infringement under 35 U.S.C. § 271(b) requires proof (1) of an act of direct infringement by another, and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the other's infringement. *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1345, 1349 (Fed. Cir. 2019). The intent element requires that the defendant know that "the induced acts constitute patent infringement." *Id.* (quoting *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015))). Inducement requires that the alleged infringer "knowingly induced infringement and possessed specific intent to encourage another's infringe-ment." *Id.* (quoting *Enplas*, 909 F.3d at 407). Thus, in order to survive a defendant's motion to dismiss, the complaint must (1) adequately plead direct infringement by defendant's customers,

(2) contain facts plausibly showing that the defendant specifically intended for its customers to infringe the asserted patents, and (3) contain facts plausibly showing that the defendant knew that the customer's acts constituted infringement. *See In re Bill of Lading Transmission & Processing System Patent Lit.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

### b. Analysis

PI argues that Ultravision's operative complaint (1) "fails to adequately plead facts showing direct infringement by [PI] customers"; (2) "fails to allege facts plausibly showing that [PI] specifically intended its customers to infringe the asserted patents"; and (3) fails to provide within its operative complaint "facts plausibly showing that [PI] knew that its customers' acts constituted infringement." Dkt. No. 93 at 16–18. However, PI has failed to show that dismissal was appropriate for these claims.

While PI argues that Ultravision fails to adequately plead direct infringement by others, the Court concludes that Ultravision's pleadings are sufficient. PI argues that Ultravision "failed to identify any specific customers that have purportedly committed acts of infringement." *Id*. at 17. However, "[t]o state a claim for indirect infringement . . . a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *Bill of Lading*, 681 F.3d at 1336 (emphasis in original); *accord Cywee Grp. Ltd. v. Huawei Device Co.*, 2:17-CV-495-WCB, 2018 WL 3819392, at *3 (E.D. Tex. Aug. 10, 2018) (Bryson, J.); *Lochner Techs., LLC v. AT Labs Inc.*, No. 2:11-CV-242-JRG, 2012 WL 2595288, at *3 (E.D. Tex. July 5, 2012) (Gilstrap, J.). Ultravision's First Amended Complaint also provides that:

> upon information and belief, one or more of the Defendants sells or otherwise provides products, including but not limited to the Sealed Module product, to other Defendants, to distributors, to sign install-ers, or to U.S.-based sales entities such as Prismaflex USA and An-them Displays knowing that these entities intend to make, use, offer

> to sell, and/or sell the products within the United States and/or import the products into the United States.

Dkt. No. 46 at ¶ 33.

Furthermore, in the course of making its arguments on personal jurisdiction, PI acknowledged that it sold the accused products to Prismaflex USA in North Carolina and presented a Declaration from its Chief Financial Officer. *See* Dkt. No. 93-1 at ¶¶ 17–19. This is sufficient in itself to show that Prismaflex USA may be a direct infringer that would potentially support a claim for indirect infringement against PI.

PI's second argument—that Ultravision fails to allege facts plausibly showing that PI specifically intended its customers to infringe the asserted patents—does not justify dismissing this case. *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012) ("In this case, there can be no dispute that Galaxy has actual notice of the '219 patent at least as of the time of the filing of this lawsuit. While the operative complaint does not explicitly plead facts to show that Galaxy had a specific intent to induce infringement, it is not necessary to provide detailed factual support for each and every element of inducement."). Ultravision also alleges that PI had knowledge that its customers intended to use the accused products in an infringing manner, and Ultravision also alleges that PI actively encouraged the third parties to engage in infringing acts. Dkt. No. 46 at ¶¶ 33, 46, 63, 81, 98, 111, and 124. Accepting the allegations within the operative complaint as true, it is reasonable and plausible to infer that PI specifically intended to induce its customers to infringe the Asserted Patents and knew the customers' acts constituted infringement.

PI's third and final argument—that Ultravision fails to allege "facts plausibly showing that [PI] knew that its customers' acts constituted infringement"—also does not warrant the dismissal of this case. Ultravision's complaint states that "Defendants have induced and continue to induce

infringement by others, including customers, installers, and end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '782 Patent, but while remaining willfully blind to the infringement." *Id.* at ¶ 35. Further, Ultravision also alleges that Defendants had knowledge of these acts of infringement by at least March 27, 2018, when Ultravision claims it filed a Complaint against Defendants with the U.S. International Trade Commission. *Id.* at ¶ 34. Because of the ITC complaint and the filing of the initial complaint in this case, Ultravision has alleged sufficient facts to show that PI knew its customers' acts constituted infringement. This is sufficient to support a claim for indirect infringement at this stage of the case as this Court has held that "there is no pre-suit knowledge requirement to establish induced infringement." *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-CV-325-JRG, 2016 WL 9275395, at *2 (E.D. Tex. Oct. 19, 2016) (Gilstrap, J.) (citing *Tierra Intelectual Borinquen, Inc. v. ASUS Comp. Int'l, Inc.*, No. 2:13-cv-44-JRG, 2014 WL 1233040, at *2 (E.D. Tex. March 24, 2014) (Gilstrap, J.)); *Lochner*, 2012 WL 2595288, at *3 (rejecting a similar argument, stating that "this is not a basis to dismiss [plaintiff's] indirect infringement claims; as it cannot be disputed that [plaintiff] does sufficiently plead that the Moving Defendants had knowledge of the asserted patent for at least some time during the infringing period").

The Court therefore recommends that PI's Motion be **DENIED** with respect to its Rule 12(b)(6) arguments for claims of indirect infringement.

## V.     FAILURE TO STATE A CLAIM FOR WILLFUL INFRINGEMENT UNDER 12(B)(6)

"[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). "A claim for willful infringement must allege that infringement was "intentional or knowing." *Plano*

*Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-CV-1032-JRG, 2017 WL 8727249, at *2 (E.D. Tex. Sept. 22, 2017). This Court has previously found "allegations concerning knowledge of the patents-in-suit are sufficient." *Raytheon Co. v. Cray, Inc.*, No. 2:16-CV-00423-JRG-RSP, 2017 WL 1362700, at *5 (E.D. Tex. Mar. 13, 2017), *report and recommendation adopted*, No. 2:16-CV-00423-JRG-RSP, 2017 WL 1344900 (E.D. Tex. Apr. 12, 2017). This Court has also stated that "an allegation that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement." *Plano Encryption*, 2017 WL 8727249, at *6.

PI asserts that the operative complaint fails to state a claim for willful infringement. Dkt. No. 93 at 20–21. PI argues that the allegations within the complaint are implausible because "the '272, '869, '294, '603, '791, and '105 patents were not included in, or even referenced by, Ultravision in its original Complaint." Dkt. No. 93 at 20–21 (citing Dkt. No. 1 at ¶¶ 21–24). Within Ultravision's response, Ultravision asserts that PI had knowledge of the asserted patents when the original complaint was filed or when the first amended complaint was filed. Dkt. No. 105 at 27–28.

While PI is correct that the '272, '869, '294, '603, '791, and '105 Patents were not asserted within the Original Complaint, Ultravision indicates that these patents were filed in the First Amended Complaint and that PI had knowledge of these patents at least by that date. Dkt. No. 105 at 27–28. Thus, to the extent that the allegations within the First Amended Complaint are implausible as PI asserts (*see*, *e.g.*, Dkt. No. 46 at ¶ 47), it is clear that the First Amended Complaint could be amended to address PI's argument by simply stating that PI had knowledge of the patents listed above upon the filing of the First Amended Complaint rather than the Original Complaint.

However, the Court will not require Ultravision to amend their First Amended Complaint to address this obvious point.

The Court therefore recommends that PI's Motion be **DENIED** with respect to its Rule 12(b)(6) arguments for claims of willful infringement.

## VI.    CONCLUSION

The Court **DENIES** the Motion to the extent that it seeks to transfer this case to the Eastern District of North Carolina under § 1404. The Court also recommends that Defendants' Motion be **DENIED** with respect to PI's arguments for dismissal based on a lack of personal jurisdiction under 12(b)(2), improper venue under 12(b)(3), and failure to state a claim under 12(b)(6).

With respect to this Report's resolution of case dispositive issues (Defendants' arguments for dismissal under Fed. R. Civ. P. 12), a party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation **must be filed** in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 9th day of March, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE