# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | § § § § § § § § § § § § | Case No. 2:18-cv-00100-JRG-RSP (LEAD CASE) **JURY TRIAL DEMANDED** |
| Plaintiff, | | |
| v. | | |
| GOVISION, LLC, | | |
| Defendant. | | |
| ULTRAVISION TECHNOLOGIES, LLC, | § § § § § § § § § § § § § | Case No. 2:18-cv-00101-JRG-RSP (CONSOLIDATED CASE) **JURY TRIAL DEMANDED** |
| Plaintiff, | | |
| v. | | |
| LEDMAN OPTOELECTRONIC CO., LTD., | | |
| Defendant. | | |

**ULTRAVISION TECHNOLOGIES, LLC'S OPPOSITION TO
DEFENDANT LEDMAN OPTOELECTRONIC CO., LTD.'S
MOTION TO COMPEL PRODUCTION OF RESPONSES TO DISCOVERY
REQUESTS FROM DEFENDANTS IN RELATED CASES**

Plaintiff Ultravision Technologies, LLC ("Ultravision") submits its response in opposition to Defendant Ledman Optoelectronic Co., Ltd.'s ("Ledman") Motion to Compel Production of Ultravision's Responses to Discovery Requests from Defendants in Related Cases (Dkt. 71)[1] (the "Motion").[2]

## I.     INTRODUCTION

Ledman's motion to compel is an attempt to circumvent the discovery limitations that it agreed to in this case. By demanding Ultravision's responses to discovery requests of each-and-every other defendant that Ultravision has litigated against for patent infringement, Ledman is unfairly compounding the number of its discovery requests. This action is not consolidated with any of Ultravision's other actions, and when the parties negotiated the Discovery Order in this case, Ledman did not state that it intended to share interrogatory responses and requests for admission with defendants in Ultravision's other cases. Having not even discussed whether Ledman would be permitted to share discovery requests and responses with other defendants, Ultravision agreed to a limit of 30 interrogatories and 30 requests for admission per party. Dkt. 50 ¶ 5. Ultravision will be unfairly prejudiced if Ledman is now permitted to rely on the discovery requests of every defendant that Ultravision litigates against which would increase Ledman's discovery limitations well beyond the negotiated amount.

Further, Ledman's request for all of Ultravision's discovery responses to each-and-every defendant from Ultravision's other litigations is overbroad and is not proportional to the needs of

---

[1] All documents cited are from the 2:18-cv-00101 consolidated case.

[2] Ultravision notes that Ledman's motion included 24 pages of exhibits, in violation of the Court's March 11, 2020 Standing Order Regarding "Meet and Confer" Obligations Relating to Discovery Disputes (at ¶ 5) which imposes a limit of 5 pages on any attachments to discovery-related motions. *See* http://www.txed.uscourts.gov/sites/default/files/judgeFiles/Standing%20 Order%20Regarding%20Meet%20and%20Confer%20Obligations%20for%20Discovery%20 Dispute.pdf.

the case. Instead of narrowly tailoring its request to specific relevant discovery responses and explaining why it could not obtain this information by serving its own similar requests, Ledman requests all of Ultravision's discovery responses from all of its cases, including responses relating to patents that are not asserted against Ledman, products that are not made by or related to Ledman, and defendants that are dissimilar to Ledman and infringe in different ways from Ledman. Ledman thus fails to meet its burden of showing that the discovery responses sought are relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

Even if Ledman's request was for a specific set of relevant discovery responses, the production of any such discovery responses would be largely duplicative of the discovery Ultravision has already provided to Ledman. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Ledman and Ultravision were previously involved in an ITC investigation relating to one of the Patents-in-Suit and a related patent. Ledman received responses to hundreds of interrogatories and over 1,300 requests for production during the course of that investigation. Moreover, Ledman has already served its own interrogatories in this case which are duplicative of the interrogatories it seeks from Ultravision's other cases.

**II.     ARGUMENT**

When the parties negotiated the Discovery Order in this case, Ledman agreed to limit the number of interrogatories and requests for admission each party may serve to 30. Dkt. 50 ¶ 5. At that time, Ledman did not request that it be able to share discovery requests and responses with defendants from Ultravision's other cases. Now, Ledman is demanding that Ultravision produce its responses to all discovery requests from its other cases in contravention of the agreed discovery limitations. Ledman points to the discovery orders entered in the *GoVision* and *Samsung* cases which permit defendants to share responses with other defendants in their respective consolidated case. Motion at 3. However, the discovery limitations in those cases

require that defendants must endeavor not to serve requests that are identical to requests served by other defendants, thereby *reducing* the overall number of discovery requests. *See* Dkts. 71-2 ¶ 5; 71-3 ¶ 5. Here, Ledman's proposal greatly increases the number of discovery requests. For example, if Ledman were permitted to rely on the discovery requests served by defendants in other cases, it would not need to serve its own requests on topics covered by those requests and could harass Ultravision with requests relating to less relevant peripheral issues. Also in line with this tactic, Ledman has also improperly included interrogatories in its discovery letters. Ex. 1 at 3. It would be prejudicial to Ultravision if Ledman is now permitted to effectively multiply its number of interrogatories and requests for admission well beyond the agreed limit by sharing in the discovery requests of defendants in other cases.

      Ledman fails to meet its burden of showing that the discovery responses from all of Ultravision's other patent litigations are relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Ledman argues that responses relating to infringement and damages may be relevant because the infringement theories and damage models from other cases could be similar. But just because a theory or model asserted in another case is similar does not mean it is relevant. Only Ultravision's theory of infringement and damage model pertaining to Ledman is relevant to the litigation with Ledman. Moreover, many of Ultravision's responses contain information that relates only to the defendant that served the request, which are irrelevant to Ledman. However, instead of requesting responses relating to a limited set of specific matters that are clearly relevant and explaining why production of them is necessary, including why Ledman could not obtain the same information through the use of its own discovery requests, Ledman makes a broad sweeping request for all responses to any discovery request received in

3

any of Ultravision's other patent litigations. Thus, Ledman has not shown that the discovery it seeks is relevant.

Ledman also fails to articulate how such a broad request is proportional to the needs of the case. Ledman's only argument on the point is that there will be no burden on Ultravision because the documents it seeks are likely saved together in a folder on a computer. Motion at 1. This argument fails to explain how requiring Ultravision to produce hundreds of discovery responses is proportional, which would include many irrelevant responses and duplicate responses to those already provided to Ledman. Further, any discovery responses that could potentially be relevant are duplicative of discovery already produced. Ledman and Ultravision were previously involved in an ITC investigation relating to one of the Patents-in-Suit and a related patent. During that case, Ledman served and received responses to 98 interrogatories and 128 requests for the production of documents and things. Additionally, pursuant to the rules governing the conduct of ITC proceedings, Ledman received responses to 652 interrogatories, 1,330 requests for the production of documents and things, and 4 requests for admission served by other parties in the investigation.[3] Moreover, Ultravision has already responded to two sets of Ledman interrogatories in this case. In its Motion, Ledman identifies requests relating to comparable licenses, lost profits, and injunctive relief as relevant, and argues that Ultravision conceded (which it did not) that requests relating to inequitable conduct, invention and inventorship, acquisition of the asserted ADTI patents, and business operations are relevant. Motion at 2. However, Ultravision has already responded to Ledman's interrogatories

---

[3] Although the ITC rules required that Ledman be served with Ultravision's responses to the requests of each party in the investigation and the Certificates of Service indicate that they were so-served, during this case Ledman indicated that it was missing copies of some of Ultravision's responses. Therefore, in order to ensure its compliance with the ITC rules, Ultravision re-provided copies of all of its ITC discovery responses to Ledman.

4

concerning each of these topics and should not be burdened with the task of locating, reviewing, redacting and producing duplicate responses from other cases. Further, if there are any remaining relevant topics, it would be far less burdensome for Ledman to serve discovery requests for those instead of demanding each-and-every one of Ultravision's responses from related cases. Thus, the discovery sought from Ultravision is not proportional to the needs of the case, and is unreasonably cumulative, duplicative, and can be obtained in a way that is less burdensome. *See* Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C)(i).

### III. CONCLUSION

For the foregoing reasons, Ultravision respectfully requests that the Court deny Ledman's Motion.

Dated: June 15, 2020

Respectfully submitted,

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: afabricant@brownrudnick.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambriankos@brownrudnick.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@brownrudnick.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@brownrudnick.com
Timothy J. Rousseau
NY Bar No. 4698742
Email: trousseau@brownrudnick.com
Daniel J. Shea
NY Bar No. 5430558
Email: dshea@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, New York 10036
Telephone:  (212) 209-4800
Facsimile:   (212) 209-4801

        Samuel F. Baxter
Texas Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**McKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

*ATTORNEYS FOR PLAINTIFF*
*ULTRAVISION TECHNOLOGIES, LLC*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on June 15, 2020 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                                */s/ Alfred R. Fabricant*
                                                 Alfred R. Fabricant