**PUBLIC REDACTED VERSION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOVISION, LLC<br><br>Defendant. | Case No. 2:18-cv-00100-JRG-RSP<br>LEAD CASE<br><br>**<u>JURY TRIAL DEMANDED</u>** |
| ULTRAVISION TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN ABSEN OPTOELECTRONIC CO., ET AL.<br><br>Defendants. | Case No. 2:18-cv-00112-JRG-RSP<br>MEMBER CASE<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**<u>SHENZHEN ABSEN OPTOELECTRONIC CO., LTD.'S AND ABSEN, INC.'S MOTION FOR SUMMARY JUDGMENT THAT U.S. PATENT NOS. 9,642,272; 9,916,782; 9,978,294; 9,990,869; AND 10,248,372 ARE INVALID FOR IMPROPER INVENTORSHIP</u>**

**PUBLIC REDACTED VERSION**

████████████████████████████████████████

# TABLE OF CONTENTS

I.    Introduction ................................................................................................................ 1

II.   Statement of Issues ..................................................................................................... 2

III.  Statement of Undisputed Material Facts ..................................................................... 2

    A.    The SO-Hall Patents .......................................................................................... 2

    B.    Events Giving Rise to the ████████████ ......................................................... 3

    C.    Relevant Procedural History ████████████████ ........................................... 4

    D.    ████████████████████████████████████ ............................................. 5

IV.   Legal Standards ......................................................................................................... 7

    A.    Joint Inventorship ............................................................................................. 7

    B.    Issue Preclusion ............................................................................................... 8

V.    Argument ................................................................................................................... 9

    A.    ████████████████████████████████████████████████████ .......... 9

        1.    ██████████████████████████████████ ......................................... 10

        2.    ████████████████████████████████████ ................................... 13

        3.    ██████████████████████████████████ ........................................ 14

    B.    Ultravision Admits that the Plastic Housing Concept is Significant in Context of the Claimed Inventions and was More Than an Explanation of the Current State of the Art. ............................................................................................................... 15

VI.   Conclusion ................................................................................................................ 15

**PUBLIC REDACTED VERSION**

████████████████████████████████

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Duncan Parking Techs., Inc. v. IPS Grp., Inc.,
914 F.3d 1347 (Fed. Cir. 2019)......................................................................................15

Fina Oil & Chem. Co. v. Ewen,
123 F.3d 1466 (Fed. Cir. 1997).....................................................................................10

United States ex rel Gage v. Rolls-Royce N. Am., Inc.,
760 F. App'x 314 (5th Cir. 2019) ................................................................................8, 10

Matter of Garner,
56 F.3d 677 (5th Cir. 1995) ...........................................................................................13

Grimes v. BNSF Ry. Co.,
746 F.3d 184 (5th Cir. 2014) .......................................................................................9, 15

Hogue v. Royse City, Tex.,
939 F.2d 1249 (5th Cir. 1991) ........................................................................................8

Hybritech, Inc. v. Monoclonal Antibodies, Inc.,
802 F.2d 1367 (Fed. Cir. 1994)......................................................................................10

Maclean-Fogg Co. v. Eaton Corp.,
No. 2:07-cv-472, 2009 WL 10677521 (E.D. Tex. Jul. 17, 2009) ...........................................14

Ohio Willow Wood Co. v. Alps S., LLC,
735 F.3d 1333 (Fed. Cir. 2013).......................................................................................8

OJSC Ukrnafta v. Carpatsky Petroleum Corp.,
957 F.3d 487 (5th Cir. 2020) ......................................................................................8, 14

Pannu v. Iolab Cor.,
155 F.3d 1344 (Fed. Cir. 1998)................................................................................8, 10, 11

Sewall v. Walters,
21 F.3d 411 (Fed. Cir. 1994)..........................................................................................11

Trovan, Ltd. v. Sokymat SA, Irori,
299 F.3d 1292 (Fed. Cir. 2002).......................................................................................12

**Statutes**

35 U.S.C. § 101......................................................................................................................7

**PUBLIC REDACTED VERSION**

35 U.S.C. § 282(b) ....................................................................................................... 7

**Other Authorities**

████████████████████████████████████████████
█████████████████████████████████████
██████ .................................................................................... 14

████████████████████████████████████
█████████████ .............................................................................. 4

**PUBLIC REDACTED VERSION**

██████████████████████████████████████████████████

## I.      INTRODUCTION

Nine months before this litigation began, █████████████████████████

████████████████████████████████████████████████████████████

██████████████ Ultravision ignored those findings and sued Absen (and many others).

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ Five asserted patents suffer

from this fatal defect.

Ultravision filed █████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

_____

[1] ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

PUBLIC REDACTED VERSION



Because there cannot be any dispute that it had a full and fair opportunity to litigate ███ █████████████████████████████████████, the issue preclusion doctrine precludes Ultravision from relitigating ████████████████████████████. Importantly, once the findings are accepted as true, it follows that the patents at issue here are invalid for failing to name the proper inventors; ████████████████████████████████████████████ ████████████████████████████████.

## II.  STATEMENT OF ISSUES

1.  Whether ████████████████████████████████████████████ ████████████████████████████████████ "alone originated" the trade secrets associated with such a panel.

2.  Whether claiming the plastic housing, which Ultravision admits is significant, renders the following asserted patents invalid for nonjoinder of ███████████████████: 9,642,272 ("the '272 patent"); 9,916,782 ("the '782 patent"); 9,978,294 ("the '294 patent"); 9,990,869 ("the '869 patent"); and 10,248,372 ("the '372 patent") (together, the "SO-Hall Patents") (Exs. 1–5).

## III.  STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  The SO-Hall Patents.

1.  Each of the SO-Hall Patents includes at least one claim reciting a plastic "housing," "shell," or "casing."[3]  *See* Ex. 1, '272 patent at claims 7 & 16; Ex. 2, '782 patent at claims 9 & 29; Ex. 3, '294 patent at claims 1, 13, & 22; Ex. 4, '869 patent at claims 1, 14, 19, & 27; Ex. 5, '372 patent at claims 4 & 12.

---

[3] The parties have agreed that each of these terms refer to the same thing.

███████████████████████████████████████████████████████

2.      The SO-Hall patents claim priority to Provisional Patent Application No. 61/922,631 ("the '631 Provisional") dated December 31, 2013, and to Provisional Application No. 62/025,463 ("the '463 Provisional") dated July 16, 2014. *See* Ex. 1, '272 patent at 1:10–20; Ex. 2, '782 patent at 1:5–21; Ex. 3, '294 patent at 1:3–16; Ex. 4, '869 patent at 1:3–16; Ex. 5, '372 patent at 1:6–12.

**B.      Events Giving Rise to the** ███████████████████████**.**

3.      Ultravision first began to offer outdoor LED displays around 2006 with its UltraPanel product, which had an aluminum housing.[4]  Ex. 6, Ultravision Responses to Absen's First Interrogatories ("Ultravision Responses") at 7; Ex. 24, Ultravision Responses to Absen's Second Interrogatories at 17.

4.      After entering into an agreement with Shenzhen Only on November 21, 2013, Ultravision began offering a product called the "V-Series," which had a plastic housing. *Id.*; Ex. 7 SZO-ITC00008774 (Ultravision-SO Agreement); Ex. 8, SZO-ITC00020977, Ultravision's Arbitration Pre-Hearing Brief at 1, 3.

5.      The disclosures of the '463 Provisional and the SO-Hall Patents describe the V-Series product. *Compare, e.g.*, Ex. 9, '463 Provisional at Figs. 25B & 25C *and* Ex. 2, '782 patent at Figs. 25B & 25C; Ex. 3, '294 patent at Figs. 25B & 25C; Ex. 4, '869 patent at Figs. 25B & 25C, *with* Ex. 10 at SZO-ITC00003181 (V-Series panel) *and* Ex. 11 at SZO-ITC00003138 (V-Series panel).

6.      At least some claims in the SO-Hall Patents cover the V-Series product. *See* Ex. 12, WP-46 to Defendants' Invalidity Contentions (SO-Hall Patent anticipation by the V-Series).

---

[4] Although Ultravision claims to have invented the Ultrapanel, third-party evidence indicates that product was designed by third party Liantronics, but that is not subject to this motion.

7.      Although SO and Ultravision maintained a supplier relationship between 2013 and 2014, by 2015 the relationship deteriorated.

### C.      Relevant Procedural History in the SO-Ultravision Arbitration.

8.

9.

10.



11.   In support of its counterclaim, ███████████████████████████████████

12. ██ ██ ██ █ ██ ██ █ ██ ██

13. ████████████████████████████████████████████

D. ██████████████████████████████████████████████

14. ██████████████████████████████████████████████

15. ██████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

████████████████████████████████████████████

- ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

- ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████

- ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████.

- ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

16. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████

17. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

**PUBLIC REDACTED VERSION**



18.

19.

20.

## IV.   LEGAL STANDARDS

### A.   Joint Inventorship.

A post-AIA patent is invalid if it does not name all inventors.  *See, e.g.*, 35 U.S.C. § 101

("*Whoever* invents or discovers [an invention] may obtain a patent . . . ."); 35 U.S.C. § 282(b)

(patent defenses include "[i]nvalidity of the patent . . . on any ground specified in part II [of 35

U.S.C., comprising §§ 100–212] as a condition for patentability"). "[I]f nonjoinder of an actual inventor is proved by clear and convincing evidence, . . . a patent is rendered invalid." *Pannu v. Iolab Cor.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998). To be a joint inventor one must: "(1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Id.* at 1351.

### B.    Issue Preclusion.

"[I]ssue preclusion, sometimes referred to as collateral estoppel, bars relitigation by a party to a previous action of issues that were actually litigated and decided in that previous action." *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1252, n.2 (5th Cir. 1991).[8] Preclusion "applies when three elements are met:" (1) the issue at stake is "identical to the one involved in the prior action;" (2) the issue has "been actually litigated in the prior action;" and (3) the "determination of the issue" was a necessary "part of the judgment in th[e] earlier action." *United States ex rel Gage v. Rolls-Royce N. Am., Inc.*, 760 F. App'x 314, 317 (5th Cir. 2019) (quoting *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999)). Issue preclusion can be applied against "parties who have had a prior full and fair opportunity to litigate their claims," though both parties need not be identical. *Hardy v. Johns-Manville Sales Corp.*, 681 F. 2d 334, 338 (5th Cir. 1982).

Arbitral decisions, including those rendered by panels seated overseas, have "preclusive effect as long as the 'proceeding afford[ed] basic elements of adjudicatory procedure.'" *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 504 (5th Cir. 2020) (quoting *Grimes v.*

---

[8] In patent cases, the law of the regional circuit applies generally to issue preclusion, while the law of the Federal Circuit applies to elements that involve substantive issues of patent law. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

████████████████████████████████████████████████████

*BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014)) (applying claim preclusion).  "[W]hen [the] arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings." *Grimes*, 746 F.3d at 188 (quoting *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985)).

## V.    ARGUMENT

Summary judgment that the SO-Hall Patents are each invalid for improper inventorship is appropriate because there is no disputed question of fact that (1) ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

### A.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████    ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**



1.

As laid out in *Pannu*, the first step of the inventorship inquiry is whether the alleged joint inventor "contribute[d] in some significant manner to the conception or reduction to practice of the invention." *Pannu*, 155 F.3d at 1351.

"Conception is the touchstone to determining inventorship." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997). It has been defined as "the formation in the minds of the inventors of a definite and permanent idea of the complete and operative invention." *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1994).

---

[9] Principles of basic fairness also indicate that preclusion should apply here, considering the parties lack subpoena power over SO and that Ultravision cannot locate the entire arbitration record.

**PUBLIC REDACTED VERSION**

**PUBLIC REDACTED VERSION**





2.

**PUBLIC REDACTED VERSION**



3.



**B.      Ultravision Admits that the Plastic Housing Concept is Significant in Context of the Claimed Inventions and was More Than an Explanation of the Current State of the Art.**

The improper inventorship inquiry must also assess whether the omitted inventor's contribution to conception relates to a contribution that "is not insignificant in quality" and does "more than merely explain . . . well-known concepts." *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1357–58 (Fed. Cir. 2019).

## VI.     CONCLUSION

For all the foregoing reasons, the Absen Defendants respectfully request that the Court enter summary judgment of invalidity of the SO-Hall Patents for improper inventorship.

---

[10] A similar test is part of the inquiry to confirm an international arbitration award, but an award's confirmation is separate from and irrelevant to the question of its preclusive effect. *See OJSC*, 957 F.3d at 497–99, 503–05 (separately analyzing confirmation and preclusion, while preclusion was proper "for many of the same reasons" it was also proper to confirm the award).

**PUBLIC REDACTED VERSION**

Dated:  August 14, 2020

Respectfully submitted,

*/s/ Patrick J. McCarthy*

Patrick J. McCarthy (DC Bar No. 990490)
Mark G. Davis (Texas Bar No. 24096062)
Ronald J. Pabis (DC Bar No. 473023)
Madeline DiLascia (DC Bar No. 1618650)
Ce Li (MD Bar No. 0706110149)
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, D.C. 20036
Telephone: (202) 346-4000
Facsimile:  (202) 346-4444
DG-AbsenDCt@goodwinlaw.com

Srikanth K. Reddy (MA Bar No. 669264)
Suhrid A. Wadekar (MA Bar No. 676315)
Molly R. Grammel (MA Bar No. 688439)
Louis L. Lobel (MA Bar No. 693292)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Telephone:  (617) 570-1465
Facsimile:  (617) 523-1231
DG-AbsenDCt@goodwinlaw.com

Naomi Birbach (NY Bar No. 5201199)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone:  (212) 459-7374
Facsimile:  (212) 355-3333
DG-AbsenDCt@goodwinlaw.com

Melissa R. Smith (Texas Bar No. 24001351)
Harry Lee Gillam, Jr. (Texas Bar No.
07921800)
Gillam & Smith LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
melissa@gillamsmithlaw.com
gil@gillamsmithlaw.com

*Counsel for Shenzhen Absen Optoelectronic
Co., Ltd. and Absen, Inc.*

**PUBLIC REDACTED VERSION**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 14th day of August 2020, counsel of record are being served with a copy of this document via electronic mail.

*/s/ Harry Lee Gillam, Jr.*

Harry Lee Gillam, Jr.

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule 5(a)(7)(A), the undersigned hereby certifies that the corresponding document was filed under seal pursuant to the Court's Corrected Protective Order (Dkt. 174).

*/s/ Harry Lee Gillam, Jr.*

Harry Lee Gillam, Jr.