**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, § § § *Plaintiff*, § § Case No. 2:18-cv-00100-JRG-RSP v. § LEAD CASE § GOVISION, LLC, § § § *Defendant*. § | |

## MEMORANDUM ORDER

Before the Court is non-party Shenzhen Liantronics Co., Ltd.'s ("Liantronics") Motion to Intervene in Proceedings and Brief in Support. **Dkt. No. 364**. Liantronics' motion seeks to intervene in the above-captioned matter "for the sole purpose of correcting inventorship of the Hall patents under 35 U.S.C. § 256 to name Jiang and Zhang as a co-inventors of the Hall waterproof patents and Jiang, Zhang, and Wang as co-inventors of the Hall monitoring patent."

After due consideration, the Court **DENIES** Liantronics' Motion on the grounds that Liantronics' Motion is untimely and their interests are adequately represented by existing parties.

### I. BACKGROUND

Plaintiff Ultravision Technologies, LLC filed this action on March 27, 2018, alleging that Defendant GoVision, LLC infringed several patents. Dkt. No. 1. Ultravision filed additional complaints against a number of other alleged infringers, including Liantronics, asserting the same patents, and these cases were consolidated on March 12, 2019, making Liantronics a consolidated defendant. Dkt. No. 17. Ultravision notes that simultaneously, complaints were filed at the International Trade Commission. Dkt. No. 393 at 4.

As a result of additional cases filed, amended complaints adding and removing asserted patents against various defendants, and service issues, in June of 2020 the Court deconsolidated several member cases, including Case No. 2:18-cv-00103-JRG-RSP ("*Liantronics* Member Case"), the member case that made Liantronics a consolidated defendant. *See* Dkt. No. 278. That same day, the *Liantronics* Member Case was consolidated under Case No. 2:18-cv-00099-JRG-RSP ("*Glux* Lead Case"), in which Liantronics is currently a consolidated defendant. *Liantronics* Member Case Dkt. No. 21; *Glux* Lead Case Dkt. No. 18.

On September 8, 2020, Liantronics, now a non-party, filed the present motion. Dkt. No. 364. Liantronics claims that:

> "[s]ince being named in a separate proceeding, Liantronics . . . discovered that its technology was wrongfully claimed. . . . Throughout the summer of 2020, Liantronics' attorneys interviewed various Liantronics employees . . . . These employees confirmed that the subject matter claimed in the Hall patents included concepts they had personally conceived of . . . and were able to locate documents corroborating their invention."

Dkt. No. 364 at 8–9. Liantronics claims that U.S. Patent Nos. 9,916,782; 9,990,869; 9,978,294; 10,248,372; 9,984,603; 9,642,272; and 9,207,904 (collectively, the "Hall Patents"), all of which are either asserted against Liantronics in the *Glux* Case, asserted against other defendants in the above-captioned matter, or both, have incorrect inventorship. *Id.* at 1–2, 8. Liantronics asserts the Hall Patents fail to name Liantronics employees as inventors, and that Liantronics is an owner. *Id.* at 13.

## II.    LEGAL STANDARDS

Intervention is governed by Federal Rule of Civil Procedure 24. Fed. R. Civ. P. 24. Rule 24(a) provides that intervention must be permitted as a matter of right to anyone who:

> "(1) is given an unconditional right to intervene by a federal statute; or

2

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Permissive intervention may be allowed where the intervenor's claim or defense share common questions of law or fact with the plaintiff's action and intervention will not unduly delay or prejudice the existing parties. Fed. R. Civ. P. 24(b). The determination to allow permissive intervention under Rule 24(b) is discretionary. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984)

"Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). " In evaluating a motion to intervene, all "allegations are accepted as true." *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n. 2 (5th Cir. 1977).

The Fifth Circuit has interpreted Rule 24(a)(2) as imposing four requirements for intervention as a matter of right: (1) the motion is timely; (2) the movant has an interest relating to the property that is the subject of the action; (3) the movant is so situated that disposition of the action may, as a practical matter, impair or impede its ability to protect its interests; and (4) the movant's interest is not adequately represented by the existing parties to the suit. *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 2994); *see also Global Ground Automation, Inc. v. Groundrez, LLC*, Case No. 6:08-cv-00374-LED-JDL, Dkt. No. 92, 2011 WL 13098294, at *3 (E.D. Tex. Sept. 9, 2011); *see also Reid v. General Motors Corp.*, 240 F.R.D. 257, 259 (E.D. Tex. 2006). "If a party seeking to intervene fails to meet any one of those requirements, it cannot intervene as a matter of right." *Sierra Club*, 18 F.3d at 1205 (citing *Kneeland v. National Collegiate*

*Athletic Ass'n*, 806 F.2d 1285, 1287 (5th Cir.), *cert. denied*, 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987).

The first factor for intervention as a matter of right, timeliness, has four sub-factors to consider: (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Sierra Club*, 18 F.3d at 1205 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)).

### III. ANALYSIS

#### A. Intervention as a Matter of Right

##### i. Timeliness

###### a. Length of Time Interest Known or Should Have Known

Liantronics argues that its motion is timely because it only discovered the inventorship issue during the pendency of this case. Dkt. No. 364 at 8. Liantronics asserts that throughout the summer of 2020, Liantronics' attorneys interviewed Liantronics employees, including Jiang, Zhang, and Wang, who worked on a joint project with Ultravision prior to the filing of the provisional application that led to the Hall Patents. Liantronics concludes that because Liantronics brought this motion within a reasonable time after its investigation revealed its rights in the Hall Patents, this motion is timely. Liantronics also added that expert discovery had not yet begun, trial was still six months away, there is no time limitation in which to correct inventorship of a patent

(citing *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157 at 1162 (Fed. Cir. 1994)), and that Liantronics' claim is within the rebuttable presumption for laches for inventorship timeframe.

Ultravision responds that Liantronics has waited over two years from when it should have begun investigating its inventorship claims against Ultravision's patents. Dkt. No. 393 at 8. Ultravision notes that Liantronics provides no explanation for why the employees that allegedly worked with Ultravision were not interviewed before the summer of 2020, and that even if Liantronics did in fact first discover the inventorship issue just this summer, it should have known much earlier. *Id.* at 8–9. Ultravision asserts that Liantronics "should have known of its inventorship defense within months of being sued by Ultravision, not years." *Id.* at 9.

To support that Liantronics should have made the inventorship claim earlier, Ultravision points to two cases. *Id.* Ultravision asserts that the first case, *McClain v. Lufkin Indus.*, held that although the intervenor first became aware in April 2003 that its interests might be affected, the intervenor should have known of its interest in the lawsuit when it was filed in August 1998 and that "a delay of five years weighs against a finding of timeliness." *Id.* (citing *McClain v. Lufkin Indus.*, Case No. 9:97-cv-00063, Dkt. No. 359, 2003 WL 27383425, at *4 (E.D. Tex. Nov. 18, 2003) (order adopted by Dkt. No. 360)). Ultravision also cites *Kneeland v. National Collegiate Athletic Ass'n* as holding that the district court did not abuse its discretion in finding that a four-month delay favors untimeliness. *Id.* (citing *Kneeland v. National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987)).

Ultravision also points out that this defense was not raised in the ITC investigation between the parties, and that "[d]espite needing no discovery to uncover this inventorship defense, the

intervenor chose to sit on the sidelines and watch this case unfold . . . waiting only until after the close of discovery to spring a cross-complaint on the plaintiff". Dkt. No. 393 at 4.

Liantronics replies that its "motion is timely because it was filed about two years after the first case (asserting substantially fewer patents) was brought" and that "Liantronics diligently investigated its inventorship claims and brought the present motion within months of determining that it had a viable claim." Dkt. No. 406 at 2. Liantronics argues that *McClain* and *Kneeland* can be distinguished as "the majority of the alleged delay was while an ITC case was pending and the Liantronics district court was stayed. The ITC (unlike the District Court) lacks jurisdiction to correct inventorship and thus Liantronics could not seek correction during those proceedings." *Id.* at 3. Liantronics also counters that Ultravision does not distinguish the cases Liantronics cited showing that a motion to intervene is timely where inventorship rights were discovered during course of discovery or where moving to intervene after a five-month delay was timely. *Id.* (citing Dkt. No. 364 at 9 (citing *Ass'n of Professional Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986); *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157 at 1162 (Fed. Cir. 1993))).

Liantronics emphasizes that it "diligently investigated its inventorship claims." *Id.* at 2. However, the issue is not just when the intervenor knew of their interest in the lawsuit, but when they *should* have known. *McClain*, 2003 WL 27383425, at *4. Liantronics argues that the ITC lacks jurisdiction to correct inventorship and thus Liantronics could not seek correction during those proceedings. Dkt. No. 406 at 3. This does not explain why Liantronics did not take the time to investigate its potential inventorship during these proceedings and, since it was still a defendant in the above-captioned matter, file a motion to correct inventorship. Instead, as Ultravision states, it waited "until after the close of discovery to spring a cross-complaint on the plaintiff." Dkt. No.

6

393 at 4. Over the years that this action, and the corresponding ITC action, has been in motion, Liantronics had ample time to investigate and present its issue in a timely manner. Accordingly, the Court finds that this sub-factor weighs strongly against the motion's timeliness.

### b. Existing Party Prejudice by Filing Delay

Liantronics argues that the timeliness of the filing of this motion does not prejudice any party. Dkt. No. 364 at 9. Liantronics notes that inventorship is already an issue as Liantronics has already voluntarily produced relevant evidence to other defendants in the above-captioned matter. *Id.* at 9–10. Liantronics disputes Ultravision's argument that it would be prejudiced by the late intervention by not having the opportunity to take full discovery of Liantronics. *Id.* at 10.

To support this, Liantronics argues that "(1) the intervention is limited solely to inventorship, (2) Liantronics and all declarants were named in Absen's Disclosures, and (3) Liantronics' counsel already agreed to accept service of a subpoena to Liantronics and any future subpoenas or requests for deposition." *Id.* Liantronics also argues that the Fifth Circuit has confirmed that it is irrelevant if granting the motion to intervene would "severely protract the litigation." *Sierra Club*, 18 F.3d at 2016.

Ultravision responds that there is prejudice because Ultravision has had no ability to depose the cross-complaint declarants or potential inventors, take any corroborating discovery from Liantronics, locate other potential former employees, or attempt to disprove the allegations in other ways. Dkt. No. 393 at 9. Ultravision asserts that Liantronics' argument that there is no prejudice, because Ultravision served a third-party subpoena on Liantronics, misses the point that a post-discovery single-day overseas deposition leaves Ultravision without the chance to conduct follow up discovery or further investigate the inventorship issues. *Id.* at 10.

7

Liantronics replies that there is no additional discovery needed and the case schedule does not need to be adjusted to hear Liantronics' claim. Dkt. No. 406 at 1. Liantronics also argues that it produced all relevant discovery in its possession during the fact discovery period in a third-party production and that Liantronics offered to provide accelerated discovery on any additional issues if Ultravision could articulate what else was needed. *Id.* at 4.

Despite Liantronics' claims, the Court finds that by filing this motion after the close of discovery, Liantronics has seriously limited Ultravision's ability to conduct follow up discovery and thoroughly investigate an inventorship issue that could potentially be dispositive. Liantronics' lack of diligence in discovering the alleged activities of its own employees make this prejudice more unjustifiable.

### c. Prejudice to Movant Upon Denial

Liantronics argues that denying the motion to intervene would prejudice it because "(1) no other party has standing to get the inventorship of the Hall Patents corrected and (2) Liantronics could lose patents it is otherwise entitled to simply because Ultravision is asserting them in a way Liantronics never would have contemplated or agreed to." Dkt. No. 364 at 11. Liantronics suggests that "the Court or a jury could make substantive rulings on the validity, enforceability, and/or infringement of the patents without input from one of the patents' owners." However, Ultravision, as an owner of the Hall Patents, has the same interest in protecting its own patent rights, and accordingly represents the same interest in preserving the Hall Patents' validity and enforceability.

Ultravision responds that Liantronics is a defendant in another case brought by Ultravision where it can raise this defense. Dkt. No. 393 at 10. Ultravision argues that Liantronics' two arguments to support its claim of prejudice, "(1) that no other party has standing to get inventorship corrected; and (2) that Liantronics could 'lose patents' it is otherwise entitled to" both fail. *Id.* at

8

10–11. With respect to standing, Ultravision argues that while Liantronics is correct that no other party has standing to correct inventorship, its argument that it would not have agreed to file the lawsuits shows that it has no interest in monetizing the Hall Patents it claims a right to and accordingly is not prejudiced by its employees not being named inventors. *Id.* at 11. Ultravision further argues, persuasively, that if Liantronics was concerned about substantive rulings on the validity, enforceability, and/or infringement of the Hall Patents without its input, it would have moved to intervene sooner rather than voluntarily participating in discovery to undermine the very assets to which it claims ownership. *Id.* This, combined with Liantronics' argument that with inventorship corrected it would not have agreed to enforce its patent rights, suggests that while there may be prejudice, this prejudice is minimal as Liantronics has not shown that it values the Hall Patents highly. Accordingly, the Court finds that this factor also weighs against timeliness.

### d.  Unusual Circumstances

Liantronics argues that Ultravision has accused numerous defendants of infringing the Hall Patents in various related cases, and each party in each case has an interest in determining inventorship of the Hall Patents. Dkt. No. 364 at 11. Liantronics notes that costs related to developing and arguing infringement and invalidity positions could be saved, and that "all current litigation surrounding the Hall Patents may be resolved because Liantronics, as a co-owner of the patents, has not consented to bringing any of the Ultravision suits." *Id.* at 11–12 (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1458–59 (Fed. Cir. 1998)). Litigation cost does not make an unusual circumstance, but rather is a very common circumstance. Costs are associated with every litigation, and in every litigation where intervention is denied costs are potentially increased. Accordingly, the Court finds this factor to be neutral with respect to timeliness.

With the three prior factors weighing against timeliness, and the fourth neutral with respect to timeliness, the Court finds that the present motion was not filed timely. Accordingly, by failing at least one of the four factors for intervention as a matter of right, the Court finds that Liantronics is not entitled to intervene as a matter of right.

### ii. Movant Property Interest

Liantronics asserts that it has a property interest in the Hall Patents since its employees Jiang, Zhang, and Wang are unnamed co-inventors because they significantly contributed to the conception and reduction to practice of the inventions. Dkt. No. 364 at 13 (citing *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998)). To support this, Liantronics has attached its Cross-Complaint (Dkt. No. 364-A) which alleges that by 2006, the Liantronics employees' inventions were fully developed and reduced to actual products. *See* Dkt. No. 364-A at ¶ 20. Liantronics asserts it sent documents, figures, and products to Ultravision between 2006–09 that included Jiang's, Zhang's, and Wang's inventions. *Id.* at ¶ 24–35. It also assert that multiple witnesses confirm that Jiang's, Zhang's, and Wang's inventions were completed prior to the Hall Patents' priority dates.

Ultravision responds, contrary to an earlier statement of agreement that no other party has standing to get the Hall Patents' inventorship corrected, that the individuals Liantronics contends should have been inventors have that standing. Dkt. No. 393 at 12. Ultravision also argues that as a corporate entity, Liantronics cannot be named as an inventor and the Motion is silent as to whether it obtained patent ownership rights from its employees. *Id.*

However, Liantronics has presented sufficient evidence, for purposes of this motion, to show that its employees have transferred to Liantronics any ownership rights to the Hall Patents, and with them standing to correct inventorship. *See Mendenhall*, 551 F.2d at 56 n. 2. Accordingly,

10

the Court finds that, for purposes of this motion, Liantronics may have a valid property interest in intervening. Along with that interest, Liantronics has standing to raise a 35 U.S.C. § 256 inventorship claim.

### iii.     Impairment of Ability to Protect Interest

Liantronics argues that if the Court were to deny this Motion, it would impair and impede the Movant's ability to protect its interests as supposed rightful co-owner of the Hall Patents. Dkt. No. 364 at 13–14. Ultravision disputes this for two reasons: (1) Liantronics can protect its interests in another ongoing case against Ultravision, and (2) Liantronics is already protecting its interests in the above-captioned matter by openly assisting the current defendants, including by producing documents without being subpoenaed. Dkt. No. 393 at 13. Ultravision also notes that Liantronics' assertion that it would not have consented to bring these lawsuits, even against its competitors, establishes that Liantronics claims no benefit from ownership of the Hall Patents and thus has no interest to protect. *Id.*

Liantronics replies that inventorship will be decided in this proceeding before the related cases that "significantly trail this proceeding," only Liantronics has standing to correct inventorship, and that this decision would be made without Liantronics' participation or consent as a rightful co-owner of the patents.

The Court finds that there is a slight impairment in Liantronics' ability to protect their interest in maintaining the Hall Patents' validity by their Motion being denied. However, Liantronics' actions in producing documents to the current defendants for invalidity defenses based on improper inventorship effectively undermines this interest. Combined with the fact that Liantronics' counsel also represents Absen, a defendant in the above-captioned matter which is

11

asserting invalidity, the record shows that Liantronics has no actual interest in defending the validity of the Hall Patents.

Liantronics seeks intervention so that they may move for 35 U.S.C. § 256 Correction of Named Inventor as they claim they are the only party with standing to correct the inventorship to maintain validity. Liantronics misses that there is already a party with standing to correct inventorship that would have an interest in maintaining the Hall Patents' validity: Ultravision. If the Hall Patents were to be found to have improper inventorship, likely as a result of the very document production that Liantronics has already voluntarily provided to the other defendants, Ultravision may move to correct inventorship in order to protect their own patent rights. Furthermore, if Ultravision were not to do so, Liantronics would have standing to seek a Correction of Inventorship By Reissue through the United States Patent and Trademark Office. United States Patent and Trademark Office Manual of Patent Examining Procedure § 1412.04 (2020).

Liantronics' ability to protect its interests is impaired, although minimally, by the denial of its Motion. Construing Rule 24 liberally in accordance with Fifth Circuit caselaw, the Court finds that Liantronics has met its burden to establish this factor. *See Wal-Mart Stores, Inc.*, 834 at 565.

### iv. Interest Representation

Liantronics argues that no party represents Liantronics' interest in protecting its rights in the Hall patents. Dkt. No. 364 at 14. Liantronics asserts that "Liantronics does not share Plaintiff's interest in asserting the Hall patents against these various defendants and, as a co-owner of the patent, has the right to withhold consent from asserting the patent." *Id.* Liantronics contends that it and Ultravision "are not allies in that they have a competing interest in the Hall patents." Liantronics then argues that other defendants also do not represent Liantronics' interests because they lack standing to seek a correction of inventorship on behalf of Liantronics, and given that the

12

Court will hear some of these issues through Defendants' defenses, the inventorship issue should be heard from the party with the tangible interest in the patents, not from other parties arguing on its behalf. *Id.* at 14–15.

Ultravision responds that Liantronics' interests are adequately represented because its counsel *also* represents Absen, a defendant in the above-captioned matter, and that its counsel "is clearly representing its interests vis-à-vis this representation." Dkt. No. 393 at 13. Ultravision argues that if Liantronics had an interest in sharing proceeds from licensing revenue generated by the Hall Patents, it would not be cooperating with defendants in seeking to undermine it. *Id.* Ultravision asserts that Liantronics, by cooperating with defendants and sharing documents, information, and even counsel, has shown that its interests and defendants' interests are aligned. *Id.* at 13–14.

Liantronics' conduct in the above-captioned matter and its arguments in the motion make it unclear where exactly its interests are aligned. On one hand, Liantronics seeks to intervene so that it may correct inventorship to preserve its rights in the Hall Patents. On the other hand, Liantronics argues that it would not have brought the present action, effectively not enforcing its alleged patent rights, and Liantronics has also voluntarily supplied discovery to defendants so that they may invalidate the Hall Patents. Regardless of where Liantronics' interests truly lie, the Court sees their interest represented.

If Liantronics' interest lies in the preservation of the Hall Patents' validity, their interest is adequately represented by Ultravision, who has an interest in maintaining its own patent rights. If its interest lies in invalidating the patent, as its provision of discovery to other defendants would suggest, that interest is represented not only by the other defendants, but by its own counsel acting as counsel for one of those other defendants.

13

A movant has a "minimal" burden to prove that the existing parties *may not* adequately represent their interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 636 n.10 (1972). Even with this "minimal" burden, while the Court found that Liantronics' ability to protect its interests directly is impaired by denial of the Motion, the Court finds that Liantronics' interests are well represented, with the presence of their own counsel already in the above-captioned matter. The Court finds that Liantronics has not met its burden to establish that its interests are not already adequately represented, and this makes a second grounds for denial of the motion.

### B. Permissive Intervention

A party may be permitted to intervene under Rule 24(b) where (1) the intervenor's claim or defense share common questions of law or fact with the plaintiff's action and (2) intervention will not unduly delay or prejudice the existing parties. Fed. R. Civ. P. 24(b); *see also Reid*, 240 F.R.D. at 260. Liantronics argues that its claim of inventorship shares a common question of law or fact with Ultravision's action as both claim inventorship and/or ownership rights in the Hall Patents and that defendants' affirmative defenses of invalidity and unenforceability are based on the Hall Patents' alleged improper inventorship. Dkt. No. 364 at 15. Liantronics also asserts that, as discussed above, intervention would not unduly delay or prejudice the existing parties. *Id.*

Ultravision argues that Liantronics' claim that it is the only entity that can adequately protect its rights and that there are common questions of law and fact because the parties each claim inventorship and/or ownership in the Hall Patents are irreconcilable: "[e]ither it is the only entity that can protect its allegedly valueless rights in what it claims are invalid patents, or there are common questions of law and fact between the current dispute and Liantronics." Dkt. No. 393 at 14. Regarding delay and prejudice, Ultravision notes that "[f]act discovery has closed, expert reports have been filed, and the parties are marching towards trial based upon the record that has

14

been created." *Id.* Ultravision argues that reopening discovery would cause unduly delay with the need for more depositions and supplemental expert reports. *Id.* Ultravision adds that intervention would likely delay the trial date that has already been delayed due to COVID-related complications, and on that ground alone intervention should be denied. *Id.* at 15.

For the reasons discussed above, the Court does not believe that Liantronics is the only entity that can protect its alleged rights in the Hall Patents, as Ultravision has a clear interest in the preservation of the validity of the Hall Patents by its own ownership interest. While there are common questions of law and fact, intervention would unduly delay or prejudice the existing parties. Furthermore, Liantronics has other adequate avenues to seek correction of inventorship.

### IV.     CONCLUSION

After due consideration, the Court finds that with three of the four timeliness sub-factors weighing in favor of a finding of untimeliness, with the fourth factor being neutral, Liantronic's Motion is untimely and therefore Liantronics may not intervene as a matter of right. Furthermore, adequate representation of Liantronics' interests forms a secondary basis of denial of intervention as a matter of right. Furthermore, because intervention would unduly delay and prejudice the existing parties, the Court also denies permissive intervention. The Court therefore **DENIES** Liantronics' motion.

SIGNED this 9th day of December, 2020.

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE