IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | § § § | |
| *Plaintiff*, | § § | Case No. 2:18-cv-00100-JRG-RSP |
| v. | § § | LEAD CASE |
| GOVISION LLC, | § § § | |
| *Defendant*. | § | |

# MEMORANDUM ORDER

Before the Court is Defendants Shenzhen Absen Optoelectronic Co., Ltd.'s and Absen, Inc.'s ("Absen") Motion to Exclude Infringement and Validity opinions of Thomas Credelle ("Motion"). **Dkt. No. 438**. Absen's Motion asks the Court to preclude Ultravision's technical expert Thomas Credelle ("Mr. Credelle") from testifying that an accused product practices a limitation where, in his expert report on infringement, served September 22, 2020 ("Credelle Infringement Report"), he "(1) relied on "information and belief' for numerous limitations which is an incorrect legal standard . . . ." *Id.* at 5. Absen's Motion also asks the Court to preclude Mr. Credelle from testifying regarding opinions in Mr. Credelle's expert report on validity, served on October 12, 2020 ("Credelle Validity Report"), where Mr. Credelle opined "([2]) regarding secondary considerations of nonobviousness to the jury because he provided no evidentiary basis nor did he show nexus; ([3]) that the V-series product is not sealed to be waterproof because Ultravision should be judicially estopped from contradicting its prior positions before this court"[1] and "([4]) regarding a claim construction interpretation of the Court's construction of 'modular display panel' that directly contradicts the Court's analysis for that construction." *Id.*

---

[1] The defense of judicial estoppel in this matter was addressed in Dkt. No. 655, which will not be repeated here.

1

## I. BACKGROUND

On March 27, 2018, Ultravision filed its original complaint against Absen asserting several patents including U.S. Patent No. 9,916,782 (the "'782 Patent"). *Ultravision Technologies, LLC v. Shenzhen Absen Optoelectronic Co., Ltd. et al*, Case No. 2:18-cv-00112-JRG-RSP ("Absen Member Case"), Dkt. No. 1. On April 12, 2019, the Court consolidated the Absen Member Case along with several other member cases under the lead case against GoVision, LLC. Dkt. No. 17.

On June 6, 2019, Ultravision filed its First Amended Complaint asserting several more patents including U.S. Patent No. 9,990,869 (the "'869 Patent"), U.S. Patent No. 9,978,294 (the "'294 Patent"), and U.S. Patent No. 9,207,904 (the "'904 Patent"). Following this First Amended Complaint, the case has narrowed significantly. Every defendant in the above-captioned matter has settled except for Absen, and the only remaining patents asserted against Absen are the '782 Patent, the '869 Patent, the '294 Patent, and the '904 Patent (collectively, the "Asserted Patents"). Dkt. No. 615 at 1–3.

On May 11, 2021, in a correspondence with the Court, counsel for Ultravision represented to the Court that Ultravision and Absen agree that § II(B) of the present Motion is moot.

## II. LEGAL STANDARDS

### A. *Daubert* Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme

Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### B. Claim Construction

The Court is the sole arbiter of claim construction disputes. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("No party may contradict the court's construction to a jury."). An expert is bound by the claim construction set forth by the Court. *See id.* Incorrect claim construction statements go to the relevance of the expert's opinion, and thus form a basis to exclude an expert's opinion. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2016) (affirming exclusion of expert's testimony because it was based on an impermissible claim construction).

## III. ANALYSIS

### A. Information and Belief

Absen contends that the portions of the Credelle Infringement Report catalogued in Absen's Exhibit I to the Declaration of Naomi Birbach should be excluded because the Credelle Infringement Report "extensively relies" on "information and belief" to allege infringement for several limitations of the asserted patents. Dkt. No. 438 at 6–8. Absen asserts these opinions are impermissible because they are not sufficiently reliable to constitute appropriate evidence. *Id.* at 6 (citing Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592–93). Absen argues "Mr. Credelle does not provide or indicate what 'information' he relies on, and his subjective beliefs are not the subject of proper expert testimony." *Id.* at 7 (citing *Daubert*, 509 U.S. at 589–90 ("The subject of an expert's testimony must be 'scientific . . . knowledge.' The adjective 'scientific' implies a

4

grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation.")).

Ultravision responds that Mr. Credelle testified in his deposition on October 21, 2020 that the use of "information and belief" was "inadvertently left in the charts attached to his expert report," and argues that Absen did not object to the correction. Dkt. No. 499 at 4–5 (citing Dkt. No. 499-2 at 43:7–44:22). Ultravision asserts Mr. Credelle provided support and evidence beyond merely relying "on information and belief." *Id.* at 5. Ultravision presents as an example that "each '791 Patent claim chart for claim element 12[b(i)] shows the front portion of the Absen accused product defining at least two vertical columns of bays that span the height of the sign." *Id.* (citing Dkt. No. 499-3).

Ultravision's example at Dkt. No. 499-3 and Absen's example at Dkt. No. 438-3 both include pictures of the portion of the accused devices Ultravision asserts meet the claim limitation alongside the statement "on information and belief." *See* Dkt. No. 438-3 at 5–6; Dkt. No. 499-3 at 7. The Court finds these pictures are sufficient to show Mr. Credelle's opinion is based on more than "subjective belief or unsupported speculation." *See Daubert*, 509 U.S. at 589–90. Accordingly, there is no basis for striking the portions of the Credelle Infringement Report catalogued in Absen's Exhibit I to the Declaration of Naomi Birbach improper.

### B. Secondary Considerations of Nonobviousness

Absen contends that Mr. Credelle's opinions on secondary considerations of nonobviousness should be excluded because they are unsupported and Mr. Credelle's nexus opinion is "deficient on its face. . . ." Dkt. No. 438 at 11. Absen asserts that Mr. Credelle's entire opinion on nexus is Mr. Credelle's statement, "[i]t is my opinion that the secondary considerations discussed above have a sufficient nexus to the claimed invention. It is my opinion that the

5

commercial success of the accused products in this litigation are due to the cabinet-free, modular, plastic, sealed designs that are covered by the Asserted Patents." *Id.* (citing Dkt. No. 438-6 at ¶ 446). Absen argues examining each of Mr. Credelle's secondary considerations confirms that he has "no basis for any nexus." *Id.* at 11–13.

Ultravision responds that Absen cites only portions of Mr. Credelle's analysis for its argument that Mr. Credelle's secondary considerations evidence lacks a nexus. Ultravision asserts that the nexus of each secondary consideration is also found in the benefits discussions in the Credelle Infringement Report. Dkt. No. 499 at 7. Ultravision argues each of Mr. Credelle's secondary considerations, citing to various locations in the Credelle Validity Report and Credelle Infringement Report. *Id.* at 7–9. For example, regarding expressions of skepticism by those skilled in the art, Ultravision points to ¶ 438 of the Credelle Validity Report. Dkt. No. 499 at 7. Mr. Credelle plainly states:

> My understanding is that if a product was met with skepticism by those skilled in the art, this weighs in favor of non-obviousness. I understand that Mr. Hall's plastic "V-Series" design was met with skepticism by an installer in the industry when it was presented at a sales meeting in 2013. I understand that there may have been skepticism about the plastic design due to its perceived "flimsiness" compared to the metal cabinets prevalent at the time.

Dkt. No. 499-7 at ¶ 438. As another example, regarding the commercial success, Ultravision points to ¶ 439 of the Credelle Validity Report. Dkt. No. 499 at 7–8. Mr. Credelle plainly states:

> I also understand that the market for the accused products is currently growing at a significant annual pace. Based on my participation at industry Trade Shows, it appears that old style cabinet-based displays are disappearing from the marketplace and are being replaced by plastic, modular, sealed panels of the type accused of infringement in this litigation. The entire industry is moving towards or has moved towards this design. It is also my opinion that the commercial success of this design is based on the patented features of the asserted patents in this litigation. Although the market for outdoor LED displays is growing overall, it is the

6

> benefits of the claimed invention, such as the modular design, that the products are lightweight which saves both shipping and installation costs (due to the plastic shell), and higher reliability because the products are sealed to be waterproof.

Dkt. No. 499-7 at ¶ 439.

Likewise, the Court finds that Mr. Credelle provides a sufficient nexus for each of the secondary considerations. *See* Dkt. No. 499-7 at ¶ 441–446. Accordingly, there is no basis to strike Mr. Credelle's opinions on secondary considerations of nonobviousness.

### C. Claim Construction

Absen contends that Mr. Credelle interprets the Court's construction of the term "modular display panel" in a manner that is directly contradictory to the Court's claim construction order. Dkt. No. 438 at 14–15. Absen asserts "[t]he core of interchangeability in the patent and the court's claim construction analysis [] relates not to the functionality of the modular panels but rather to their size and ability to be swapped within a frame based on size alone." *Id.* at 15.

Absen argues that Mr. Credelle's report states the Court's use of the word "interchangeable" includes a functionality component. *Id.* Absen cites the Credelle Validity Report as stating that panels operating in a primary-secondary relationship are not "interchangeable" and supports this with a statement by Mr. Credelle during deposition. *Id.* (citing Dkt. No. 438-6 at ¶¶ 199, 206; Dkt. No. 438-8 at 64:15–67:11).

Ultravision responds that Absen is arguing for an overly broad interpretation of the term "interchangeable" based on one line in the '782 Patent. Dkt. No. 499 at 10. Ultravision notes the Court's claim construction order states that similarity in size is "one example" of the specification mentioning the word "interchanged." *Id.* (citing Dkt. No. 407 at 15–16). Ultravision contends the claim construction order does not state that the only requirement for being interchangeable is similar size. *Id.*

7

Ultravision analogizes the functionality issue to panels that were the same size but had different attachment points, different connectors, or ran different software or firmware. *Id.* Ultravision asserts that in each of those circumstances, the panel would not work, arguing that "for a panel to be interchangeable necessarily means that it not only needs to be a similar size, but it needs to work." *Id.* Ultravision argues Absen is misinterpreting the specification and reading in an embodiment where the only requirement for interchangeablity is size. *Id.*

The Court construed "modular display panel" to mean "interchangeable display panel for a multi-panel modular display configured for use without a cabinet." Dkt. No. 407 at 18. In the Court's analysis of "modular display panel," the Court agreed with the parties' proposal that the "modular display panel" terms should be construed to include "interchangeable" and indicates "[i]n one example, the specification states that "the similarity in size of the panels 400 of FIG. 4A and the panel 600 of FIG. 6A enables the panels to be interchanged as needed." *Id.* at 15–16 (quoting Dkt. No. 288-6 at 10:42–44).

That same embodiment addressed primary-secondary—or master-slave—functionality, with the following sentence providing, "[m]ore specifically, as main panels and slave panels have an identical footprint in terms of height H, width W, and depth D1, their position on the frame 106 of FIGS. 1A and 1B does not matter from a size standpoint, but only from a functionality standpoint." Dkt. No. 288-6 at 10:44–48. The specification continues, "[a]ccordingly, the display 100 can be designed as desired using main panels and slave panels without the need to be concerned with how a particular panel will physically fit into a position on the frame." *Id.* at 10:49–52.

Mr. Credelle's statement during deposition regarded this same embodiment. *See* Dkt. No. 438-8 at 64:15–67:11. When directed to column 10, lines 42–45, Mr. Credelle was asked "[t]here's

8

a particular embodiment here that talks about the interchangeability of main panels and slave panels. And I'm curious whether or not this embodiment meets your definition of a modular display panel." Dkt. No. 438-8 at 64:23–65:2. After reviewing the '782 Patent, Mr. Credelle stated:

> That paragraph to me describes an example of a modular system. In this particular case, it says a slave and a master, and we don't like to use those words anymore; so I'll call it a primary and secondary panel . . . are different. But each one can be interchanged with the same type. I read the Court's construction of interchangeability to be a little more narrow, that the panels are interchangeable. That means any panel can be changed with another. So in the Court's— in the Court's construction, I think it wouldn't cover the primary/secondary system.

*Id.* at 65:6–21. The Court's claim construction order identifies this precise embodiment as an example of the Court's claim construction. Dkt. No. 407 at 15–16 (quoting Dkt. No. 288-6 at 10:42–44).

In its reply, Absen again argues that Mr. Credelle interprets the Court's claim construction for "modular display panel" in a way that reads out the patent's preferred embodiment and directly contradicts the Court's claim construction analysis. The Court agrees. Mr. Credelle clearly states in his deposition that the precise embodiment the Court cited as an example of the Court's construction would be read out under his interpretation of the claim construction. Such an interpretation is plainly improper. Accordingly, the Court finds it proper to exclude Mr. Credelle's opinions in the Credelle Validity Report at ¶¶ 199 and 206 regarding whether the Ultrapanel was "modular" under the Court's construction because those opinions plainly contradict the Court's claim construction order.

The Court notes that the Credelle Validity Report at ¶ 199 includes opinions regarding other limitations aside from whether the Ultrapanel was modular. Dkt. No. 438-6 at 5. Accordingly, the Court will strike only the sentence "[i]n addition, the all-metal Ultrapanel was

9

not "modular" under the Court's construction in this case because the individual units operated in a primary-secondary relationship and thus were not 'interchangeable'" from ¶ 199. The Court further finds it necessary to strike the ¶ 206 and 207 for the same reason.

IV. **CONCLUSION**

After due consideration, the Court **GRANTS-IN-PART** Absen's Motion with respect to Mr. Credelle's improper interpretation of the Court's construction of the term "modular display panel" and otherwise denies the motion. Accordingly, the Court **STRIKES** from the Credelle Validity Report ¶ 199 the sentence, "[i]n addition, the all-metal Ultrapanel was not "modular" under the Court's construction in this case because the individual units operated in a primary-secondary relationship and thus were not 'interchangeable.'" The Court further **STRIKES** the Credelle Validity Report's ¶ 206 and 207.

**SIGNED this 25th day of May, 2021.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE