IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, | § § § | |
| Plaintiff, | § § | Case No. 2:18-cv-00100-JRG-RSP |
| v. | § § | LEAD CASE |
| GOVISION LLC, | § § | |
| Defendant. | § § | |

**MEMORANDUM ORDER**

Before the Court is Plaintiff Ultravision Technologies, LLC's ("Ultravision") Motion to Exclude Testimony of Mr. Richard Flasck on the Defense of Improper Inventorship ("Motion"). **Dkt. No. 454**. Ultravision's Motion asks the Court to strike portions of the Opening Expert Report on Invalidity of Richard Flasck (the "Flasck Report") allegedly related to inventorship as well as the entirety of the Supplemental Expert Report on Invalidity of Richard Flasck (the "Flasck Supplemental Report").

**I.     BACKGROUND**

On March 27, 2018, Ultravision filed its original complaint against Absen asserting several patents including U.S. Patent No. 9,916,782 (the "'782 Patent"). *Ultravision Technologies, LLC v. Shenzhen Absen Optoelectronic Co., Ltd. et al*, Case No. 2:18-cv-00112-JRG-RSP ("Absen Member Case"), Dkt. No. 1. On April 12, 2019, the Court consolidated the Absen Member Case along with several other member cases under the lead case against GoVision, LLC. Dkt. No. 17.

On June 6, 2019, Ultravision filed its First Amended Complaint asserting several more patents including U.S. Patent No. 9,990,869 (the "'869 Patent"), U.S. Patent No. 9,978,294 (the "'294 Patent"), and U.S. Patent No. 9,207,904 (the "'904 Patent"). Following this First Amended

1

Complaint, the case has narrowed significantly. Every defendant in the above-captioned matter has settled except for Absen, and the only remaining patents asserted against Absen are the '782 Patent, the '869 Patent, the '294 Patent, and the '904 Patent (collectively, the "Asserted Patents"). Dkt. No. 615 at 1–3.

## II. LEGAL STANDARDS

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

"Inventorship is a mixed question of law and fact: The overall inventorship determination is a question of law, but it is premised on underlying questions of fact." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004). "An [expert] opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). "Rule 704 abolishes the per se rule against testimony regarding ultimate issues of fact. By the same token, however, courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977). "[A]dmissibility of an expert's conclusion depends on the nature of

the issue and the circumstances of the case." *Id.* at 1203–04. "Reduction to practice, and conception as well, is a legal determination . . . ." *Hybritech Inc v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed Cir. 1986).

**III. ANALYSIS**

Ultravision contends the inventorship section of the Flasck Report should be stricken and the Flasck Supplemental Report should be stricken in its entirety. Dkt. No. 454 at 5–6. Ultravision argues that Mr. Flasck improperly opined that employees of third parties, Liantronics and Shenzhen Only, should have been named as joint inventors and that inventorship of the Asserted Patents is improper. *Id.* at 4. To support this, Ultravision cites a table from Liantronics' Cross-Complaint and included in the Flasck Report which clearly identifies "[i]nventor[s] to be [a]dded" to each of the Asserted Patents along with a statement that "I understand that Liantronics' employees contributed to the asserted patents as follows." *Id.* (citing Dkt. No. 454-2 at ¶ 374).

Ultravision asserts Mr. Flasck's opinion on inventorship is based on analysis of alleged prior art devices, which were analyzed in detail in earlier sections of Flasck's Report on prior art, anticipation, and obviousness. *Id.* at 4–5. Ultravision contends the only additional analysis is based primarily on a recitation of the declarations and testimony from Liantronics and Shenzhen Only employees, leading to improper opinions such as that "the patented features 'actually originated with Liantronics,' were 'Liantronics' design' and were 'first conceived of . . . . by Shenzhen Only.'" *Id.* at 5 (citing Dkt. No. 454-2 at § XIV). Ultravision further asserts Mr. Flasck bases his opinion on a 2017 arbitration between Ultravision and Shenzhen Only regarding breach of warranty and misappropriation of trade secrets. *Id.* (citing Dkt. No. 454-2 at ¶ 457).

Ultravision argues that applying the holding in *Cellular Communications Equipment LLC v. HTC Corporation,* 6:16-cv-0475, Dkt. No. 304 (E.D.Tex. July 6, 2018), holding that an expert

4

"may not offer an opinion concerning the ultimate issue of inventorship," but "may opine on the underlying technical fact issues for inventorship," Mr. Flasck's opinion concerning inventorship should be excluded, permitting only opinions on the technical features of alleged prior art. *Id.* Ultravision continues, contending that because the Flasck Report included an analysis of the alleged prior art in other sections of the report, the underlying technical fact issues in the inventorship section are duplicative and should be stricken. *Id.*

Ultravision further argues, "for the same reasons as above, Mr. Flasck's supplemental expert report on inventorship, dated October 19, 2020, should also be struck in full." *Id.* at 6. Ultravision asserts "Mr. Flasck provides no opinion on technical fact issues, and merely regurgitates the opinion from his opening report that the designs in the Asserted Hall Patents 'originated with someone other than Mr. Hall, particularly employees at Liantronics and Shenzhen Only.'" *Id.* (citing Dkt. No. 454-4 at ¶¶ 2–6).

Absen responds, "Mr. Flasck carefully analyzed the technical details of third-party designs and compared them to the technical disclosures of the Hall patents, as well as the technical opinions of Ultravision's own expert. All of this was well within Mr. Flasck's technological expertise and was proper." Dkt. No. 486 at 4. Absen argues that Ultravision "fails to identify a single portion of Mr. Flasck's opinions that falls outside the proper scope of acceptable technical expert testimony. . . . "paint[ing] a broad stroke . . . ." *Id.* To support this, Absen cites to Exhibit J to Flasck's Report, a "detailed table wherein Mr. Flasck compares the 100-plus figures from the asserted Hall Patents to drawings of third-party figures . . . ." *Id.* at 5–6 (citing Dkt. No. 486-3).

Absen contends that the factual analysis in Flasck's Report's inventorship section is not duplicative, but rather distinct from the anticipation and obviousness analyses. *Id.* at 6. For example, Absen asserts for inventorship Mr. Flasck "analyzed the similarities and differences

5

between the allegedly inventive features of the Hall Patents and the V-Series design, for example, relative to claim elements such as housing and power supply" as opposed to the invalidity sections where Mr. Flasck "analyze[d] how the V-Series anticipates or renders obvious each asserted claim of the Hall Patents" *Id.* (citing Dkt. No. 486-2 at ¶¶ 390–97, 417–18, 420, §§ IX.B.2, X.4). Absen further argues Mr. Flasck analyzed the provisional applications that form alleged priority for the claims and show why the third-party designs form the bases for the provisional disclosures. *Id.*

Upon review of the Flasck Report and Flasck Supplemental Report, the Court agrees that Ultravision's Motion "paints a broad stroke" and requests that proper factual analysis be stricken with its overbroad challenge. For example, Exhibit J to the Flasck Report, reproduced as Exhibit C to Absen's response to Ultravision's Motion, extensively tables figures from a provisional application and compares them to third-party design images with no statements regarding inventorship. *See* Dkt. No. 486-3.

However, the Court also sees where Mr. Flasck crosses the line from factual analysis to legal conclusions. For example, the table imported from Liantronics' Cross-Complaint to Flasck's Report clearly makes a legal conclusion of improper inventorship of each of the Asserted Patents. *See* Dkt. No. 454-2 at ¶ 374.

"Inventorship is a mixed question of law and fact: The overall inventorship determination is a question of law, but it is premised on underlying questions of fact." *Eli Lilly & Co.*, 376 F.3d at 1362. "An [expert] opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *Milton*, 555 at 1203.

Ultravision's Motion asks the Court to strike the inventorship section of the Flasck Report in full and the Flasck Supplemental Report in its entirety. Dkt. No. 454 at 5–6. Considering the examples of proper factual analysis provided by Absen, the Court will not strike the inventorship section of the Flasck Report in full. However, the Court finds it proper to strike the Flasck Supplemental Report in its entirety.

The inventorship section of the Flasck Report spans ¶¶ 371–503. Dkt. No. 454-2 at 142–198. Upon review of the Flasck Report, the Court finds numerous instances where Mr. Flasck has crossed the line from a proper technical analysis of documents and what they show to improper opinions regarding the origination of inventive concepts and inventorship as a whole. For example, ¶ 379 states that "the housing that is described throughout much of the specification and was sealed to be waterproof without the use of cabinets originated with Liantronics' P18 and P36 housings . . . ." Dkt. No. 454-2 at ¶ 379. This is not a technical analysis of documents, but a statement of opinion regarding origination of an inventive concept.

As another example, from Subsection 3: "Mr. Hall described his contribution to the art generally as including seven 'key innovations' all of which were design ideas that originated with Liantronics." Flasck relies heavily on a sworn declaration of Mr. Hall and testimony from the Shenzhen Only arbitration. *Id.* at ¶ 398–403, 412. Further, sections relying on the arbitration decision are also improper. Accordingly, the Court finds it proper to strike all opinions in the inventorship section of the Flasck Report that are based on affidavits, testimony, the Shenzhen Only arbitration, or any other underlying materials other than technical documents and what those technical documents show. He can provide opinions as to the technology disclosed in the asserted patents and the prior art documents, and compare the disclosures, but he is not permitted to offer opinions as to who originated, conceived of, or invented the technology.

## IV. CONCLUSION

After due consideration, the Court **GRANTS-IN-PART** Ultravision's Motion. It is therefore **ORDERED** that certain opinions, as described above, in the inventorship section of the Flasck Report are hereby **STRICKEN**. It is further **ORDERED** that the Flasck Supplemental Report is **STRICKEN** in its entirety.

**SIGNED this 25th day of May, 2021.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE